## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Sheila M. Garcia Rivera,<br>            *Plaintiff*, | |
| v. | Case No. 3:25-cv-1056-CVR |
| Balchem Corp., et al.,<br>            *Defendants.* | |

**Balchem Corporation's Motion To Dismiss Plaintiff's Complaint
<u>Under Federal Rule of Civil Procedure 12(b)(6)</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.    Government Agencies Closely Regulate the Sale and Use of EtO in Medical Sterilization. ........................................................................................................... 2

    A.    Balchem Distributes an EPA-Approved and Labeled Product. ...................... 2

    B.    The Use of EtO at Medical Sterilization Facilities Is Highly Regulated. ................................................................................................... 3

    C.    EtO Is Critical for Sterilization of Medical Devices in the United States. ........................................................................................................ 5

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ................................................................................................................. 6

I.    The Complaint Should Be Dismissed for Failure to State a Claim Against Balchem. ................................................................................................................ 6

    A.    Plaintiff's Design Defect Claim Should Be Dismissed. ................................ 6

        1.    Plaintiff Cannot Plead a Claim Under the Consumer Expectancy Test. ............................................................................ 7

        2.    Plaintiff Fails to Plead a Claim Under the Risk Utility Test. ............. 8

        3.    The Addition of an Odorant Is Not a Feasible Alternative Design. ................................................................................................ 10

        4.    Plaintiff Does Not Allege a Design Defect Proximately Caused Her Injuries. ........................................................................ 11

    B.    Plaintiff's Failure to Warn Claim Should Be Dismissed. ........................... 12

        1.    Plaintiff Fails to Allege that the EPA-Approved Warnings Were Insufficient. ........................................................................... 13

        2.    Balchem Had No Obligation to Provide Warnings About Steri-Tech's Emissions. .................................................................. 14

        3.    Balchem Had No Duty to Directly Warn Plaintiff. ........................... 15

        4.    Plaintiff's Failure to Warn Claims Are Not Viable on Causation Grounds. ...................................................................... 17

    C.    Plaintiff's Negligence Claim Should Be Dismissed. ................................... 18

        1.    Balchem Did Not Owe a Legal Duty to Plaintiff. ........................... 18

        2.    Plaintiff Fails to Plead that Balchem Breached a Duty. .................... 20

    D.    Plaintiff's Private Nuisance Claim Should Be Dismissed. .......................... 21

E.   Plaintiff's Abnormally Dangerous Activity Claim Should Be Dismissed. .................................................................................23

F.   Plaintiff's Claims Are Time-Barred. ............................................23

G.   Plaintiff's Punitive Damages Demand Should Be Dismissed.......................25

CONCLUSION .................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarez-Cabrera v. Toyota Motor Sales, U.S.A., Inc.*,
No. CV 17-2305, 2020 WL 3620204 (D.P.R. July 2, 2020) .................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................. 6

*Ayala v. Kia Motor Corp.*,
633 F. Supp. 3d 555 (D.P.R. 2022) ................................................................................ 9, 11

*Bado-Santana v. Ford Motor Co.*,
283 F. Supp. 2d 520 (D.P.R. 2003) .................................................................................... 24

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ........................................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2005) ............................................................................................................. 6

*Betancourt-Colon v. Kimco PR Mgmt. Corp.*,
No. CV 22-1055, 2023 WL 6393065 (D.P.R. Sept. 30, 2023) .............................................. 6

*Brettel v. Omron Sci. Techs., Inc.*,
302 F. Supp. 3d 460 (D. Mass. 2018) ................................................................................. 19

*Carballo-Rodriguez v. Clark Equip. Co.*,
147 F. Supp. 2d 66 (D.P.R. 2001) ........................................................................................ 9

*Casiano v. Lozada Torres*,
91 P.R. Dec. 488 P.R. 473, 478 (1964) ............................................................................... 22

*City of Phila. v. Lead Indus. Ass'n*,
No. CIV. A. 90-7064, 1992 WL 98482 (E.D. Pa. Apr. 23, 1992), *aff'd sub nom.*
*City of Phila. v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112 (3d Cir. 1993) .................................... 9

*Collazo-Santiago v. Toyota Motor Corp.*,
149 F.3d 23 (1st Cir. 1998) .................................................................................................. 7

*Coquí Holdings, CRL v. Maderas 3C, LLC*,
SJ2021CV01050, 2023 WL 5286421 (P.R. Ct. App. July 18, 2023) ....................................... 7

*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*,
348 F.3d 271 (1st Cir. 2003) ............................................................................................... 12

*Díaz-Morales v. Universidad de P.R.*,
No. 20-1630, 2023 WL 3177792 (D.P.R. May 1, 2023) ........................................ 25

*Fernlund v. TransCanada USA Servs. Inc.*,
No. 1:13-cv-1495, 2014 WL 496463 (D. Or. Feb. 5, 2014) ................................. 10

*Fremaint v. Ford Motor Co.*,
258 F. Supp. 2d 24 (D.P.R. 2003) ........................................................................ 8, 9

*Garcia v. Hartford Fin. Servs. Grp., Inc.*,
No. CV 18-2013, 2022 WL 2836272 (D.P.R. June 1, 2022) .................................. 7

*Gent v. CUNA Mut. Ins. Soc'y*,
611 F.3d 79 (1st Cir. 2010) ..................................................................................... 2

*Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*,
768 N.W.2d 674 (Wis. 2009) ................................................................................... 9

*Griggs v. Robinson Secs.*,
No. 84 C 4679, 1985 WL 1163 (N.D. Ill. May 9, 1985) ...................................... 25

*Groll v. Shell Oil Co.*,
148 Cal. App. 3d 444 (Cal. Ct. App. 1983) .......................................................... 16

*Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*,
449 F.3d 85 (1st Cir. 2006) ..................................................................................... 7

*Jimenez-Ruiz v. Spirit Airlines, Inc.*,
794 F. Supp. 2d 344 (D.P.R. 2011) ................................................................. 19, 21

*Kaiser v. Armstrong World Indus., Inc.*,
678 F. Supp. 29 (D.P.R. 1987), *aff'd*, 872 F.2d 512 (1st Cir. 1989) ..................... 24

*Kwasnik v. 160 Water St., Inc.*,
No. 06 CIV. 1520, 2014 WL 7181171 (S.D.N.Y. Sept. 30, 2014) ......................... 24

*López-Rivera v. Hosp. Auxilio Mutuo, Inc.*,
247 F. Supp. 3d 185 (D.P.R. 2017) ....................................................................... 21

*Lozada v. Dejoy*,
No. 20-1674, 2023 WL 2433860 (D.P.R. Mar. 9, 2023) ........................................ 6

*A.G. ex rel Maddox v. Elsevier, Inc.*,
732 F.3d 77 (1st Cir. 2013) ................................................................................. 2, 6

*Martínez Romero v. Super Asphalt Pavement, Co.*,
No. KLAN201701052, 2018 WL 3037397 (P.R. Ct. App. Apr. 23, 2018) ........... 22

*Modern Cont'l Constr. Co. v. OSHA Rev. Comm'n*,
   305 F.3d. 43 (1st Cir. 2002) ................................................................................ 4

*Muñiz Negrón v. Worthington Cylinder Corp.*,
   No. 17-1985, 2021 WL 1199014 (D.P.R. Mar. 30, 2021) ............................... 8, 9, 12

*Muñiz-Rivera v. United States*,
   204 F. Supp. 2d 305 (D.P.R. 2002), *aff'd*, 326 F.3d 8 (1st Cir. 2003) .................... 19

*Muns. of Bayamón v. Exxon Mobil Corp.*,
   No. 22-1550, 2025 WL 600430 (D.P.R. Feb. 20, 2025) ................................. *passim*

*Ordonez v. Norfield Indus.*,
   No. JFM 05-2836, 2006 WL 1892421 (D. Md. June 1, 2006) ............................... 17

*Ortega Cabrera v. Tribunal Superior*,
   101 D.P.R. 612, 1 P.R. Offic. Trans. 842 (1973) ................................................ 22

*Perez v. Hyundai Motor Co.*,
   440 F. Supp. 2d 57 (D.P.R. 2006) ..................................................................... 11

*In re Processed Egg Prods. Antitrust Litig.*,
   931 F. Supp. 2d 654 (E.D. Pa. 2013) ................................................................. 25

*Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*,
   794 F.3d 200 (1st Cir. 2015) ............................................................................. 24

*Quintana-Ruiz v. Hyundai Motor Corp.*,
   303 F.3d 62 (1st Cir. 2002) ................................................................................. 8

*Ramirez de Arellano v. E. Air Lines, Inc.*,
   629 F. Supp. 189 (D.P.R. 1985) ........................................................................ 25

*Reed v. Pfizer, Inc.*,
   839 F. Supp. 2d 571 (E.D.N.Y. 2012) ............................................................... 13

*Reichwaldt v. Gen. Motors LLC*,
   304 F. Supp. 3d 1312 (N.D. Ga. 2018) ............................................................. 16

*Rodríguez v. Torres*,
   No. 11-1602, 2015 WL 1138256 (D.P.R. Mar. 13, 2015), *aff'd sub nom. Santos-Rodríguez v. Seastar Sols.*, 858 F.3d 695 (1st Cir. 2017) ....................................... 16

