Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

2023 WL 5286421 (TCA)
Only the Westlaw citation is currently available.

COQUÍ HOLDINGS, CRL, Appellant
v.
MADERAS 3C, LLC et al., Appellees.

Court of Appeals.
KLAN202200951, Case Number: SJ2021CV01050
July 18, 2023

*APPEAL* from the Court of First Instance, Superior Court of San Juan

Re: Tort Damages; Product Liability
Special Panel consisting of its chairman, Judge Bermúdez Torres, Judge Cintrón Cintrón,[1] and Judge Aldebol Mora.

Aldebol Mora, Reporting Judge

**JUDGMENT**

The appellant, Coquí Holdings, CRL, comes now in the above-captioned case to request the reversal of the *Judgment* rendered by the Court of First Instance, Superior Court of San Juan, on September 21, 2022, served on the 26th of the same month and year. In the aforementioned judgment, the court of original jurisdiction summarily dismissed the *Complaint* filed by the appellant.

For the reasons set forth below, the appealed judgment is affirmed.

**I**

On February 18, 2021, Coquí Holdings, CRL (Coquí Holdings or appellant) filed a *Complaint* for tort damages and product liability against Maderas 3C, LLC (Maderas 3C) and Teragren, Inc. (Teragren) (appellees).[2] They alleged that, on February 19, 2019, they purchased Teragren bamboo flooring from Maderas 3C, whose installation was completed on April 24, 2019. They claimed that they contacted Maderas 3C on the day the floors were installed to inquire about the maintenance and cleaning products that could be used. Maderas 3C recommended using *Bona Hardwood Floor Cleaner* (Bona). They further alleged that in mid-June 2019 they visited Teragren's website and, upon reviewing the *Residential Maintenance & Warranty Guide*, they noticed that, according to the aforementioned guide, the warranty would be void if the floors were not cleaned exclusively with the *Trueclean Wood, Bamboo & LVT Floor Cleaner* product (Trueclean). They also argued that the appellees acted negligently by selling the floors to them without providing adequate warning about proper maintenance and by failing to advise them on the product required to maintain a valid warranty.

On May 3, 2021, Maderas 3C filed an *Answer to the Complaint*.[3] In pertinent part, they argued that the product liability claim did not apply to the present case. They argued that Coquí Holdings' dissatisfaction with the floors resulted from misuse and failure to follow instructions.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

After several interlocutory proceedings, on May 3, 2022, Coquí Holdings filed a *Motion for Summary Judgment*.[4] They argued that the undisputed facts demonstrate that, in the present case, all the requirements of the product liability doctrine were met in the form of inadequate instructions. In pertinent part, they argued that Maderas 3C's failure to warn them that the use of the Bona cleaning product would cause them to lose their warranty is the proper cause of the economic damages suffered.

**\*2** Subsequently, on May 6, 2022, Coquí Holdings filed a *Motion to Supplement Motion for Summary Judgment*,[5] wherein they attached an *Affidavit* by Melvin A. Reverón Mercado certifying that, on February 19, 2020, he delivered a letter to Maderas 3C for the purpose of interrupting the statute of limitations applicable to the above-captioned claims.

In response, on June 15, 2022, Maderas 3C filed a *Motion to Dismiss by Statute of Limitations and/or Summary Judgment and Opposition to Motion for Summary Judgment Filed by Plaintiff*,[6] wherein they argued that the claims filed by Coquí Holdings were time-barred. They argued that the individual who received the letter that allegedly had the effect of interrupting the applicable statute of limitations was not authorized to receive summons on behalf of Coquí Holdings. They argued that in order for the letter to have the effect of interrupting the statute of limitations, it needed to be delivered to Carlos Cuebas Castro, the sole shareholder and resident agent of the corporation.

In said motion, Maderas 3C stated additional material facts in which they alleged that, on January 28, 2022, Eugene Hemphill Farrington, who worked on the installation and maintenance of floors, performed an inspection of the floors installed in the offices of Coquí Holdings, in which he observed that the floors were dull and poorly maintained. He argued that the lack of maintenance of the floors is the proximate cause of the damage which Coquí Holdings allegedly suffered. He also asserted that Coquí Holdings did not present any evidence that the warranty in question had been effectively canceled.