*Salvio v. Amgen Inc.*,
   No. 2:11–cv–00553, 2012 WL 517446 (W.D. Pa. Feb. 15, 2012) ...................... 13

*Sanchez v. Seguros Triple S, Inc.*,
   687 F. Supp. 2d 6 (D.P.R. 2010) ....................................................................... 18

*Sandoval v. PharmaCare US, Inc.*,
   145 F. Supp. 3d 986 (S.D. Cal. 2015) ........................................................ 2

*Santos-Rodríguez v. Seastar Sols.*,
   858 F.3d 695 (1st Cir. 2017) .......................................................... 12, 17

*Scarlett & Assocs., Inc. v. Briarcliff Ctr. Partners, LLC*,
   No. 1:05-cv-0145, 2009 WL 3151089 (N.D. Ga. Sept. 30, 2009) .................... 22

*Silva v. Am. Airlines, Inc.*,
   960 F. Supp. 528 (D.P.R. 1997) ................................................................ 14

*SUEZ Water N.Y. Inc. v. E.I du Pont de Nemours & Co.*,
   578 F. Supp. 3d 511 (S.D.N.Y. 2022) ....................................................... 17

*Taylor v. Am. Chem. Council*,
   576 F.3d 16 (1st Cir. 2009) ..................................................................... 17

*Torres v. Hosp. San Cristobal*,
   831 F. Supp. 2d 540 (D.P.R. 2011) ..................................................... 24, 25

*Torres v. Nat'l Starch & Chem. Corp.*,
   896 F. Supp. 71 (D.P.R. 1995) ......................................................... 13, 17

*Vulcan Tools of P.R. Inc. v. Makita U.S.A., Inc.*,
   No. 89-148, 1993 WL 719565 (D.P.R. Sept. 1, 1993), *aff'd*, 23 F.3d 564 (1st Cir.
   1994) ................................................................................... 5, 14, 19

*Walker v. Stauffer Chem. Corp.*,
   19 Cal. App. 3d 669 (Cal. Ct. App. 1971) ............................................... 16

**Statutes**

7 U.S.C. § 136v ........................................................................................... 15

29 U.S.C. § 654 ............................................................................................ 4

42 U.S.C. § 7412 .......................................................................................... 4

P.R. Laws Ann.
   tit. 31, § 5141 ..................................................................................... 7, 18
   tit. 31, § 5298 ........................................................................................ 24
   tit. 31, § 11720 ................................................................................. 18, 23
   tit. 32, § 2761 ....................................................................................... 22

**Regulations**

29 C.F.R.
    § 1910.1047 ........................................................................................................ *passim*
    § 1910.1200 .................................................................................... 5, 14, 19, 20

40 C.F.R
    § 152.3 ............................................................................................................ 10
    § 152.43 .......................................................................................................... 10
    § 156.70 .......................................................................................................... 15

**Other Authorities**

NESHAPs: Ethylene Oxide Emissions Standards for Sterilization Facilities Residual
    Risk and Technology Review, 89 Fed. Reg. 24,090 (April 5, 2024) ......................... 4

Restatement (Second) of Torts § 519 ............................................................... 23

U.S. EPA, *About Pesticide Registration*, https://www.epa.gov/pesticide-
    registration/about-pesticide-registration (last updated Nov. 6, 2024) ...................... 2

U.S. EPA, *EPA Proposes to Strengthen Clean Air Act Standards for Ethylene Oxide
    from Commercial Sterilization Facilities: Fact Sheet*,
    https://www.epa.gov/system/files/documents/2023-
    04/Fact%20Sheet%20Proposal%20to%20Address%20EtO%20Risks%20from%
    20Commercial%20Sterilizers.pdf (last visited May 14, 2025) ................................. 4

U.S. EPA, *Ethylene Oxide Proposed Interim Registration Review Decision Case
    Number 2275* (Mar. 2023), https://www.epa.gov/system/files/documents/2023-
    04/eto-pid.pdf ..................................................................................... 4, 5, 8, 10

U.S. EPA, *How to Register a Pesticide*, https://www.epa.gov/pesticide-
    registration/how-register-pesticide-guide-applicants-new-process (last updated
    Feb. 13, 2025) .................................................................................................... 2

U.S. EPA, *Pesticide Registration Manual: Chapter 6 - Amending a Registered
    Pesticide Product*, https://www.epa.gov/pesticide-registration/pesticide-
    registration-manual-chapter-6-amending-registered-pesticide  (last updated July
    10, 2025) .......................................................................................................... 15

U.S. EPA, *Reregistration Eligibility Decision for Ethylene Oxide* (Mar. 31, 2008),
    https://archive.epa.gov/pesticides/reregistration/web/pdf/ethylene-oxide-red.pdf ................ 15

U.S. EPA, *Salinas, Puerto Rico (Steri-Tech, Inc.)*, https://www.epa.gov/hazardous-
    air-pollutants-ethylene-oxide/forms/salinas-puerto-rico-steri-tech-inc (last
    updated June 2, 2025) ......................................................................................... 24

U.S. FDA, *Ethylene Oxide Sterilization Updates* (June 2, 2021),
    https://www.fda.gov/medical-devices/general-hospital-devices-and-
    supplies/ethylene-oxide-sterilization-facility-updates..............................................................4

U.S. FDA, *Sterilization for Medical Devices*, https://www.fda.gov/medical-
    devices/general-hospital-devices-and-supplies/sterilization-medical-devices (last
    updated May 14, 2025)...........................................................................................................4

U.S. FDA, *Submission and Review of Sterility Information in Premarket Notification
    (510(k)) Submissions for Devices Labeled as Sterile* (Jan. 8, 2024),
    https://www.fda.gov/media/74445/download .......................................................................11

## INTRODUCTION

Plaintiff Sheila M. Garcia Rivera's ("Plaintiff") Amended Complaint ("Complaint") should be dismissed against Balchem Corporation ("Balchem") for the same reasons as the nearly identical claims recommended for dismissal in *Perez-Maceira v. Customed*.[1] As in that case, Plaintiff's claims against Balchem based on its supply of ethylene oxide ("EtO") to Steri-Tech, Inc. ("Steri-Tech") are completely unfounded and should be dismissed with prejudice. Plaintiff alleges that Steri-Tech is a "**sophisticated corporation**" with decades of experience using EtO at its Salinas medical sterilization facility ("Steri-Tech Facility"). Compl. ¶¶ 45–46. But now Plaintiff implausibly claims that Balchem "assumed an ongoing role" at Steri-Tech's Facility through a "product stewardship training" that Plaintiff alleges occurred only **once every two years**. *Id.* ¶¶ 7–8, 71.[2] This is nonsense.

As Plaintiff has already admitted, Balchem did not own or operate the Steri-Tech Facility or emit EtO. Nor did Balchem have any identifiable duty or assume any duty under the law to supervise a "sophisticated" customer's operations or to provide any training to that customer's employees. Balchem sold an EPA and FDA-approved product to Steri-Tech, whose sterilization operations are regulated by a number of different federal and state agencies. Balchem provided warnings regarding EtO to Steri-Tech on its EPA-approved product labels and safety data sheets. The law required Steri-Tech, not Balchem, to deliver those warnings and Steri-Tech to provide EtO training to its own employees. In addition to these fatal flaws in Plaintiff's case, Plaintiff's claims are barred by Puerto Rico's one-year statute of limitations. Plaintiff delayed bringing this case for seventeen months after the *Perez-Maceira* case was filed, two and a half years after an EPA presentation in the Salinas community about the Steri-Tech Facility, and over five years after her alleged cancer diagnosis. Plaintiff's claims are time-barred under any theory and should be dismissed with prejudice.

---

[1] Report & Recommendation, *Perez-Maceira v. Customed*, No. 3:23-cv-01445 (August 29, 2023) (hereinafter R&R).

[2] Pl's. Ex. 2, Declaration of Emely Hernández ¶ 24, ECF No. 1-2; ECF 33-2.

# BACKGROUND

I. **Government Agencies Closely Regulate the Sale and Use of EtO in Medical Sterilization.**

A. **Balchem Distributes an EPA-Approved and Labeled Product.**

The EPA-registered product Balchem supplied to Steri-Tech is 100% ethylene oxide (CAS NO. 75-21-8).[3] EtO is registered by Balchem as a pesticide (EPA Reg. No. 36736) and approved for use as a medical sterilant by EPA under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). Compl. ¶ 61. Balchem also maintains a pesticide registration with the Puerto Rico Department of Agriculture (P.R. Reg. No. 03845-1).[4] Prior to registration of EtO as a pesticide, EPA required submission of extensive scientific data on EtO, information on its proposed uses, potential toxicity, and labeling. Compl. ¶ 61 n.10.[5] As part of the pesticide registration process, EPA develops risk assessments, including human health risks, for all new products ranging "from short-term toxicity to long-term effects such as cancer and reproductive system disorders." *About Pesticide Registration*. EPA also closely regulates all labeling of pesticide products, including EtO:

> We [U.S. EPA] review pesticide product labels as part of the licensing/registration process and must approve all label language before a pesticide can be sold or distributed in the United States. The overall intent of the label is to provide clear directions for effective product performance while minimizing risks to human health and the environment. It is a violation of federal law to use a pesticide in a manner

---

[3] *See* Ex. 1, Ethylene Oxide 100%, U.S. EPA: ARC Specialty Products – Balchem Corp., April 8, 2013 (hereinafter "EtO 100% Label"). The Court may take judicial notice of Balchem's product label and ethylene oxide registration. "Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging." *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 992 (S.D. Cal. 2015). In assessing a motion to dismiss, a court "may augment these facts and inferences [in the complaint] with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *A.G. ex rel Maddox v. Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (citation omitted).