In disagreement, on July 5, 2022, Coquí Holdings objected.[7] On July 28, 2022, Maderas 3C replied.[8]

After hearing the positions of the parties, on September 21, 2022, the Court of First Instance rendered the *Judgment* in question, served on the 26th of the same month and year, in which it summarily dismissed the entire *Complaint*.[9] Regarding the statute of limitations allegation, it resolved that Coquí Holdings' extrajudicial claim complies with the necessary requirements to interrupt the applicable statute of limitations. It stressed that the individual who received the letter was a counter manager of Maderas 3C authorized to receive and endorse letters. On the other hand, with regard to the tort and product liability claim, it found that the Maintenance and Warranty Guide does not expressly state that failure to use the Trueclean product would render the warranty void. However, it emphasized that Coquí Holding did not present evidence to show that a warranty claim had been initiated or that they had been notified of the denial [of warranty]. Consistent with the foregoing, the court of original jurisdiction concluded that, in the present case, no proof was found that the floors in question had a defect or that damage occurred. Specifically, the "a quo" court outlined the following findings of fact:

**\*3** 1. On February 19, 2019, Coquí Holdings purchased 38 units of Teragren bamboo flooring for commercial use from Maderas 3C.

2. At the time of purchase, the price of Teragren flooring was $187.50 per square foot, for a total of $7,125.00, plus $819.38 in taxes.

3. Coquí Holdings acquired Teragren flooring for use in their offices.

4. After the sale to Coquí Holdings, Maderas 3C had no involvement in the installation of the Teragren bamboo flooring.

5. Teragren bamboo flooring contains polyurethane.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

6. Polyurethane floor cleaning products should not contain soap, wax, or other cleaners containing lemon oil, oil soap, wax, ammonia paste, silicone, or citrus oil.

7. Upon Coquí Holdings' request, Maderas 3C recommended the use of the *Bona Hardwood Floor Cle[an]er* product to Mr. Edgardo L. Meléndez Tormos, the plaintiff's counsel.

8. *Bona Hardwood Floor Cleaner* is the only product that Maderas 3C distributes and sells in their store to maintain Teragren bamboo flooring.

9. Coquí Holdings purchased the *Bona Hardwood Floor Cleaner* product from Maderas 3C for the cleaning of the Teragren flooring.

10. *Bona Hardwood Floor Cleaner* is for use on floors containing polyurethane.

11. *Bona Hardwood Floor Cleaner* contains no oils, wax, ammonia, sulfates, acrylics, or urethane polish. This cleaning product consists of a water-based solution containing ingredients of vegetable origin.

12. In mid-June, four months after purchasing the bamboo flooring, Mr. Edgardo Meléndez of Coquí Holdings visited Teragren's website to inquire about the maintenance and cleaning of bamboo flooring.

13. In the guide entitled *Residential Maintenance & Warranty Guide, Pre-Finished Solid & Engineered Bamboo Flooring Aluminum Oxide Polyurethane Finish,* available on Teragren's website, the commercial use of flooring is covered under the "Commercial Warranties: 5-year Finish Warranty, 10-year Structural Warranty" section. In other words, [the guide] includes a five-year commercial warranty for problems related to finishes and a ten-year [warranty] for problems related to the structure of Teragren flooring.

14. Section 9 of the *Warranty Exclusions of the Residential Maintenance & Warranty Guide* provides the following regarding floor maintenance:

"Maintenance: Full compliance with maintenance instructions is required. TrueClean Wood, Bamboo & LVT Floor Cleaner must be used. Spills must be wiped up immediately to prevent damage to the boards. Use of steam cleaners will damage the floor and invalidate the warranty."

[Translator's Note: Original quotation]

15. On the other hand, the *Maintenance Guide* included on p. 3 of the *Residential Maintenance & Warranty Guide* provides the following:

"Maintenance Guide

1. Use TrueClean Wood, Bamboo & LVT Cleaner exclusively: These products are designed to clean and maintain the Aluminum Oxide Polyurethane Finish.