[4] The allegations in this and other cases against Balchem are based on the continuing misconception that Balchem "manufactures" EtO. Compl. ¶ 24. The contention remains wholly unsupported. Balchem repackages EtO and supplies it as a sterilant to third parties. *See* Compl. ¶ 60; Pl's. Ex. 1, Bill of Lading, ECF No. 33-1.

[5] U.S. EPA, *How to Register a Pesticide*, https://www.epa.gov/pesticide-registration/how-register-pesticide-guide-applicants-new-process (last updated Feb. 13, 2025) (incorporated by reference in Complaint); *see also* U.S. EPA, *About Pesticide Registration*, https://www.epa.gov/pesticide-registration/about-pesticide-registration (last updated Nov. 6, 2024) ("In evaluating a pesticide registration application, EPA assesses a wide variety of potential human health and environmental effects associated with use of the product. The company that wants to produce the pesticide must provide data from studies that comply with our testing guidelines."); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (judicial notice may be taken of information from an official government website, as such facts are "'not subject to reasonable dispute'") (quoting Federal Rule of Evidence 201(b)).

inconsistent with its labeling. The courts consider a label to be a legal document. In addition, following labeling instructions carefully and precisely is necessary to ensure safe and effective use.

*Id.* EPA reviewed and approved all language on the EtO 100% label. Compl. ¶¶ 61–62.

As required by law, Balchem's product label is affixed to all EtO distributed in the United States, including Puerto Rico. *See* EtO 100% Label. The label includes numerous warnings regarding human health, cancer, and reproductive dangers. *Id.* The label provides information in English and Spanish regarding product hazards and detailed directions for use. This includes the requirement that sterilization facilities comply with the Ethylene Oxide Standard (29 CFR 1910.1047) during all handling and use of the product.[6] The EtO label requires use of approved equipment including "vacuum or gas-tight chambers" specifically "designed for use with EtO" that "have FDA clearance." *Id.* In addition to the label, Balchem's EtO is accompanied by a Safety Data Sheet ("SDS"), which contains an additional list of EtO hazards, health risks, and information regarding safe handling of the product.[7] Compl. ¶ 60. The SDS provides that all EtO emissions must be controlled at facilities: "Emission controls must be in compliance with Federal, State and local regulations." SDS at 7.

### B.    The Use of EtO at Medical Sterilization Facilities Is Highly Regulated.

Numerous federal and state agencies including the EPA, FDA, OSHA, and Puerto Rico Department of Natural and Environmental Regulations regulate EtO handling, storage, use, and emissions at medical sterilization facilities. EPA regulates the use and emissions of EtO at sterilization

---

[6] EtO 100% Label ("It is a violation of Federal Law to use this product in a manner inconsistent with its labeling. Employers in facilities that use ETO must comply with all of the requirements for ETO use specified in 29 CFR 1910.1047. This product may be used only in facilities that meet the requirements of the Ethylene Oxide Standard (29 CFR 1910.1047) . . . . This product may be used only by persons who have been trained in accordance with the Ethylene Oxide Standard (29 CFR 1910.1047).").

[7] *See* Ex. 2, Ethylene Oxide Safety Data Sheet. New Hampton, NY: ARC Specialty Products c/o Balchem Corp., at 5 (hereinafter "SDS") ("DANGER! Extremely flammable liquid and gas under pressure. May form explosive mixtures with air. Highly Reactive. Harmful or fatal if inhaled and may cause delayed lung injury, respiratory system and nervous system damage. Inhalation may cause dizziness or drowsiness. Liquid contact may cause frostbite. May cause allergic skin reaction. Harmful if swallowed. May cause adverse blood effects, liver and kidney damage based on animal data. Cancer and reproductive hazard.") (incorporated by reference in Complaint).

facilities as hazardous air pollutants under Section 112 of the Clean Air Act. 42 U.S.C. § 7412(b)(1). On April 11, 2023, EPA proposed amendments to the Clean Air Act's National Emissions Standards for Hazardous Air Pollutants ("NESHAPs") at commercial EtO sterilization facilities. In announcing the draft Clean Air Act rule for EtO, EPA indicated it had **no plans to ban** the use of EtO and identified the critical importance of EtO for continued use in medical sterilization.[8] On March 14, 2024, EPA announced the final NESHAPs rule.[9]

EtO use is also regulated by the FDA. Compl. ¶ 61 n.9.[10] The FDA closely monitors the use of EtO because of concerns regarding potential shortages of medical devices.[11] The FDA has a "robust standards program" for sterilization of medical devices.[12] Medical sterilizers must obtain FDA approval of their sterilization method prior to entering the sterilization market. Any variance from these standards requires FDA approval. *Id.*

OSHA also has strict regulations that apply to all occupational exposures to EtO, including at sterilization facilities. 29 C.F.R. § 1910.1047. OSHA imposes duties on employers including requirements mandating compliance with the occupational safety and health standards under the Act. 29 U.S.C. § 654; *Modern Cont'l Constr. Co. v. OSHA Rev. Comm'n*, 305 F.3d. 43, 49 (1st Cir. 2002) ("[T]he Act places primary responsibility on employers—that is, those who oversee and control the

---

[8] *See* U.S. EPA, *EPA Proposes to Strengthen Clean Air Act Standards for Ethylene Oxide from Commercial Sterilization Facilities:   Fact   Sheet*,   at   1–2,   https://www.epa.gov/system/files/documents/2023-04/Fact%20Sheet%20Proposal%20to%20Address%20EtO%20Risks%20from%20Commercial%20Sterilizers.pdf   (last visited May 14, 2025) (hereinafter "EPA Fact Sheet").

[9] NESHAPs: Ethylene Oxide Emissions Standards for Sterilization Facilities Residual Risk and Technology Review, 89 Fed. Reg. 24,090 (April 5, 2024).

[10] U.S. EPA, *Ethylene Oxide Proposed Interim Registration Review Decision Case Number 2275*, at 12–13 (Mar. 2023), https://www.epa.gov/system/files/documents/2023-04/eto-pid.pdf (hereinafter "EtO Proposed Interim Registration Review Decision") (incorporated by reference in Complaint).

[11] *See* U.S. FDA, *Ethylene Oxide Sterilization Updates* (June 2, 2021), https://www.fda.gov/medical-devices/general-hospital-devices-and-supplies/ethylene-oxide-sterilization-facility-updates ("The FDA is closely monitoring the supply chain effects of closures and potential closures of certain facilities that use ethylene oxide to sterilize medical devices prior to their use. The Agency is concerned about the future availability of sterile medical devices and the potential for medical device shortages that might impact patient care.").

[12] U.S. FDA, *Sterilization for Medical Devices*, https://www.fda.gov/medical-devices/general-hospital-devices-and-supplies/sterilization-medical-devices (last updated May 14, 2025).

work environment—to achieve compliance with its standards and ensure a safe workplace."). Puerto Rico courts have held that the duties required of employers to employees under OSHA do not extend to manufacturers and suppliers. *See Vulcan Tools of P.R. Inc. v. Makita U.S.A., Inc.*, No. 89-148, 1993 WL 719565, at *8 (D.P.R. Sept. 1, 1993), *aff'd*, 23 F.3d 564 (1st Cir. 1994). OSHA's EtO regulations specify that **employers** are responsible for providing employees with EtO product labels, SDSs, and training. 29 C.F.R. § 1910.1047(j) ("Employers shall ensure that each employee has access to labels on containers of EtO and to safety data sheets, and is trained in accordance with the requirements of [Hazard Communication Standard] HCS and paragraph (j)(3) of this section."). Under the HCS, employers also must provide employees information and training. 29 C.F.R. § 1910.1200(b), (h).

C.    **EtO Is Critical for Sterilization of Medical Devices in the United States.**

EtO is used on over 20 billion medical products per year in the United States. Compl. ¶ 53. EtO is used on approximately 50% of all sterilized medical devices, including an estimated 95% of all surgical kits. Compl. ¶ 61 n.9.[13] "EtO is highly valuable in the industrial sterilization setting – or any setting that has the objective of destroying, inactivating, or physically removing all microorganisms to meet defined sterility assurance standards – because it is a penetrative gas that has a high throughput capacity, is effective at a wide range of temperatures, and is compatible with a broad range of materials." *Id.* There are no "viable alternatives" to EtO.[14] According to EPA and FDA, the "absence of EtO for use on medical devices and equipment would cause widespread disruption to the availability of sterile medical devices including feeding tubes used in neonatal intensive care units, drug-eluting cardiac stents, catheters, shunts, and other implantable devices." *Id.*

---

[13] EtO Proposed Interim Registration Review Decision at 28 (incorporated by reference in Complaint).
[14] *Id.* ("Presently, there are no viable alternatives to EtO for the sterilization of certain medical devices and equipment. . . . Other technologies (e.g., hydrogen peroxide, chlorine dioxide, vaporized peracetic acid) are limited due to issues with material compatibility, scalability, and because they lack accepted validation measures for sterility assurance.").