2. Do not use unauthorized maintenance products: Such as oil soaps, paste wax, or other cleaners containing, lemon oil, citrus oils, Tung oils, ammonia, or cleaners containing silicone.

**4** Do not use two in one cleaners that contain acrylics or urethane polish to restore gloss. Use of these products invalidates the product warranty."

[Translator's Note: Original quotation]

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

16. The *TrueClean* product is Teragren's recommended product for cleaning polyurethane-finished bamboo flooring.

17. Neither Maderas 3C nor Teragren, Inc. distributes the *TrueClean* cleaning product in Puerto Rico.

18. The *TrueClean* product is not sold or distributed in stores in Puerto Rico.

19. The *TrueClean Wood, Bamboo & LVT Floor Cleaner* product is available for purchase through the Amazon.com website with shipping to Puerto Rico.

20. As of today, Maderas 3C has not been able to obtain the *TrueClean* cleaning product.

21. On February 19, 2020, Coquí Holdings, through their legal counsel, issued a letter to Maderas 3C requiring them to furnish the *TrueClean* product and compensate them for damages, and to reimburse them the total amount incurred in the purchase and installation of the flooring.

22. On February 19, 2020, Mr. Melvin Reverón Mercado personally went to the Maderas 3C store on Kennedy Avenue in San Juan to hand-deliver a copy of the extrajudicial claim letter to the individual who self-identified as the counter manager of Maderas 3C, who signed it on the upper right side to acknowledge receipt, in front of Mr. Reverón Mercado. Once signed, the counter manager gave a copy of the letter to Mr. Reverón Mercado.

23. On January 31, 2022, Mr. Ubaldo Ríos Ortiz, sales manager of Maderas 3C, inspected the flooring subject to this litigation, which had been installed in the offices of Coquí Holdings.

24. During the inspection on January 31, 2022, Mr. Ubaldo Ríos Ortiz noted that the floor was dirty, with scratches and stains, which indicated that it had not been properly cleaned or cared for.

25. On January 31, 2022, Ms. Suhais Silva Ortiz, Maderas 3C's salesperson, inspected the flooring subject to this litigation, which had been installed in the offices of Coquí Holdings.

26. During the inspection on January 31, 2022, Ms. Suhais Silva Ortiz noted that the floor was dirty, with scratches and coffee stains, which indicated a lack of frequent cleaning and care.

27. On January 28, 2022, Mr. Eugene Hemphill Farrington, who is in the business of installing and maintaining flooring, inspected the flooring subject to this litigation, which had been installed in the offices of Coquí Holdings.

28. During the January 28, 2022, inspection, Mr. Hemphill noted that the floor was dull and poorly maintained.

29. Mr. Hemphill recommended Coquí Holdings to clean the floor more frequently and polish it with a buffer.

30. Mr. Hemphill confirmed that *Bona Hardwood Floor Cleaner* is a product that can be used on Teragren flooring because it is specifically designed for polyurethane-finished flooring.

31. To date, Coquí Holdings has not properly treated, cleaned, or maintained the Teragren bamboo flooring.[10]

Dissatisfied, on October 11, 2022, Coquí Holdings filed a *Motion for Reconsideration of Judgment*,[11] which was DENIED on October 28, 2022, by the "a quo" court.[12]

**\*5** Dissatisfied with said decision, on November 28, 2022, the appellant brought the above-captioned appeal before us and made the following assignments of error:


I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

The Court of First Instance erred in concluding that Maderas 3C did not sell a defective product to Coqu[í] even though the recommended floor maintenance cleaning product voids the commercial warranty.

The Court of First Instance erred in concluding that Coquí has not suffered damages because it has not sought or received a denial of warranty coverage from Teragren.

In compliance with our *Resolution* of November 30, 2022, and after an extension to that effect, on January 30, 2023, Maderas 3C appeared by way of an *Opposition to Appellate Argument*.

In the presence of the parties, we shall proceed to resolve [the dispute].