## LEGAL STANDARD

The Supreme Court has directed that a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2005); *Lozada v. Dejoy*, No. 20-1674, 2023 WL 2433860, at *8 (D.P.R. Mar. 9, 2023) (quotation omitted). A court should grant a motion to dismiss when the complaint provides "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or the complaint "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Betancourt-Colon v. Kimco PR Mgmt. Corp*., No. CV 22-1055, 2023 WL 6393065, at *3 (D.P.R. Sept. 30, 2023) (citation omitted). "When allegations, though disguised as factual, are so threadbare that they omit any meaningful factual content, we will treat them as what they are: naked conclusions." *Maddox*, 732 F.3d at 81.

## ARGUMENT

**I.    The Complaint Should Be Dismissed for Failure to State a Claim Against Balchem.**

**A.    Plaintiff's Design Defect Claim Should Be Dismissed.**

Plaintiff's design defect claim (**Count V**) fails as a matter of law because Plaintiff does not identify a defective design under either a negligence or strict liability theory. Compl. ¶¶ 74, 144–160. There is no material difference in how the Court should evaluate claims under either theory in this case. Article 1802 of the Puerto Rico Civil Code of 1930 provides that a person who "by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage

so done." P.R. Laws Ann. tit. 31, § 5141; *Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85, 88 (1st Cir. 2006).[15] "A design defect is '[a]n imperfection occurring when the seller or distributor could have reduced or avoided a foreseeable risk of harm by adopting a reasonable alternative design, and when, as a result of not using the alternative, the product or property is not reasonably safe.'" *Garcia v. Hartford Fin. Servs. Grp., Inc*., No. CV 18-2013, 2022 WL 2836272, at *1 (D.P.R. June 1, 2022) (quoting *Defect*, Black's Law Dictionary (11th ed. 2019)). The scope of a design defect claim "does not extend to every conceivable risk, since the manufacturer is not an absolute insurer for all injuries their product may cause." *Coquí Holdings, CRL v. Maderas 3C, LLC*, SJ2021CV01050, 2023 WL 5286421, at *8 (P.R. Ct. App. July 18, 2023).

Courts in Puerto Rico have recognized the "consumer-expectancy" test and the "risk-benefit" test for design defect claims. *Garcia*, 2022 WL 2836272, at *1. Under the consumer-expectancy test, the plaintiff must allege that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Collazo-Santiago v. Toyota Motor Corp*., 149 F.3d 23, 25 (1st Cir. 1998) (citation omitted). Under the risk-benefit test, the plaintiff must allege "the product's design proximately caused his [or her] injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." *Id*. at 25–26 (citation omitted).

### 1.     Plaintiff Cannot Plead a Claim Under the Consumer Expectancy Test.

The consumer-expectancy test does not apply to Plaintiff's design defect claim because the "test 'cannot be the basis of liability in cases involving complex technical matters.'" *Alvarez-Cabrera v. Toyota Motor Sales, U.S.A., Inc*., No. CV 17-2305, 2020 WL 3620204, at *4 (D.P.R. July 2, 2020)

---

[15] While Plaintiff's Amended Complaint characterizes her strict liability claims against Balchem as claims brought under Restatement (Second) of Torts Section 402A, that theory does not apply because Plaintiff was not the intended user or consumer of EtO as required under the Restatement. Compl. ¶ 75.

(quoting *Quintana-Ruiz v. Hyundai Motor Corp*., 303 F.3d 62, 77 (1st Cir. 2002)). The consumer-expectancy test is "reserved for cases in which the *everyday experience* of the product's users permit a conclusion that the product's designs violated *minimum* safety assumptions . . . . The District of Puerto Rico has abstained from using this test in a case involving such a seemingly simple product as an aircraft overhead bin." *Muñiz Negrón v. Worthington Cylinder Corp*., No. 17-1985, 2021 WL 1199014, at *4 (D.P.R. Mar. 30, 2021) (citation omitted); *see also Fremaint v. Ford Motor Co*., 258 F. Supp. 2d 24, 29 (D.P.R. 2003) (holding that the test is inapplicable in a case "involving complex technical matters" (citation omitted)).

Balchem's EtO is not sold to or used by ordinary consumers, as Plaintiff admits. Compl. ¶ 45 (identifying Defendants as "sophisticated corporations and long-term suppliers, handlers and/or users" of EtO). EtO can only be used by employees at licensed commercial medical sterilizers. *Id*. ¶¶ 30, 53, 61 n.9;[16] EtO 100% Label. Because the public and ordinary consumers do not use and cannot have expectations regarding EtO's safety and performance as a medical sterilant, the consumer-expectancy test does not apply to Plaintiff's claim. *See Muñiz Negrón*, 2021 WL 1199014, at *14 (stating that "consumers would likely not have any specific expectations as to how safe propane cylinders should be") (cleaned up). A claim under the theory is not viable in this case.

### 2.    Plaintiff Fails to Plead a Claim Under the Risk Utility Test.

Plaintiff's design defect claim also should be dismissed under the risk-benefit test. Under this test, courts consider "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the . . . feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result

---

[16] EtO Proposed Interim Registration Review Decision at 12 (incorporated by reference in Complaint).

from an alternative design." *Carballo-Rodriguez v. Clark Equip. Co*., 147 F. Supp. 2d 66, 72 (D.P.R. 2001) (citation omitted). Plaintiff has not pled a viable design defect claim under this test either.

Instead of alleging that 100% EtO contains a design defect, Plaintiff continues to allege that the defect is that EtO "contained exclusively or primarily EtO without adequate available alteration(s)." Compl. ¶ 144. **The product is 100% EtO**.[17] The product cannot be redesigned to omit EtO because the product is EtO. "Puerto Rico courts have explained that 'an important part of the risk-utility test is the question of whether there is a safer alternate design which is mechanically feasible.'" *Muñiz Negrón*, 2021 WL 1199014, at *5 (quoting *Fremaint*, 258 F. Supp. 2d at 30). There is no feasible way to redesign the 100% EtO in this case without EtO, as Plaintiff still proposes.[18]

When a plaintiff attempts to allege a design defect based on the product itself rather than the specific design of the product, courts do not recognize a viable design defect claim. As one court explained, "[t]his is akin to alleging a design defect in champagne by arguing that the manufacturer should have made sparkling cider instead. The challenge is to the product itself, not to its specific design." *City of Phila. v. Lead Indus. Ass'n*, No. CIV. A. 90-7064, 1992 WL 98482, at *3 (E.D. Pa. Apr. 23, 1992), *aff'd sub nom. City of Phila. v. Lead Indus. Ass'n, Inc*., 994 F.2d 112 (3d Cir. 1993). Plaintiff's failure to identify a design defect in EtO requires dismissal of this claim. *See Ayala v. Kia Motor Corp*., 633 F. Supp. 3d 555, 574 (D.P.R. 2022) (dismissing "bald allegations" of design defect where plaintiff did not identify a specific defect).

Plaintiff continues to plead that a variety of alternatives could allegedly be used for medical sterilization instead of EtO, including "hydrogen peroxide gas plasma, gamma radiation, electron beam (E-Beam) radiation, steam sterilization (autoclaving), vaporized hydrogen peroxide (VHP),

---

[17] *See* EtO 100% Label ("Active Ingredient: Ethylene Oxide...100%").
[18] "[S]ome ingredients cannot be eliminated from a design without eliminating the product itself. When the ingredient cannot be designed out of the product, the Restatement (Second) instructs that . . . the proper claim is not design defect." *Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co*., 768 N.W.2d 674, 687 (Wis. 2009).

peracetic acid, and dry heat sterilization." Compl. ¶¶ 96–97. Plaintiff still misses the point. These are alternative products, not alternative designs for EtO. Plaintiff's position that EtO is a defective product that can be replaced by other "available" alternatives also contradicts the very authorities she cites in her Complaint. *Id.* ¶ 61 n.9 (citing EtO Proposed Interim Registration Review Decision at 28, which states "**there are no viable alternatives to EtO for the sterilization of certain medical devices and equipment**" (emphasis added)).[19]

### 3.    The Addition of an Odorant Is Not a Feasible Alternative Design.

In the Amended Complaint, Plaintiff contends that Balchem could have made "safety alteration(s)" to EtO including the addition of an "odorant." *Id.* ¶¶ 58, 144–45. Plaintiff speculatively compares the potential use of an odorant in EtO to odorization of propane. *Id.* ¶¶ 146–49.[20] Plaintiff has not alleged that EPA or FDA have ever proposed the use of an odorant in EtO, that an odorant would be scientifically or practically feasible to mitigate risk, or that it would be safe or effective for use on sterilized medical devices used by people. The proposal is simply not plausible.

Plaintiff's speculative suggestion regarding the addition of an odorant is also not a redesign of the product; it is a proposal for an entirely new product.[21] The amount of EtO cannot be reduced in Balchem's EtO 100% product and still be the **same registered, EPA product**.[22] Instead, this hypothetical new product would require EPA review and approval as a new product. *Id.* The new product would need to undergo toxicity and efficacy testing by EPA and ultimately would have to be

---

[19] *See supra* note 14.