## II


### A

The summary judgment mechanism provided in Rule 36 of the Civil Procedure of 2009, 32 LPRA Ch. V, R. 36, aims at ensuring the fair, expeditious, and economic resolution of a case. *Acevedo Arocho y otros v. Departamento de Hacienda de Puerto Rico y otros*, 2023 TSPR 80, resolved on June 26, 2023; *Universal Insurance Company y otros v. Estado Libre Asociado de Puerto Rico y otros*, 2023 TSPR 24, resolved on March 7, 2023. This mechanism allows the partial or full disposal of civil litigation when there is no material factual dispute for which a full trial is required and legally permitted. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). This mechanism may be used by the claimant or the respondent. 32 LPRA Ch. V, R. 36.1 and 36.2.

By means of the summary judgment mechanism, an attempt is made to delve deeper into the allegations in order to verify whether the facts actually warrant a trial. *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020). This summary procedure is beneficial for both the court and the parties to litigation, as it expedites the legal proceedings while providing the litigants with a procedural mechanism aimed at ensuring a fair, expeditious, and economic remedy. *Segarra Rivera v. Int'l. Shipping et al.*, supra. As is well known, in order to prevail in a claim, the movant must provide indisputable proof of all the indispensable elements of the cause of action. *Id.*

Our civil-law system and its interpretive case law impose certain formal requirements that must be complied with upon the filing of a motion for summary judgment, as follows: (1) a brief statement of the parties' arguments; (2) the triable issues or disputes; (3) the cause of action for which summary judgment is sought; (4) a concise and organized account of all material and essential facts upon which there is no genuine dispute, set forth in separately numbered paragraphs, with references to the paragraphs or pages in the affidavits or other admissible evidence establishing these facts, or any other admissible document in the court record; (5) the reasons for which judgment should be rendered, setting forth the applicable law; and (6) the relief to be granted. 32 LPRA Ch. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). If the movant fails to comply with these requirements, "the court is not required to consider the motion. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

**\*6** On the other hand, "a party who opposes a motion for summary judgment may not rest on the assertions or denials in their pleadings." *León Torres v. Rivera Lebrón,* supra, p. 43. On the contrary, whoever opposes the granting of a motion is required to address their opponent's motion in as detailed and specific a manner as the movant has done; otherwise, they run the risk of having summary judgment rendered against them if the motion is granted as a matter of law. *Id.*

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

Therefore, in opposing a motion for summary judgment, the non-movant must clarify those proposed facts which they intend to dispute and, if they so desire, submit any additional material facts which they allege are not in dispute and which preclude summary judgment against them. *León Torres v. Rivera Lebrón,* supra. It is clear that, for each of these assumptions, reference must be made to the specific evidence supporting their position, as required by the aforementioned Rule 36.3 of Civil Procedure, *supra*. *Id*. In other words, the opposing party has the burden of presenting substantial evidence to support the material facts they allege are in dispute. *Id*. From the foregoing, it can be inferred that, in view of the parties' failure of the parties to comply with the formalities of Rule 36 of [the Code of] Civil Procedure of 2009, *supra*, their consideration rests on the sound discretion of the Court.

In hearing the motion, the Court shall assume as true the indisputable facts supported by the movant's submissions. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Any reasonable inference that may arise from the facts and documents must be construed against the party seeking summary judgment, as it is admissible only if under no factual assumption does the non-movant prevail. *Id*., p. 625. Moreover, in evaluating the merits of a motion for summary judgment, the trier of fact must be prudent and always mindful that their decision may result in depriving a party of their "day in court," which is an essential element of due process of law. *León Torres v. Rivera Lebrón,* supra, p. 44.

However, summary judgment will generally not proceed if there are disputes over essential material facts or the dispute in the case is based on subjective elements such as intent, mental intent, negligence, or credibility. *Acevedo Arocho y otros v. Departamento de Hacienda de Puerto Rico y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. In addition, cases where it is difficult to ascertain truth of the facts through affidavits or depositions may not be resolved by summary judgment. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). Likewise, it is not appropriate to summarily resolve "complex cases or cases involving issues of public interest." *Id*. However, summary judgment will be admissible if it addresses questions of law. *Universal Insurance Company y otros v. Estado Libre Asociado de Puerto Rico y otros*, supra.