[20] Notably, odorants used in natural gas have been alleged to be toxic. *See Fernlund v. TransCanada USA Servs. Inc.*, No. 1:13-cv-1495, 2014 WL 496463, at *1–2 (D. Or. Feb. 5, 2014).

[21] 40 C.F.R § 152.3 ("*Active ingredient* means any substance (or group of structurally similar substances if specified by the Agency) that will prevent, destroy, repel or mitigate any pest . . . . *Inert ingredient* means any substance (or group of structurally similar substances if designated by the Agency), other than an active ingredient, which is intentionally included in a pesticide . . . .").

[22] Under EPA guidance, alternate formulations are permitted for products, but pesticides cannot have varying amounts of active ingredients. 40 C.F.R. § 152.43 ("(a) A product proposed for registration must have a single, defined composition, except that EPA may approve a basic formulation and one or more alternate formulations for a single product. (b) An alternate formulation must meet the criteria listed in paragraph (b) (1) through (4) of this section . . . . (1) The alternate formulation must have the same certified limits for each active ingredient as the basic formulation.").

marketed and sold as a different product than the 100% EtO. *Id*. FDA also would consider a new EtO product including an odorant a "Novel Sterilization Method"[23] that would require separate FDA review to ensure the safety and effectiveness of the novel product. "[A] sterilization method that uses a combination of chemicals, and the combination has not been previously cleared or approved by FDA as a sterilant, would be considered novel even if the individual chemicals in the combination have been previously cleared or approved independently as chemical sterilants." *Id*. Plaintiff has therefore alleged that Balchem should have supplied Steri-Tech with a completely different product ("EtO with odorant"). But Plaintiff has not identified a design defect in the EtO 100% product that Balchem supplied in this case. *See Ayala*, 633 F. Supp. 3d at 574.

### 4.    Plaintiff Does Not Allege a Design Defect Proximately Caused Her Injuries.

Finally, Plaintiff's design defect claims should be dismissed because Plaintiff does not plausibly allege that design defects in EtO could have proximately caused Plaintiff's injuries. *See Muns. of Bayamón v. Exxon Mobil Corp.*, No. 22-1550, 2025 WL 600430, at *41 (D.P.R. Feb. 20, 2025); *see also Ayala*, 633 F. Supp. 3d. at 570 ("Plaintiffs have the burden of proving causation between the design defect and the damage subject of this claim."); *Perez v. Hyundai Motor Co.*, 440 F. Supp. 2d 57, 73 (D.P.R. 2006) ("Proximate cause requires that the damages complained of be either a direct result or a reasonably probable consequence of the act or omission at issue."). Plaintiff alleges throughout the Complaint that the cause of Plaintiff's alleged injuries was the emission of EtO from Steri-Tech's Facility. Compl. ¶¶ 25, 29, 31, 33, 44, 48, 57, 64–73, 80–84. Plaintiff therefore cannot

---

[23] "**A Novel Sterilization Method** is a method that FDA has not reviewed and determined to be adequate to effectively sterilize the device for its intended use." U.S. FDA, *Submission and Review of Sterility Information in Premarket Notification (510(k)) Submissions for Devices Labeled as Sterile*, at 5 (Jan. 8, 2024), https://www.fda.gov/media/74445/download.

plausibly allege that a design defect in EtO proximately caused Plaintiff's alleged injuries. Plaintiff's design defect claim (**Count V**) should therefore be dismissed with prejudice.

### B.    Plaintiff's Failure to Warn Claim Should Be Dismissed.

Plaintiff's failure to warn claim (**Count IV**) against Balchem should be dismissed with prejudice. Courts applying Puerto Rico law have held that a plaintiff who alleges a failure to warn claim must plead the following: "(1) the manufacturer knew, or should have known of the risk inherent in the product; (2) there were no warnings or instructions, or those provided were inadequate; (3) the absence of warnings made the product inherently dangerous; [and] (4) the absence of adequate warnings or instructions was the proximate cause of plaintiff's injury." *Cruz-Vargas v. R.J. Reynolds Tobacco Co*., 348 F.3d 271, 276 (1st Cir. 2003). To succeed on a failure to warn claim, a plaintiff "must 'adduce evidence that the absence of warnings made the product inherently dangerous.'" *Muñiz Negrón*, 2021 WL 1199014, at *5 (citation omitted). If a plaintiff's injuries or damages would have occurred regardless of the warning, the plaintiff cannot succeed with the claim. *See Santos-Rodríguez v. Seastar Sols*., 858 F.3d 695, 697–98 (1st Cir. 2017) (upholding dismissal of failure to warn claim where there was no causal connection between alleged failure to warn and plaintiff's alleged injury).

In the Amended Complaint, Plaintiff argues that Balchem was required to warn Steri-Tech regarding the potential consequences of emitting EtO into the community. Compl. ¶¶ 132–34. This argument fails for two reasons. First, Balchem's EPA-approved EtO product label and SDS provided Steri-Tech adequate warnings on the risks of EtO. Balchem was not required to provide additional warnings beyond those mandated by EPA and OSHA. Second, Plaintiff's allegations fail on causation grounds because she admits throughout the Complaint that Steri-Tech already knew or should have known **the exact same risks** Plaintiff claims should have been added to Balchem's EtO label and SDS. In sum, the warnings Plaintiff proposes would not have changed anything.

**1.    Plaintiff Fails to Allege that the EPA-Approved Warnings Were Insufficient.**

Plaintiff fails to plausibly allege that the warnings Balchem provided to Steri-Tech were inadequate. Compl. ¶¶ 131–42. Contrary to Plaintiff's conclusory allegations that Balchem somehow failed to provide a warning that EtO is potentially dangerous, toxic, and/or carcinogenic (Compl. ¶¶ 133–38), Balchem's EtO label states, in both English and Spanish: "DANGER! CANCER HAZARD AND REPRODUCTIVE HAZARD." EtO 100% Label; *see also Salvio v. Amgen Inc*., No. 2:11–cv–00553, 2012 WL 517446, at *6 (W.D. Pa. Feb. 15, 2012) (dismissing failure to warn claim because the "warning provided by Defendants advised Decedent's prescribing physicians of the very injury that occurred"); *Reed v. Pfizer, Inc*., 839 F. Supp. 2d 571, 576–77 (E.D.N.Y. 2012) (same). The label further instructs that all steps must be taken by those handling EtO to comply with the law and prevent releases of EtO. EtO 100% Label. The label states: "This product may be used only in facilities that meet the requirements of the Ethylene Oxide Standard (29 C.F.R. 1910.1047)." *Id*.

Plaintiff acknowledges that the SDS for EtO includes warnings that EtO is a "[c]ancer and reproductive hazard." Compl. ¶ 60. The SDS further provides that the medical sterilizers' "[e]mission controls must be in compliance with Federal, State and local regulations." SDS at 7. The SDS also provides that those using EtO must comply with all applicable laws. *See id*. at 7–8; *see Torres v. Nat'l Starch & Chem. Corp.*, 896 F. Supp. 71, 74–75 (D.P.R. 1995) (holding that manufacturer provided adequate warning where it supplied company with OSHA warnings). In sum, Balchem provided adequate warnings to Steri-Tech that addressed the potential hazards of EtO.

Plaintiff alleges that Balchem had a further obligation to warn Steri-Tech's employees, but the law is unequivocal that Steri-Tech was responsible for the communication of warnings related to EtO including product labels, SDSs, and appropriate training to its own employees under OSHA. Compl. ¶¶ 47, 103, 136, 139; 29 C.F.R. § 1910.1047(j) ("Employers shall ensure that each employee

has access to labels on containers of EtO and to safety data sheets, and is trained in accordance with the requirements of HCS and paragraph (j)(3) of this section."); 29 C.F.R. § 1910.1200(h)(1) ("Employers shall provide employees with effective information and training on hazardous chemicals in their work area . . . Chemical-specific information must always be available through labels and safety data sheets."); *Vulcan Tools of P.R. Inc.*, 1993 WL 719565, at *8 (holding that employers, not product manufacturers have the duty to provide chemical safety information to employees). The duty to provide warnings to its employees was Steri-Tech's obligation under federal and Puerto Rico law.

### 2. Balchem Had No Obligation to Provide Warnings About Steri-Tech's Emissions.

Plaintiff further alleges that Balchem was responsible for providing warnings to Steri-Tech "not only regarding the hazards of EtO during use but also regarding the risks posed by emissions to surrounding communities." Compl. ¶¶ 133–34. The contention that Balchem's duty to warn extends beyond the use of a product to include Steri-Tech's emissions is not supported under Puerto Rico law. *See Muns. of Bayamón*, 2025 WL 600430, at *41 (holding that there is no duty to warn of the effects of a product, only the reasonably foreseeable uses of the product). As in *Bayamón*, Plaintiff seeks to impose a duty to warn of **the effects** of the use of EtO on third parties rather than the reasonably foreseeable **uses of** the product at the Steri-Tech Facility. That purported duty is well beyond the scope of a product supplier's responsibility. *See Silva v. Am. Airlines, Inc*., 960 F. Supp. 528, 533 (D.P.R. 1997). Balchem had no duty to warn Steri-Tech regarding the potential impacts of emissions outside Steri-Tech's Facility.