The Supreme Court of Puerto Rico has discussed the criteria that this Court of Appeals must consider when reviewing a summary judgment rendered by the lower court. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, pp. 118-119. In this regard, our Supreme Court stated that:

> **\*7** The Court of Appeals must: (1) examine the record de novo and apply the criteria that Rule 36 of [the Code of] Civil Procedure, *supra*, and case law require of the court of original jurisdiction; (2) verify that both the Motion for Summary Judgment and its response comply with the formal requirements codified in Rule 36; (3) review whether there really are material facts in dispute and, if so, comply with the requirement of Rule 36.4 of [the Code of] Civil Procedure, 32 LPRA Ch. V, to state specifically which material facts it found to be in dispute or undisputed, and (4) if it finds that the material facts are indeed undisputed, proceed to determine de novo whether the Court of First Instance correctly applied the law to the dispute. *Roldán Flores v. M. Cuebas et al.,* supra, p. 679.

Accordingly, "we find ourselves in the same position as the Court of First Instance to evaluate whether summary judgment is appropriate." *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Therefore, our review is a de novo review, and our analysis must be governed by the provisions of Rule 36 of [the Code of] Civil Procedure, *supra*, and its interpretive case law. *Id*. Thus, if we find that the material facts are indeed undisputed, we must determine de novo whether the court of original jurisdiction correctly applied the law. *Id*.

**B**

Tort liability is codified in Articles 1536 and 1545 of the Civil Code of 2020, 31 LPRA Secs. 10801 y 10810. To that effect, Article 1536 of the Civil Code of 2020, 31 LPRA Sec. 10801, establishes that "a person who causes damage to another through

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

---

fault or negligence shall be obliged to repair [the damage caused]." In order for the action for recovery of damages to continue, it is necessary to prove the occurrence of an action or omission that gives rise to the damage, as well as the existence of a causal nexus between the two. _Cruz Flores v. Ryder Memorial Hospital Inc._, 2022 TSPR 112, DPR ---- (2022).

Damage is "any material or moral loss caused to a person due to the violation of a legal provision, for which another person is liable." _Camacho Rivera v. Richard Mitchell, Inc._, 202 DPR 34, 42 (2019), citing J. Puig Brutau, _Fundamentos de Derecho Civil_, Barcelona, Ed. Bosch, 1983, Book 2, Vol. 3, p. 92. On the other hand, pecuniary damage consists of the damage to the injured party's assets that can be valued in money. _Sagardía de Jesús v. Hosp. Aux. Mutuo_, 177 DPR 484, 506 (2009). Moral damages, on the other hand, are non-pecuniary damages that essentially affect the rights related to the physical and moral attributes of human beings. _Id_. Physical or bodily pain, mental anguish, and suffering constitute moral damages. _Id_., p. 507.

Furthermore, fault or negligence means a failure to take reasonable care due to a failure to anticipate or foresee the rational consequences, or omission of, an act that a prudent and reasonable person would have foreseen under the same circumstances. _Cruz Flores v. Ryder Memorial Hospital Inc.,_ supra. That being said, the duty of foresight does not extend to every conceivable danger, but to that which a prudent and reasonable person would anticipate. _Sucn. Pagán Berríos v. UPR y otros_, 206 DPR 317, 332 (2021). Likewise, it is not necessary to have anticipated the occurrence of the damage in the exact manner in which it occurred; it is sufficient if the damage is a natural and probable consequence of a negligent act or omission. _Camacho Rivera v. Richard Mitchell, Inc_. supra, p. 42.

Thus, for purposes of charging negligence, it is necessary to identify whether the defendant could foresee, within the particular circumstances, that their actions or omissions could cause any damage. _Colón, Ramírez v. Televicentro de P.R._, 175 DPR 690, 706 (2009). Consistent with the duty of foresight, a person is responsible for the probable consequences of their actions. _Blás v. Hosp. Guadeloupe_, 146 DPR 267, 298 (1998). Hence, it is acknowledged that the mere occurrence of an accident does not constitute proof of the defendant's negligence in an action for recovery of damages. _Admor. F.S.E. v. Almacén Ramón Rosa_, 151 DPR 711, 724 (2000).