Plaintiff further alleges that Balchem could have added additional warnings to the EtO product label that might have prevented EtO emissions from Steri-Tech's Facility, but that Balchem simply

chose not to do so. Compl. ¶¶ 77–78, 135, 137. Again, Plaintiff is wrong as a matter of law.[24] Balchem had no authority to add information to the "directions for use" of EtO on the product label without EPA approval. 40 CFR § 156.70(c) ("[S]pecific statements pertaining to the hazards of the product and its uses must be approved by the Agency."). EPA would not permit any of the modifications to the label that Plaintiff suggests without pre-approval. Compl. ¶¶ 77, 137.

Finally, Plaintiff falsely claims that Balchem should have required "warnings against venting EtO directly to the outside" on the EtO label. Comp. ¶¶ 77, 135. These particular claims are expressly preempted under FIFRA because EPA specifically mandated directions for use on the EtO label relating to ventilation in 1996, and proper aeration of sterilization facilities in March 2008.[25] FIFRA explicitly bars labeling directions that conflict with EPA-mandated language: "Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b).[26] Put simply, only EPA can decide EtO labeling requirements related to the alleged emission risks of EtO.

### 3.    Balchem Had No Duty to Directly Warn Plaintiff.

Plaintiff also does not plausibly allege that Balchem had a duty to directly warn Plaintiff regarding alleged emissions of EtO from Steri-Tech's Facility. Compl. ¶¶ 78, 137. Puerto Rico law does not recognize a product supplier's duty to warn the general public about the effects of the use of

---

[24] *See* U.S. EPA, *Pesticide Registration Manual: Chapter 6 – Amending a Registered Pesticide Product*, https://www.epa.gov/pesticide-registration/pesticide-registration-manual-chapter-6-amending-registered-pesticide (last updated July 10, 2025) ("Almost all modifications to the composition, labeling, or packaging of a registered product must be submitted to EPA with an application for amended registration.").

[25] In March 2008, pursuant to a period reregistration of EtO under FIFRA, EPA required an update to the directions for use of EtO: "In order to reduce ambient levels of ethylene oxide, lengthy facility aeration is encouraged." EtO Label; U.S. EPA, *Reregistration    Eligibility    Decision    for    Ethylene    Oxide*, at    53    (Mar.    31,    2008), https://archive.epa.gov/pesticides/reregistration/web/pdf/ethylene-oxide-red.pdf. The EtO label also includes the EPA-mandated precaution: "Store and use with adequate ventilation in accordance with the Ethylene Oxide Standard (29 CFR 1910.1047)." EtO Label. EPA adopted these OSHA requirements for EtO labels in 1996. Reregistration Decision at 12.

[26] *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 452 (2005) ("In sum, under our interpretation, § 136v(b) retains a narrow, but still important, role. . . . The provision also pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations.").

a product by a third party. *See Muns. of Bayamón*, 2025 WL 600430, at *41 (declining to find manufacturers had a duty to warn public about potentially negative effects of the use of petroleum products). As discussed above, product suppliers only have a duty to warn the end users, in this case Steri-Tech, regarding products. *See Groll v. Shell Oil Co*., 148 Cal. App. 3d 444, 449–50 (Cal. Ct. App. 1983) (holding that manufacturer of lantern fuel was only responsible for providing adequate warnings to distributor); *see also Rodríguez v. Torres*, No. 11-1602, 2015 WL 1138256, at *10, *13 (D.P.R. Mar. 13, 2015) (applying principles in *Groll* under Puerto Rico law), *aff'd sub nom. Santos-Rodríguez v. Seastar Sols.*, 858 F.3d 695 (1st Cir. 2017); *Walker v. Stauffer Chem. Corp*., 19 Cal. App. 3d 669, 674 (Cal. Ct. App. 1971) (holding that manufacturer had no general duty to warn public about dangers of sulfuric acid). Moreover, Balchem could not have feasibly warned unknown third parties regarding EtO emissions from a sterilization facility that it does not own or operate. *See Reichwaldt v. Gen. Motors LLC*, 304 F. Supp. 3d 1312, 1317 (N.D. Ga. 2018) (holding manufacturer had no duty to warn third parties where duty could not reasonably be fulfilled by manufacturer).

Plaintiff's proposals for further actions that **Steri-Tech should have taken** to warn third parties support the absence of such a duty owed by Balchem as a product supplier. Compl. ¶ 78 (alleging Balchem "could have required" Steri-Tech to post signs, distribute fliers, or conduct public outreach). The obligation to post signs or provide other warnings at facilities are the responsibility of facility owners and operators. 29 C.F.R. § 1910.1047(j)(2)(i) ("The employer shall post and maintain legible signs demarcating regulated areas and entrances or access ways to regulated areas . . ."). Plaintiff's claim that Balchem should have been involved in posting signs on Steri-Tech's property, distributing fliers, or contacting the local community are impracticable and untethered to the law. There is no basis for imposing such far-reaching obligations on a product supplier.

### 4.    Plaintiff's Failure to Warn Claims Are Not Viable on Causation Grounds.

Plaintiff pleads herself out of a failure to warn claim against Balchem on causation grounds because she admits in the Complaint that Steri-Tech already knew or should have known of the potential dangers from emissions of EtO. Compl. ¶¶ 15–16 ("At all relevant times, the Defendants knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and causes various illnesses. . . . [I]ts carcinogenic and DNA-damaging effects have been widely studied and known since the 1940s and **definitively known** to Defendants **since at least 1985**. Notwithstanding the known risks, Defendants chose to operate in a way that caused EtO emissions in a densely populated area . . . ." (emphasis added)). Steri-Tech's admitted knowledge of the dangers of EtO emissions from its own Facility is a key contention repeated throughout Plaintiff's Complaint. Compl. ¶¶ 44, 46, 87–89. Plaintiff alleges Steri-Tech was a "sophisticated corporation" with "superior knowledge and access to information" on EtO, but Plaintiff claims "[d]espite knowing these risks" Steri-Tech "did not comply with safe and prudent methods of EtO sterilization." Compl. ¶¶ 45, 47.[27]

By Plaintiff's own repeated admissions, the warnings and instructions provided by Balchem regarding EtO through its EtO 100% label and SDS could not have prevented Steri-Tech's alleged emissions. Compl. ¶¶ 44–50; *see Santos-Rodríguez*, 858 F.3d at 698–99; *see also Taylor v. Am. Chem. Council*, 576 F.3d 16, 24 (1st Cir. 2009) (holding that "there is no duty to warn an 'end user' of a product's latent characteristics or dangers when the user knows or reasonably should know of those dangers"); *SUEZ Water N.Y. Inc. v. E.I du Pont de Nemours & Co*., 578 F. Supp. 3d 511, 563 (S.D.N.Y. 2022) (dismissing claim against chemical manufacturer where plaintiff failed to allege warning "would have ameliorated the harm"). Steri-Tech had detailed knowledge regarding its own

---

[27] *See Torres*, 896 F. Supp. at 74–75 (holding that a supplier could not be held liable for failure to warn sophisticated buyer of product); *Ordonez v. Norfield Indus*., No. JFM 05-2836, 2006 WL 1892421, at *1 (D. Md. June 1, 2006) (granting motion to dismiss failure to warn claim because plaintiff did not allege defendants were not sophisticated users).

sterilization operations, EtO emissions limits, and emission control equipment. Compl. ¶¶ 48, 80–84, 165–67. As Plaintiff admits, additional warnings by Balchem could not have prevented Plaintiff's alleged injuries. Accordingly, Plaintiff's failure to warn claim should be dismissed with prejudice.

### C.    Plaintiff's Negligence Claim Should Be Dismissed.

Plaintiff has not alleged a viable claim for negligence against Balchem (**Count I**). Plaintiff's claim against Balchem fails because she does not allege Balchem had a duty or breached a duty of care.[28] Plaintiff does not identify the statutory basis for her negligence claim, but Article 1802 of the Civil Code of 1930[29] only permits recovery of damages on a showing that a defendant "cause[d] damage to another through fault or negligence." P.R. Laws Ann. tit. 31, § 5141. A negligence claim requires pleading: "(1) a duty requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) proof of damage; and (4) a causal connection between the damage and the tortious conduct." *Sanchez v. Seguros Triple S, Inc*., 687 F. Supp. 2d 6, 9 (D.P.R. 2010).

### 1.    Balchem Did Not Owe a Legal Duty to Plaintiff.

Plaintiff fails to identify any duty of care Balchem owed to Plaintiff. Nor should the Court create such a duty where none exists as a matter of law. Plaintiff vaguely alleges that "Defendants" had a duty of care to Plaintiff to "prevent her exposure to hazardous levels of EtO." Compl. ¶ 102.[30] Plaintiff further wrongly attributes a duty of care to Balchem to "exercise reasonable care in providing product stewardship training on the handling of EtO . . . and in advising on the chemical's safe use."

---

[28] Plaintiff's failure to plead that Balchem's alleged conduct was the proximate cause of Plaintiff's injuries (Steri-Tech's emissions of EtO) provides further grounds for dismissal of this claim. Compl. ¶¶ 31, 44, 48, 103, 80–84, 165–67.