## C

**\*8** The Supreme Court of Puerto Rico has chosen to adopt strict liability theories for certain activities that are harmful to the public. _González Cabán v. JR Seafood et al._, 199 DPR 234, 241 (2017). When strict liability applies, there is an obligation to respond for the damages, even in the absence of fault or negligence. _Id_. An example of this type of strict liability is the sale of defective products. _Id_. A defective product is defined as one which does not equal the average quality of similar products. _Montero Saldaña v. Amer. Motors Corp._, 107 DPR 452, 462 (1978).

Recently, the doctrine of strict liability was codified in Articles 1542 to 1545 of the Civil Code of 2020. In pertinent part, said code provides that: "whoever places a product in the stream of commerce which is unreasonably dangerous by design or manufacture is liable for the damages caused by said product even in the absence of fault or negligence." 31 LPRA Sec. 10807.

Article 1544 of the aforementioned statute defines unreasonably dangerous products as follows:

(a) their quality and safety do not meet the expectations of an ordinary consumer; or

(b) the design of the product causes the damage, and those involved in the distribution chain fail to prove that the design is reasonable based on, among other things:

(1) the utility of the product;

---

 I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

(2) the technological limitations to design it in a safer way at a reasonable cost;

(3) the unreasonable risk that can be foreseen at the time of design; and

(4) the instructions or warnings provided for the proper use of the product. 31 LPRA Sec. 10809.

The party who brings the tort cause of action under this strict liability doctrine must meet the following requirements: (1) the existence of a defect in the manufacture or design of the product or the lack of adequate warnings or instructions; (2) the defect existed when the product left the plaintiff's control; (3) the defendant must be engaged in the business of selling or distributing the product; (4) the defect is the proper cause of the plaintiff's damages; and (5) the product was used by the defendant in a reasonable and foreseeable manner. *González Cabán v. JR Seafood*, supra, p. 257. Note that this type of liability does not depend on the defendant's fault or negligence, and so it is sufficient to establish the causal nexus and the damage. Likewise, all those involved in the manufacturing and distribution chain are jointly and severally liable to the injured party. *Montero Saldaña v. Amer. Motors Corp.*, 107 DPR 452, 462-464 (1978). Of course, the defect does not extend to every conceivable risk, since the manufacturer is not an absolute insurer for all injuries their product may cause. Roberto Abesada-Agüet, *Jurisprudencia Reciente sobre Responsabilidad Civil Extracontractual: Productos Defectuosos*, 53 Rev. Jur. UIPR 761, 766 (2019). There shall be liability for those damages foreseeably related to the defect and the use of the product. *Id*.

Having outlined the rule of law, we shall proceed to apply it to the appeal before us.


### III

The appellant argues that the Court of First Instance erred in finding that the Bona product can be used on Teragren flooring because it is designed for polyurethane-finished flooring. They argue that the Maintenance and Warranty Guide requires the exclusive use of the Trueclean product for the cleaning of this flooring. On the other hand, they argue that the warranty on the floors was invalidated when, upon the recommendation of Madera 3C, they used the Bona product on their floors.

**\*9** In compliance with the duty imposed on us by *Meléndez González et al. v. M. Cuebas*, supra, we shall review de novo the *Motion for Summary Judgment* filed by Coquí Holdings and Maderas 3C's opposition, as well as the motion for summary judgment filed by the latter. The foregoing aims at evaluating whether the court of original jurisdiction was correct in summarily dismissing the above-captioned complaint based on the absence of evidence to support the damages alleged by the appellant.