[29] "Tort liability, both in its extent and nature, is established by the law in force at the time of the act or omission giving rise to such liability." P.R. Laws Ann. tit. 31, § 11720. Moreover, "[i]f any acts or omissions occurred before [the 2020] Code came into force and others occurred after, liability is governed by the previous legislation." *Id*. Since the allegations in this case include facts from before and after 2020, the Puerto Rico Civil Code of 1930 should govern, particularly if any differences arise in the applicable legal standard under the two Codes as to any of Plaintiff's claims.

[30] Notably, Balchem also does not have a duty because Plaintiff does not allege that Balchem had a relationship with Plaintiff or that Balchem had any other specific legal obligation to Plaintiff.

*Id.* ¶ 104.[31] None of those duties are duties Balchem owed Plaintiff as a product supplier. As noted above, OSHA's chemical handling, education, training, and supervision requirements, including specifically for EtO, place these responsibilities on employers, not product manufacturers or suppliers. 29 C.F.R. § 1910.1047(j); 29 C.F.R. § 1910.1200(b), (h); *see Vulcan Tools of P.R. Inc.*, 1993 WL 719565, at *8. Accordingly, Plaintiff's negligence claim against Balchem is not viable.

Even if Balchem did not owe a duty, Plaintiff contends that Balchem **assumed the duty** to train Steri-Tech's employees. Compl. ¶¶ 72–74. But Puerto Rico law does not support liability based on an assumed duty where there is no existing legal obligation. *See Jimenez-Ruiz v. Spirit Airlines, Inc.*, 794 F. Supp. 2d 344, 351 (D.P.R. 2011) ("As a general rule, an individual is only liable for his own acts or omissions . . . . A third party can only be liable for the acts or omissions of others when clearly specified in the law.") (citations and quotations omitted). Likewise, Plaintiff's reliance in the Complaint on *Muñiz-Rivera v. United States*, 204 F. Supp. 2d 305 (D.P.R. 2002), *aff'd*, 326 F.3d 8 (1st Cir. 2003), does not support an assumed duty of care in this case.[32] The *Muñiz-Rivera* decision supports Balchem's position that it had no duty to provide training. Following an amendment to a law that **removed** "government regulations" requiring the government agency to supervise home construction, the court decided "it cannot be held that the Government has voluntarily undertaken a duty . . . or that the borrowers could reasonably rely on the Government's inspection or supervision of the constructions." *Id.* at 313–14. As in *Muñiz-Rivera*, Plaintiff cannot identify any legal obligation requiring Balchem to undertake any duty to provide training to Steri-Tech's employees. Federal and

---

[31] Plaintiff alleges that "Steri-Tech's EtO sterilization process" was "actively shaped by Balchem's recurring 'product stewardship' trainings and operational guidance on EtO handling" Compl. ¶ 47. But Plaintiff's witness from Steri-Tech indicates that he was trained by Steri-Tech and that he also trained "new operators." Hernandez Decl. ¶¶ 6–8, 13. He also testified that Balchem only provided trainings once every two years. *Id.* ¶ 26. Plaintiff's description of Balchem's alleged conduct and attempts to tie Balchem to Steri-Tech's operations are misleading, inconsistent, and implausible. *Cf.* ¶ 103.

[32] Plaintiff's also cite to the inapposite decision *Brettel v. Omron Sci. Techs., Inc.*, 302 F. Supp. 3d 460, 467 (D. Mass. 2018). But that case, applying Massachusetts law, involved the alleged duty owed by a third-party safety consultant hired for the express purpose of identifying workplace hazards, not a product supplier.

Puerto Rico law maintain those legal duties are only held by employers. Nor can Plaintiff plausibly allege that she could have justifiably relied on Balchem to fulfill such obligations.

Finally, even if Balchem had assumed a duty to provide OSHA training to Steri-Tech's employees on EtO (which it does not admit), it had no duty to "require or recommend implementation of effective safeguards to prevent community exposure" to EtO as part of that training. Compl. ¶¶ 59, 72–73, 105(c)(d). The EtO OSHA training regulations require employers to include: (A) "[m]ethods . . . that may be used to detect the presence or release of EtO in the work area;" (B) the "physical and health hazards of EtO;" (C) "measures employees can take to protect themselves from hazards associated with EtO exposure" and (D) "details of the hazard communication program developed by the employer, including an explanation of the labeling system and how employees can obtain and use the appropriate hazard information." 29 C.F.R. § 1910.1047(j)(3)(iii). Nothing in the EtO rule or OSHA's HCS addresses employee training on the potential risks of EtO emissions from sterilization facilities. *Id*; 29 C.F.R. § 1910.1200(h). As is apparent on the face of the EtO and HCS OSHA regulations, such employee trainings have nothing to do with controlling emissions of EtO from sterilization facilities, which are regulated by EPA and Puerto Rico under the Clean Air Act. Plaintiff does not allege Balchem violated the Clean Air Act. The Court should therefore reject Plaintiff's implausible speculation that Balchem's alleged employee training "**upon information and belief**, failed to prevent unsafe emissions." Compl. ¶ 42 (emphasis added). As Plaintiff admits throughout the Complaint, Balchem did not own or operate Steri-Tech's sterilization or pollution control equipment, and Steri-Tech was responsible for its own alleged EtO emissions. *Id*. ¶¶ 11, 31, 44, 48, 80–84, 103, 164–67. Balchem had no duty of care related to Steri-Tech's alleged EtO emissions.

### 2.    Plaintiff Fails to Plead that Balchem Breached a Duty.

In addition to failing to plead that Balchem owed a duty to the Plaintiff, Plaintiff fails to plead that Balchem breached any duty. Plaintiff's updated allegations of breach specifically mention

Balchem in several instances, but the allegations still do not relate to any duties specifically owed by Balchem. Plaintiff identifies seven different breaches of duty in the Complaint. Two of the alleged breaches only mention Steri-Tech's operations. Compl. ¶ 105(a)(b). Two more alleged breaches relate to Plaintiff's allegations regarding employee training on EtO for which Balchem had no legal duty. Compl. ¶ 105(c)(d); *Jimenez-Ruiz*, 794 F. Supp. 2d at 351. The fifth alleged breach against Balchem and Steri-Tech is vaguely pleaded as the failure "to implement and enforce adequate control measures to contain EtO emissions." Compl. ¶ 105(e). Likewise, that was Steri-Tech's duty. As discussed above, Balchem did not own or operate the Steri-Tech Facility or its emissions controls. Even Plaintiff admits that Steri-Tech is responsible for its own emissions controls and that Balchem as a product supplier did not actually emit EtO. *See* Compl. ¶¶ 60, 70.[33] Finally, Plaintiff alleges that Steri-Tech and Balchem failed to warn Plaintiff and exposed her to EtO. Compl. ¶ 105(f)(g). As discussed above, as a product supplier Balchem had no legal duty to directly warn Plaintiff regarding the effects of the operations of a sophisticated third-party sterilizer. *See Muns. of Bayamón*, 2025 WL 600430, at *41. It is also unclear how Balchem "subjected" Plaintiff to EtO when it did not own or operate the Steri-Tech Facility or emit EtO. *See López-Rivera v. Hosp. Auxilio Mutuo, Inc*., 247 F. Supp. 3d 185, 189 (D.P.R. 2017) ("Even under the rules of 'notice pleading,' the plaintiff must 'satisfy the requirement of providing . . . [the] grounds on which the claim rests.'" (citation omitted)). Accordingly, Plaintiff's negligence claim should be dismissed with prejudice.

### D.    Plaintiff's Private Nuisance Claim Should Be Dismissed.

The Court should dismiss Plaintiff's private nuisance claim (**Count II**) against Balchem with prejudice because it is based on alleged emissions of EtO. Compl. ¶¶ 111–17. Puerto Rico law

---

[33] Notably, Plaintiff does not, and cannot, allege that Balchem had control over or engaged in any activities relating to the operation of Balchem's sterilization equipment or air pollution controls or had access to Steri-Tech's internal emissions, monitoring, testing, or reporting data. Compl. ¶ 105. All such activities were the sole responsibility of Steri-Tech. Compl. ¶¶ 31, 44, 48, 80–84, 103, 164–67.

generally defines "nuisance" as "anything which is injurious to health, indecent, or offensive to the senses, or an obstruction to free use of property so as to interfere with the comfortable enjoyment of life or property, or that is a nuisance to the well-being of a neighborhood, or to a large number of persons." Art. 277 of the Code of Civil Procedure, P.R. Laws Ann. tit. 32, § 2761. To obtain relief based on a nuisance theory, a plaintiff must show that the defendant's activities and conduct "exceed[ed] the bounds of reasonableness" and imposed an excessive burden on the plaintiff. *Casiano v. Lozada Torres*, 91 P.R. Dec. 488, 493, 91 P.R. 473, 478 (1964). Even if an activity is declared a nuisance, Puerto Rico courts have held that the availability of damages under Article 277 depends on the plaintiff establishing the elements of a traditional tort, including actual damages and causation. *See Martínez Romero v. Super Asphalt Pavement, Co*., No. KLAN201701052, 2018 WL 3037397, at *10–11 (P.R. Ct. App. Apr. 23, 2018).