Upon a careful review of the entire record, we conclude that the findings of fact made by the court of primary instance in its *Judgment* rendered on September 21, 2022, are supported by the admissible documentary evidence. No document on the record serves as evidence that the warranty in question was indeed voided. On the other hand, from a reading of the Maintenance and Warranty Guide, it does not appear that the use of Bona cleaning products will void the warranty, but that the warranty will be void if the following are used: "oil soaps, paste wax, or other cleaners containing lemon oil, citrus oils, tung oil, ammonia, or cleaners containing silicone."[13] Likewise, it appears from the record that the Bona product is a water-based solution for exclusive use on polyurethane-finished floors, not for use on waxed floors or floors on which oil has been used.[14] Therefore, we resolve that Coquí Holdings failed to prove that the appellee committed a negligent or reckless act or omission that caused any damage to Coquí Holdings. Furthermore, we find that the damages alleged by the appellee are speculative.

Therefore, we infer that the evidence in the record is insufficient to sustain that the warranty on the appellant's floors was voided by the use of the Bona product. All in all, we find that the court of original jurisdiction did not act with passion, prejudice, partiality, or plain error in the weighing of the evidence. Accordingly, the standard of correctness of the findings made by the Court of First Instance prevails. Therefore, we uphold the appealed *Judgment*.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)

---

**IV**

For the foregoing reasons, we uphold the appealed judgment.

It is so agreed and ordered by the Court and certified by the Clerk of the Court of Appeals.

Judge Cintrón Cintrón concurs with the result, without a written opinion.

Lilia M. Oquendo Solís, Esq.

Clerk of the Court of Appeals

**Footnotes**

1   By Administrative Order OATA-2023-040 of March 1, 2023, the Hon. Sol de Borinquen Cintrón Cintrón was appointed to replace the Hon. Gina Méndez Miró.

2   Exhibit 6 of the Appeal, pp. 37-46.

3   Exhibit 8 of the Appeal, pp. 48-51.

4   Exhibit 14 of the Appeal, pp. 77-119. In their summary pleading, the plaintiff included the following documents: **Exhibit 1:** Purchase receipts dated December 11, 2018, and February 15 and 19, 2019, and a document entitled "Craftsman II, Extra Long-Plank, Wide-width PureForm Solid Bamboo Flooring," which describes the benefits of the flooring and details regarding its installation and care; **Exhibit 2:** "Interrogatory and Production of Documents," addressed to Maderas 3C, and its response, filed on September 15, 2021; **Exhibit 3:** "Affidavit of Edgardo Luis Meléndez Tormos," executed on May 3, 2022; **Exhibit 4:** Document entitled "Residential Maintenance & Warranty Guide"; **Exhibit 5:** Record of messages and calls to Ubaldo Ríos, manager of Maderas 3C; **Exhibit 6:** Extrajudicial claim addressed to Carlos Cuebas Castro, executed on February 19, 2020.

5   Annex 15 of the Appeal, pp. 120-125.

6   Annex 16 of the Appeal, pp. 126-157. Maderas 3C submitted the following documents with their opposition: **Exhibit 1:** Copy of the corporate registry, which details the information of Maderas 3C; **Exhibit 2:** Affidavit of Carlos Cuebas Castro, executed on June 15, 2022; **Exhibit 3:** Document detailing the ingredients of the Bona product; **Exhibit 4:** Affidavit of Ubaldo Ríos Ortiz, executed on June 15, 2022; **Exhibit 5:** Affidavit of Suhais Silva Ortiz, executed on June 15, 2022; **Exhibit 6:** Affidavit of Eugene Hemphill Farrington, executed on June 15, 2022.

7   Exhibit 17 of the Appeal, pp. 158-164.

8   Exhibit 19 of the Appeal, pp. 166-191.

9   Exhibit 1 of the Appeal, pp. 1-25.

10   Exhibit 1 of the Appeal, pp. 6-10. (Citations omitted.) (Emphasis omitted.)

 I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

**Coquí Holdings, CRL v. Maderas 3C, LLC, 2023 WL 5286421 (2023)**

[11]    Exhibit 3 of the Appeal, pp. 26-34.

[12]    Exhibit 4 of the Appeal, pp. 35-36.

[13]    See Exhibit 14 of the Appeal, p. 112.

[14]    See Exhibit 16 of the Appeal, p. 151.

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.