Plaintiff cannot plausibly allege a claim for private nuisance against Balchem because Plaintiff does not allege that Balchem owned or operated Steri-Tech's Facility in Puerto Rico or emitted EtO. Compl. ¶¶ 24–25, 31, 44, 48, 60, 70, 80–84, 164–67; *see Muns. of Bayamón*, 2025 WL 600430, at *42 (recommending dismissal of climate change nuisance claims on causation grounds where defendants did not operate facilities or burn fossil fuels in Puerto Rico); *see also Scarlett & Assocs., Inc. v. Briarcliff Ctr. Partners, LLC*, No. 1:05-cv-0145, 2009 WL 3151089, at *15 (N.D. Ga. Sept. 30, 2009) ("The essential element of nuisance is control over the cause of the harm."). Likewise, because Balchem did not have control over the sterilization equipment or emissions equipment owned and operated by Steri-Tech, Balchem could not have plausibly abated the nuisance. R&R at 19 (citing *Ortega Cabrera v. Tribunal Superior*, 101 D.P.R. 612, 1 P.R. Offic. Trans. 842, 848 (1973)).

In a last-ditch effort to save her claims, Plaintiff alleges that Balchem perpetuated the nuisance created by Steri-Tech by providing product stewardship trainings. Compl. ¶ 113. Plaintiff argues that

the "trainings were not incidental" and "helped shape operational conduct" at the Facility. *Id.* But these new allegations are contradicted by Plaintiff's other allegations in the Complaint. Plaintiff alleges that Balchem's training was "woefully inadequate" because Balchem only provided it **once every two years**. Compl. ¶ 71. Plaintiff does not and cannot plausibly allege Balchem perpetuated a nuisance based on a biennial training when Plaintiff admits that Steri-Tech was a "sophisticated" corporation that owned and operated sterilization and air emissions control equipment, and Plaintiff alleges Steri-Tech actually emitted the EtO that caused Plaintiff's injuries. Compl. ¶¶ 31, 44, 48, 80– 84, 103, 165–67. Plaintiff's nuisance claim against Balchem should be dismissed with prejudice.

### E.     Plaintiff's Abnormally Dangerous Activity Claim Should Be Dismissed.

Plaintiff's abnormally dangerous activity claim (**Count III**) is not viable as a matter of law. First, the abnormally dangerous liability claim fails because Plaintiff alleges injuries and damages that pre-date the Civil Code of 2020. P.R. Laws Ann. tit. 31, § 11720. No claim for "abnormally dangerous activity" appears under the applicable Civil Code of 1930. Nor is there any evidence that Puerto Rico courts have adopted the principle of "abnormally dangerous" activity under Restatement (Second) of Torts Section 519. Compl. ¶ 120. Section 519 of the Second Restatement does not include even a single reference to any state or federal case in Puerto Rico recognizing a claim for "abnormally dangerous activity." Restatement (Second) of Torts § 519. Second, even if such a claim existed, Plaintiff has failed to plead that Balchem was engaged in an abnormally dangerous activity in Puerto Rico. Again, Plaintiff cannot reasonably dispute that Balchem did not own or operate Steri-Tech's facility or emit EtO. Compl. ¶¶ 24–25, 31, 44, 48, 60, 70, 80–84, 103, 165–67. Accordingly, the abnormally dangerous activity claim against Balchem should be dismissed with prejudice.

### F.     Plaintiff's Claims Are Time-Barred.

Plaintiff's claims are time-barred because her alleged injuries occurred more than a year prior to initiation of this lawsuit. Plaintiff alleges she has lived near Steri-Tech's facility for forty years,

and she alleges that was diagnosed with breast cancer in 2019. Compl. ¶¶ 90–91.[34] Because Plaintiff's claims sound in tort, Puerto Rico's one-year statute of limitations "for general tort claims" bars her claims. *Torres v. Hosp. San Cristobal*, 831 F. Supp. 2d 540, 543–44 (D.P.R. 2011); P.R. Laws Ann. tit. 31, § 5298. "[W]hen a tort claim is filed more than one year after the injury was caused, the plaintiff bears the burden of proving the timeliness of his claim as well as the lack of knowledge to assert it within the statutory period." *Torres*, 831 F. Supp. 2d at 544.

Plaintiff does not explain why her claims were filed late. In August 2022 and January 2023, EPA hosted public meetings about EtO for the Salinas community.[35] Other plaintiffs living in the same community filed suit in the *Perez-Maceira* case in August 2023 approximately one year after EPA's first public meeting.[36] "[A] plaintiff will be deemed to have 'knowledge' of the injury, for purposes of the statute of limitations, when she [he] has 'notice of the injury, plus notice of the person who caused it.'" *Bado-Santana v. Ford Motor Co.*, 283 F. Supp. 2d 520, 527 (D.P.R. 2003) (citation omitted). "[T]he plaintiff need not 'know the exact name of the tortfeasor' to satisfy the requirement of knowledge of the person who caused the injury." *Kaiser v. Armstrong World Indus., Inc.*, 678 F. Supp. 29, 31 (D.P.R. 1987) (citation omitted), *aff'd*, 872 F.2d 512 (1st Cir. 1989).

Even if Plaintiff was not put on notice by EPA's public meeting, where, as here, Plaintiff pleads that the injury occurred years ago, she must—at a minimum—"plead *some* facts 'sufficient to give notice of [her] reliance on the discovery rule.'" *Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 207 n.4 (1st Cir. 2015) (citation omitted). "The discovery rule is not a tool that plaintiffs may employ at-will to evade the statute of limitations. . . . [I]ts tolling benefit ends

---

[34] At the latest, Plaintiff had knowledge of her injury when she was diagnosed. *See, e.g.*, *Kwasnik v. 160 Water St., Inc.*, No. 06 CIV. 1520, 2014 WL 7181171, at *1 (S.D.N.Y. Sept. 30, 2014) ("Discovery of the injury refers to 'the discovery of the manifestations or symptoms of the latent disease that the harmful substance produced.' . . . The plaintiff's injury need not be medically diagnosed for the statute to begin running." (citation omitted)).

[35] U.S. EPA, *Salinas, Puerto Rico (Steri-Tech, Inc.)*, https://www.epa.gov/hazardous-air-pollutants-ethylene-oxide/forms/salinas-puerto-rico-steri-tech-inc (last updated June 2, 2025).

[36] *Perez-Maceira*, No. 3:23-cv-01445 (August 29, 2023).

once a plaintiff discovers her injury. Therefore, a plaintiff cannot plausibly suggest that the discovery rule applies to her claim unless she alleges the date on which she learned of her injury." *In re Processed Egg Prods. Antitrust Litig.*, 931 F. Supp. 2d 654, 658 (E.D. Pa. 2013) (emphasis added); *see also Griggs v. Robinson Secs.*, No. 84 C 4679, 1985 WL 1163, at *5 (N.D. Ill. May 9, 1985) ("[I]t is the plaintiff's duty to affirmatively and particularly plead the date of discovery or face dismissal."). Likewise, if Plaintiff alleges that she has been injured by a continuing tort, she must identify the continuing source of the injury. *See Torres*, 831 F. Supp. 2d at 544. She cannot merely allege a continuing harmful effect from her injury. *Id.*; Compl. ¶¶ 92–93. Accordingly, Plaintiff's claims should be dismissed for failure to file within Puerto Rico's strict one-year deadline for tort claims.

G.    **Plaintiff's Punitive Damages Demand Should Be Dismissed.**

Plaintiff's punitive damages demand is not viable. Because Plaintiff's claims are brought under the Puerto Rico Civil Code of 1930, punitive damages are not available. *Díaz-Morales v. Universidad de P.R.*, No. 20-1630, 2023 WL 3177792, at *2 (D.P.R. May 1, 2023) (dismissing claim for punitive damages because "relevant events occurred in 2019" and "punitive damages were **prohibited** under the Puerto Rico Civil Code of 1930"); *Ramirez de Arellano v. E. Air Lines, Inc.*, 629 F. Supp. 189, 192 (D.P.R. 1985) (holding that Civil Code of 1930 does not allow punitive damages). Accordingly, Plaintiff's punitive damages demand should be dismissed with prejudice.

## CONCLUSION

For the aforementioned reasons, Balchem respectfully requests dismissal of the Complaint with prejudice.

Dated: July 21, 2025                                Respectfully submitted,

                                                    */s/ Matthew D. Thurlow*
                                                    Matthew D. Thurlow (*pro hac vice*)
                                                    MORGAN, LEWIS & BOCKIUS LLP
                                                    1111 Pennsylvania Avenue, NW

Washington, DC 20004-2541
Email: matthew.thurlow@morganlewis.com
Telephone: (202) 739-5895
Facsimile: (202) 739-3001


/s/ Ricardo F. Casellas
RICARDO F. CASELLAS
USDC No. 203114

/s/ Carla S. Loubriel-Carrión
CARLA S. LOUBRIEL-CARRIÓN
USDC No. 227509

CASELLAS ALCOVER & BURGOS, P.S.C.
P.O. Box 364924
San Juan, Puerto Rico 00936-4924
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: rcasellas@cabprlaw.com
cloubriel@cabprlaw.com


*Counsel for Defendant Balchem Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify, that on July 21, 2025, this document was filed with the Court's CM/ECF system, which will simultaneously serve notice on all counsel of record to their registered email addresses.

*/s/ Carla S. Loubriel-Carrión*
CARLA S. LOUBRIEL-CARRIÓN
USDC No. 227509