Martinez Romero v. Super Asphalt Pavement, Co, 2018 WL 3037397 (2018)

2018 WL 3037397 (TCA)

Madeline MARTÍNEZ ROMERO, Appellant

v.

SUPER ASPHALT PAVEMENT, CO., Mapfre Grupo Praico, et al., Appellee.

COURT OF APPEALS
**Civil Case No.:**
FDP2004-0234
KLAN201701052
In San Juan, Puerto Rico, on April 23, 2018.
April 23, 2018.

*Appeal* from the Court of First Instance, Superior Court of Carolina
**RE:** Tort Damages
Panel consisting of its chairman, Judge Flores García, Judge Domínguez Irizarry, and Judge Cancio Bigas.

**JUDGMENT**

FLORES GARCÍA, REPORTING JUDGE.

### I. Introduction

***1** The appellant, Madeline Martínez Romero, comes now and requests us to reverse a judgment rendered on April 18, 2017, by the Court of First Instance, Court of Carolina. In its judgment, the court of original jurisdiction ordered the appellee, Super Asphalt Pavement Co., to pay the appellant $12,500 for mental suffering and anguish. Likewise, the sentencing court dismissed both the complaint and the cross-complaint against the co-appellee, Mapfre Praico Insurance Company.

We shall consider the merits of the appeal filed.

### II. Recitals

On April 28, 2004, the appellant filed a complaint against the appellee and their insurer, the co-appellee. The appellant claimed compensation for the damages she has suffered as a result of gas emissions from the appellee's asphalt production plant. At the time, the appellant worked as a teacher in the elementary school next to the asphalt plant. The appellant also alleged that, due to the harmful environmental conditions created by the appellee in operating their factory, she had to report to the State Insurance Fund for treatment of a certain lung health condition that developed while she was performing her duties at the school.

The co-appellee answered the complaint and argued that the facts alleged in the complaint were expressly excluded from coverage and that therefore they had no duty to defend the appellant [sic]. The appellant [sic] answered the complaint, denied liability for the damages claimed by the appellant, and filed a claim against the co-appellee alleging that, although the allegations contained in the complaint were unfounded and exaggerated, the facts described therein were covered by the policy

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Martinez Romero v. Super Asphalt Pavement, Co, 2018 WL 3037397 (2018)

issued by the insurance company. Lastly, the co-appellee answered the cross-complaint and, essentially reiterated that the facts and damages alleged in the complaint against them were expressly excluded from the insurance provided by the policy.

Thus, on June 29, 2005, the co-appellee moved for summary dismissal of the complaint and the cross-complaint. They argued that according to the terms and conditions of the insurance contract, the type of damage claimed was excluded from coverage due to the effect of the Total Pollution Exclusion Endorsement. On January 11, 2006, the appellant filed an opposition to the motion for summary judgment. After receiving the subsequent responses from each of the parties, on May 4, 2006, the court of original jurisdiction issued a partial judgment, wherein it concluded that, due to the effect of the Total Pollution Exclusion Endorsement, the insurer had no duty to provide coverage and legal defense on behalf of the appellant. This is due to the fact that the claims against the co-appellee not only constitute intentional acts but also are a clear example of environmental contamination clearly exempted from insurance coverage. Therefore, the court of original jurisdiction dismissed the complaint and the cross-complaint filed against the insurance company. We emphasize that this judgment is binding and final.

**\*2** In April 2007, the appellant moved to amend the complaint filed in 2004, alleging that the operation of the asphalt production plant created a public nuisance. She concluded that the insurer was liable for the actions described in the new allegations. At the request of the court of original jurisdiction, the co-appellee filed an opposition to the amendments, indicating that the new claim was also excluded from coverage due to violations to laws and regulations of the Regulations and Permits Administration (ARPE). They stated that the intentional and deliberate acts described in the amendments were outside the insurance coverage. Upon consideration of the arguments, the Court did not allow the amended complaint, subsequently denying the appellant's reconsideration of the matter.

The latter party appealed the trial court's decision in a timely manner. The appellate court reversed the appealed order by way of a judgment rendered on August 27, 2008. In the judgment, a sister panel concluded that the amendments created a new claim that arose during discovery in this case. It found that it was during these proceedings that the appellant discovered that the appellee's factory constitutes a nuisance under Section 28 of the repealed ARPE Organic Law, Law No. 76 of June 24, 1975 ("Law No. 76"), as declared by the Court of Río Grande through a resolution of April 19, 2007.[1]

By virtue of the foregoing, the panel of judges concluded that Section 28 of Law No. 76 allows the recovery of damages caused not only by environmental contamination but also by the location, construction, and operation of the factory in inadequate places. It thus reversed the order and granted the amendments requested by the appellant. Thus, the co-appellee became a party to the litigation again.

On April 19, 2011, the co-appellee moved for summary dismissal of all claims against them. In their brief, they argued that the amended complaint and the partial judgment clearly demonstrate that the acts performed by the appellant were illegal and intentional and therefore automatically excluded from insurance coverage. The appellant filed an opposition, arguing that the insurer was liable on behalf of their insured, for the asphalt factory was declared a public nuisance.

On May 8, 2012, the trial court rendered another Partial Judgment, wherein it dismissed the complaint against the co-appellee. The sentencing court concluded that the appellant's actions did not fall within the definition of the term "occurrence" contained in the contract, since the declaration of public nuisance was based on intentional or illegal acts perpetrated by the appellant. The reconsideration filed by the appellant was denied by the court of original jurisdiction.

**\*3** In disagreement, the appellant filed an appeal against the judgment rendered. A sister panel of this Court reversed the appealed judgment by way of a judgment rendered on May 30, 2014. The panel of judges concluded that it was premature to conclude that the appellee's intentional actions were excluded from coverage without first holding an evidentiary hearing to determine whether the appellee acted deliberately to have the asphalt production plant declared a nuisance. The appellate judges concluded that the co-appellee's liability depended on such determination. Regarding this matter, the Court provided as follows:

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Martinez Romero v. Super Asphalt Pavement, Co, 2018 WL 3037397 (2018)

> The present case involves a cause of action for nuisance, not for the pollutants emitted by the asphalt plant. It is clear that [the appellee] is not covered under [the co-appellee]'s policy for pollutants, pursuant to the Total Pollution Exclusion Endorsement. It is futile to continue to consider it, since it has been res judicata since the partial judgment issued in 2006.
>
> [ ... ]
>
> In the case before us, the nuisance caused by [the appellee] allegedly results from the lack of permits and the wrong location of the asphalt plant. Although these acts are undoubtedly intentional, it cannot necessarily be stated that [the appellee] acted deliberately to be declared a nuisance to the community. Therefore, [the appellee's] actions must be examined more closely to determine whether or not the insurer is liable to the plaintiff/appellant. ... We are of the opinion that the Court of First Instance erred in stating that the policy issued by [the co-appellee] in favor of [the appellee] does not cover nuisance damages without holding an evidentiary hearing to prove whether [the appellee's] intentional acts comply with the case law established by our Supreme Court. ....

Having received the order from the Court of Appeals, on October 3 and 4, 2016, the court of original jurisdiction held the ordered hearing. The appellant provided her own testimony as evidence. She testified that she worked at the Luis Muñoz Marín Elementary School in Barrio San Isidro of the Municipality of Canóvanas from 1997 to 2001. She stated that the appellee used to begin operating the plant at 7:00 a.m. and that in her classroom she could smell the odor of tar emanating from the factory's chimneys. She added that these fumes made her sick to her stomach and the stench of tar spoiled her breakfast and made her nauseous. She also stated that she had to go to the hospital and had to transfer to another school. She also stated that as a teacher she was exposed to chalk dust and fungus in the classroom. Lastly, she testified that, as a result of the respiratory problems she suffers from, she sleeps sitting up to avoid choking and to be able to breathe, and that she cannot climb stairs or do household chores.

*4 On behalf of the appellee, several expert witnesses, a medical doctor, a pulmonologist, and an environmental specialist testified. The pulmonologist stated that the appellant was disabled by the environmental conditions of her workplace and that they, however, could not conclude that the appellant's conditions were caused by the toxic gases emanating from the asphalt production plant due to the absence of a study by any environmental agency establishing the specific measurements of toxins. Rather, [the pulmonologist] stated that the illnesses the appellant suffers from were caused by dust, chalk dust, fungi, and other allergens present in her classroom.

The environmental expert submitted a report detailing all the actions taken by the appellee to "reduce the potential environmental impacts of the plant's operation." These include increasing the height of the chimneys to twenty feet to improve the diffusion of gases and asphalt vapors and using an orange cover in an elevated place in the factory to ascertain the direction of the wind so that work could be stopped when it blew from east-southeast. These also include limiting the operation to certain hours to prevent gases and dust particles from reaching the school.

Also testifying on behalf of the appellee was the insurer's vice president of Claims. The executive stated that the policy does not cover violations of the law, regardless of whether the insured's acts were negligent or intentional.

Upon consideration of the evidence, the Court rendered the appealed judgment, ruling that the operation of the plant "had some disruption" on the appellee's health and that the toxic gases emanating from the plant were not the primary cause of "all of the complainant's health conditions and conditions diagnosed by the Fund."

Regarding the issue of insurance coverage, the court of original jurisdiction ruled:

> The present case involves a cause of action for nuisance, not for the pollutants emitted by the asphalt plant. It is clear that [the appellee] is not covered under [the co-appellee's] policy for pollutants, pursuant to the Total Pollution Exclusion Endorsement. In addition, the matter has been res judicata since the partial judgment issued in 2006.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Now then, this Court accepted the Resolution of April 19, 2007, which rendered the [appellee's] use permit null and void. Based on said Resolution, and after hearing the evidence, we determined that the nuisance caused by [the appellee] resulted from violations to the law that governs the granting of permits.

The insurance contract executed by the appellee and the [co-appellee] provides that the latter shall be liable for any amount that the insurer is obliged to pay for property damages caused by an occurrence, provided that the damages to be compensated fall within the scope of the coverage provided by the policy.

**\*5** That being said, during the trial, [the appellee] did not present evidence to establish why the Court should order the insurer to cover the damages caused to the [appellant]. On the other hand, [the co-appellee] introduced as a witness their vice president of Claims, Mr. Rafael Rivera Marcano, who stated that the insurance policy issued by [the co-appellee] in favor of [the appellee] does not cover violations of the law, regardless of whether the insured's acts were negligent or intentional. According to the witness under the policy, violations of the law are not considered an accident under the policy, nor do they constitute an occurrence. The policy also does not cover when a permit is declared void.

It therefore dismissed the claims against the co-appellee and ordered the appellee to pay $12,500 to the appellant. Both the appellant and the appellee requested reconsideration of the judgment rendered, but both requests were denied by the Court.

Dissatisfied, the appellant asserts before us that the appellate court erred in concluding that her public nuisance cause of action is excluded from the insurance policy. The appellant also questions the evaluation of the expert evidence submitted during the hearing and argues that the amount awarded for damages is unreasonable.

The co-appellee appeared, and, in their pleading, they request that we confirm the appealed judgment. Lastly, the appellee appeared and asked us to reverse the appealed judgment.

Having carefully reviewed of the briefs of the parties, the contents of the record for this appeal, and the transcript of the oral evidence, and addressed the merits of this Appeal among the judges of the panel, we are in a position to render judgment in accordance with the applicable law.

### III. Applicable Law

#### A. The insurance contract

The Supreme Court has reiterated that, in our society, the insurance business is of great public interest due to its importance, complexity, and effect on the economy and society. _Maderas Tratadas v. Sun Alliance et al.,_ 185 DPR 880, 896 (2012); _S.L.G. Ortiz–Alvarado v. Great American,_ 182 DPR 48, 72 (2011); _Jiménez López et al. v. SIMED,_ 180 DPR 1, 8 (2010); _S.L.G. Francis–Acevedo v. SIMED,_ 176 DPR 372, 384 (2009). This is why it is widely regulated by the State, mainly through the Insurance Code of Puerto Rico, Law No. 77 of June 19, 1957, 26 LPRA § 101, _et seq._

Section 1.020 of the Insurance Code of Puerto Rico, 26 LPRA § 102, defines an insurance contract as one "whereby a person undertakes to indemnify another, or to pay or provide a specified or ascertainable benefit upon determinable contingencies therein foreseen." Thus, the insured is protected against civil liability for damages caused to third parties. _Díaz Ayala, et. al. v. E.L.A.,_ 153 DPR 675, 690–691 (2001); _Quiñones López v. Manzano Pozas,_ 141 DPR 139, 153 (1996). By their nature, insurance contracts are typical contracts of adhesion. _S.L.G. Ortiz-Alvarado v. Great American Life Co., supra,_ p. 73; _Jiménez López et al. v. SIMED, supra,_ p. 10.

**\*6** Section 11.250 of the Insurance Code, 26 LPRA § 1125, provides that "every insurance contract shall be construed according to the entirety of its terms and conditions, as set forth in the policy and as amplified, extended, or modified by any rider,

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

endorsement, or application attached to and made part of the policy." *Maderas Tratadas v. Sun Alliance et al., supra,* p. 897; *Jiménez López et al. v. SIMED, supra*; Echandi Otero v. Stewart Title, 174 DPR 355, 369 (2008); Monteagudo Pérez v. E.L.A., 172 DPR 12, 20-21 (2007).

Likewise, its language "must be construed in its usual and most known signification, not so much regarding the propriety of grammar, as its general and popular use." *Jiménez López et al. v. SIMED, supra*; Marín v. American Int'l. Ins. Co. of P.R., 137 DPR 356, 361 (1994). Therefore, if the terms of the insurance contract are clear, specific, and leave no room for ambiguity or different interpretations, the clear will of the parties will be enforced. López v. Atlantic Southern Ins. Co., 158 DPR 562, 569 (2003); *Díaz Ayala v. E.L.A., supra,* p. 691; Art. 1233 of the Civil Code, 31 LPRA Sec. 3471.

Like any other contract, the insurance contract constitutes the law between the parties. *S.L.G. Ortiz Alvarado v. Great American Life Co. supra,* p. 72; *Jiménez López et al. v. SIMED, supra,* p. 16; *S.L.G. Francis-Acevedo v. SIMED, supra.* The insurance contract is considered a contract of adhesion and should therefore be construed liberally in favor of the insured. *Monteagudo Pérez v. E.L.A., supra;* Molina v. Plaza Acuática, 166 DPR 260, 267 (2005).

### B. Evaluation of the testimonial and documentary evidence

To begin, in the absence of error, prejudice, or partiality, appellate courts will not interfere with the Court of First Instance's findings of fact, evaluation of the evidence, or assignment of credibility. González Hernández v. González Hernández, 181 DPR 746, 776 (2011); Ramírez Ferrer v. Conagra Foods PR, 175 DPR 799, 811 (2009). This deference is based on the fact that the judge before whom the witnesses testify has the opportunity to see them and observe their manner of testifying and notice their gestures, hesitations, contradictions, and demeanor in court, which are factors that gradually contribute to the [judge's] conviction about the truth of the statements. Suárez Cáceres v. Com. Estatal Elecciones, 176 DPR 31, 68 (2009).

Therefore, "the intervention with the evaluation of the testimonial evidence would be admissible in cases where a comprehensive analysis of the evidence causes dissatisfaction or uneasiness of mind, offending our basic sense of justice." *Id.* It cannot be otherwise, since "the assignment of credibility of the court of original jurisdiction must be preserved, for we only have voiceless and inexpressive records." *Ramírez Ferrer v. Conagra Foods PR, supra,* p. 811. Consistent with the foregoing, in Ortiz v. Cruz Pabón, 103 DPR 939, 947 (1975), the Supreme Court, citing Don Alfonso de Paula Pérez, summarized the vitality and conviction perceived by a judge who simultaneously observes and listens to the witness:

> **\*7** [And] it is not only the living voice that speaks. There is also body language—the color of the cheeks, the eyes, a trembling or unwavering voice, movements, a witness' unusual vocabulary, [and] so many other circumstances that should accompany the whole of a witness statement. However, all these elements are lost in the voiceless letters of the minutes, thus depriving the Judge of so many other circumstances which are more deserving of attention than the contents of the statement itself when presenting a value judgment at the time of ruling. [The judge] will lack the most useful tool to ascertain the truth: observation.

Rule 42.2 of [the Code of] Civil Procedure, 32 LPRA Ch. V, R. 42.2, summarizes the aforementioned case law principles and regulates the scope of judicial review in the evaluation of the evidence submitted before the appealed court. In pertinent part, it provides the following:

> Findings of fact based on oral testimony must not be set aside unless clearly erroneous, and due regard must be given to the sentencing court's opportunity to judge the witnesses' credibility.

However, this rule is at odds with the also recognized rule that the trier of fact's discretion, while respectable, is not absolute. That is why an erroneous evaluation of the evidence is not immune from the reviewing function of the courts. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771-72 (2013); Ramos Acosta v. Caparra Dairy Inc., 113 DPR 357, 365 (1982). Thus, the

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

appellate forums may intervene with the evaluation of the testimonial evidence made by the trier of fact if they act with passion, prejudice, or partiality, or make a clear mistake during the evaluation. *Dávila Nieves v. Meléndez Marín, supra,* p.771. *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 908-909 (2012).

This implies that a reviewing court may intervene with the evaluation of the evidence after a careful examination if it is convinced that the trier of fact unjustifiably disregarded important elements of evidence or based their judgment only on superfluous or inherently improbable or incredible testimonies. *C. Brewer P.R., Inc. v. Rodríguez,* 100 DPR 826, 830 (1972); *Pueblo v. Luciano Arroyo,* 83 DPR 573, 581 (1961).

### C. Evaluation of expert evidence

It is a judicial axiom that the appellate court stands on equal footing with the trial court in the matter of expert and documentary evidence, and thus it is empowered to evaluate the evidence based on its own criteria. *Dye-Tex de P.R., Inc. v. Royal Ins. Co.,* 150 DPR 658, 662 (2000). This implies that this Court is equally empowered as the trial court to assess and evaluate the expert evidence and render our own findings of fact accordingly. *Rivera v. Pan Pepin, Inc.,* 161 DPR 681, 687 (2004).

**\*8** The probative value of expert testimony depends of an analysis of certain factors, such as: "(a) whether the testimony is based on sufficient facts or data; (b) whether the testimony is the product of reliable principles and methods; (c) whether the witness has reliably applied the principles and methods to the facts of the case; (d) whether the underlying principle of the testimony has been generally accepted in the scientific community; (e) the qualifications or credentials of the witness; and (f) the partiality of the witness. Rule 702 of Evidence, 32 LPRA Ch. VI, R. 702; *S.L.G. Font Bardón v. Mini-Warehouse,* 179 DPR 322, 343-344 (2010); *Dye-Tex P.R., Inc. v. Royal Ins. Co., P.R., supra,* p. 664. This study must also be based on an independent examination of the evidence and not on the facts presented by the parties. *Hernández v. San Lorenzo Const.,* 153 DPR 405, 424-425 (2001).

Lastly, it is a well-established rule in our jurisdiction that "the trier of fact is not obliged to accept the conclusions of an expert." *People v. Montes Vega,* 118 DPR 164, 170-171 (1986); *People v. Marcano Pérez,* 116 DPR 917, 928 (1986). Therefore, the judge will have the power to reject the expert testimony upon evaluation if they find it to lack credibility. *S.L.G. Font Bardón v. Mini-Warehouse, supra,* p. 346; *Pueblo v. Dones, supra,* p. 222.

### D. Assessment of Damages

The assessment of damages is a difficult task that rests on the sound discretion of a judge guided by their sense of justice. *Blás v. Hosp. Guadalupe,* 146 DPR 267, 339 (1998); *Rosado v. Supermercado Mr. Special,* 139 DPR 946, 954 (1996); *Urrutia v. A.A.A.,* 103 DPR 643, 647 (1975). The assessment process is complex due to the lack of a mechanism to accurately determine the amount of damages caused to an individual. *Rodríguez Cancel v. A.E.E.,* 116 DPR 443, 451 (1985). It is more difficult to assess damages in relation to compensation for mental anguish and suffering, due to their intangible nature. This concept also encompasses various categories of damage, such as emotional damage, anxiety, alienation of affection, and other similar damages of an intangible nature. B. Dobbs, *The Law of Torts;* Vol. 2, West Group. St. Louis Paul Minn. 2001, p. 821. See also: A.J. Amadeo Murga, *El Valor de los Daños en la Responsabilidad Civil,* 2nd ed. 172 et seq. "Awarding an insufficient or ridiculously low amount of damages caused by unlawful acts has the practical effect of lessening the civil liability to which such acts should be subject." Amadeo Murga, *op. cit.* p. 19. On the other hand, an exaggerated assessment has a punitive effect that is alien to our civil law system. *Id.*

**\*9** Lastly, it is a well-established rule that appellate courts should not intervene with the assessment of damages made by the court of original jurisdiction, except when the amount awarded is ridiculously low or unreasonably high. *Santiago Montañez*

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

*v. Fresenius Medical,* 195 DPR 476, 490 (2016); *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 203 (2013). Hence, in calculating the alleged damages, the sentencing court demonstrates a high sense of justice, experience, and discretion. *Herrera, Rivera v. S.L.G. Ramírez Vicéns,* 179 DPR 774, 784 (2010). This deference requires the party requesting the reviewing court to change the amount of damages to demonstrate the existence of those circumstances that warrant such change. *Albino v. Ángel Martínez, Inc.,* 171 DPR 457 (2007); *Rodríguez Cancel v. PREPA, supra.*

### IV. Application of the Law to Facts

#### A. The appellee's insurance contract

By way of the first two errors, the appellant disputes the interpretation made by the sentencing court on the content of the insurance contract. Notwithstanding her contention, we did not find a copy of the policy in the Appendix for this appeal.

The Rules of the Court of Appeals specifically provide that the appeal brief must include an Appendix containing a verbatim copy of "any other document that is part of the original record of the Court of First Instance and that may be useful to the Court of Appeals in resolving the dispute." Rule 74(1)(e) of the Rules of the Court of Appeals, 4 LPRA Ch. XXII-B, R. 74(1)(e). On this matter, our highest local court has reiterated that "the existence of a set of rules that govern Puerto Rican appellate practice essentially implies that although there is a right to appeal, the rules of appellate procedure must be rigorously observed, and their compliance cannot be left to the discretion of the parties or their attorneys." *Pérez Soto v. Cantera Pérez, Inc. et al.,* 188 DPR 98, 104-105 (2013).

The appellant's omission hinders our capacity to independently examine the contractual dispute. *Román et al. v. Román et al.,* 158 DPR 163, 167 (2002); *Maldonado v. Pichardo,* 104 DPR 778, 783 (1976); *Cruz Castro v. Ortiz Montalvo,* 154 DPR 47 (2001). It also prevents us from applying the principles of hermeneutics set forth in our jurisdiction to the benefit of the insured in a dispute involving an insurance contract.[2] Therefore, we assume that the insurance policy subject to this litigation does not contain any inclusive language which would allow the appellant to be protected against the harmful consequences of her intentional acts. Couch on Insurance 3d, Rev. 2014, Vol. 7, Sec. 101:21.

**\*10** The co-appellee also failed to include a copy of the contract in their Appendix. Furthermore, upon appearance, they did not respond to any of the errors indicated by the appellant and only stated that the latter failed to comply with Rule 19(a) of our Rules, 4 LPRA Ch. XXII-B, R. 19(a). Therefore, we must dismiss this appeal.

In this case, we issued a resolution whereby we warned the appellant that the term to notify the means of reproduction of the oral evidence had expired, and we granted her a short term to comply with our order. The appellant complied and requested an extension to submit the transcript of the stipulated evidence. We granted the additional time requested, and on January 9, 2018, the appellant submitted the transcript of the evidence presented during the trial. In view of the fact that the appellant complied with all our orders and submitted the required transcript, the dismissal requested by the co-appellee was not granted. Even if the transcript had not been submitted, this appeal would have been resolved on the merits, although without the benefit of the transcript of the oral evidence, since dismissal is a sanction that should be used as a last resort. *Román et al. v. Román et al., supra,* 167.

As to the legal issue of the appeal, first of all, we must verify the application of the law to the contractual dispute that arouse from the positions of the parties before the sentencing court, to wit: Does our legal system allow the appellee to claim protection from the co-appellee for the damages caused by the operation of its business that was declared a public nuisance?

A declaration of public nuisance is usually based on negligent actions or omissions which violate only the general principle of coexistence which forbids causing damage to others, and whose remedy is the cessation of the inappropriate activity or action.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Martinez Romero v. Super Asphalt Pavement, Co, 2018 WL 3037397 (2018)

See: *S.L.G. Flores Jiménez v. Colberg,* 173 DPR 843 (2008); *La Sucesión de Victoria v. Iglesia Pentecostal,* 102 DPR 20 (1974); *Ortega Cabrera v. Tribunal Superior,* 101 DPR 612 (1973). The type of damage contemplated in Art. 277 of the Code of Civil Procedure, 32 LPRA Sec. 2761, is associated with a civil violation known as "quasi-delict," whose remedy takes the form of a reversal to the conditions prior to the incident, which is generally impossible, in which case a monetary compensation is provided instead to alleviate the damage caused to the victim; "it is like a real exchange where money takes the place of the damages caused." *Soc. de Gananciales v. F.W. Woolworth & Co.,* 143 DPR 76, 81 (1997); *García Pagán v. Shiley Caribbean, Etc.,* 122 DPR 193, 205–206 (1988); *Rodríguez Cancel v. A.E.E.,* 116 DPR 443, 455–456 (1985); *Moa v. E.L.A.,* 100 DPR 573 (1972). This is because in most cases, the actions that caused the nuisance are the result of negligence. *See, Figueroa Velázquez v. A.A.A.,* 99 DPR 105 (1970); *Casiano Sales v. Lozada Torres,* 91 DPR 488 (1964); *Fuentes v. Gulf,* 91 DPR 559 (1964); *Arcelay v. Sánchez,* 77 DPR 824 (1955).

**\*11** Therefore, contrary to the appellant's arguments, a public nuisance does not give rise to absolute or objective liability, but rather it is subjective and depends on the essential causal nexus between the damage and the negligent act, which gives rise to the duty to compensate the injured party. Art. 1802 of the Civil Code of Puerto Rico, 31 LPRA Sec. 5141. This is confirmed by the above-cited opinions, in which our court of last resort applied the general principles of tort liability to assign liability to the party that caused the public nuisance and to establish the appropriate remedy. This type of occurrence would be generally covered by an insurance policy because it is based on the insured's negligent acts which caused damages to a third party. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 905 (1994).

That being said, the Resolution of the Court of Río Grande established that the nuisance caused by the appellee resulted from the operation of the asphalt production plant without the required government permits. In other words, the appellee operated their plant illegally, in violation of our permitting and land zoning laws and regulations.

The Insurance Code of Puerto Rico defines an insurance contract as "a contract whereby a person undertakes to indemnify another, or to pay or provide a specified or ascertainable benefit upon determinable contingencies therein foreseen." Section 1.020 of the Insurance Code of Puerto Rico, 25 LPRA Sec. 102. According to the Supreme Court, the word "contingency" embodies the fundamental principle contained in insurance policies that they cover only fortuitous losses and not those caused intentionally by the insured. *Fatach v. Triple S, Inc.,* 147 DPR 882, 887 (1999); R.E. Keeton and A.I. Widiss, *Insurance Law,* Minnesota, Ed. West Publishing Co. 1988, p. 497. This implies that the insurance industry relies on the fact that the risks it assumes in its contracts are not contingent upon the intentional acts of the insured. *Fatach v. Triple S, Inc., supra,* p. 888. The purpose of the above is to prevent an insured from deliberately controlling the risk of the policy through their actions, since allowing this would upset the foundations of the insurance industry and in this case would facilitate a direct assault on our basic principles of environmental public policy and land zoning, as they could be circumvented by any insured who is merely concerned with the upfront payment of an insurance premium. 5 Appelman, *Insurance Law and Practice,* Sec. 3113 (1970). Similarly, state courts have held that it is contrary to the public policy of their respective jurisdictions to allow an insurance policy to cover the intentional torts of the insured. Couch on Insurance 3d, Rev. 2014, Vol. 7, Sec. 101:22. In fact, several district and circuit courts have held that an insurance contract purporting to protect a business operated without the permits or licenses required by public authorities is void. Couch on Insurance 3d, Rev. 2014, Vol. 7, Sec. 101:36; See also: *Massachusetts Mut. Life Ins. Co. v. Millstein,* 129 F.3d 688, 692 (2d Cir.1997); *Neiman v. Provident Life & Accident Ins. Co.,* 217 F.Supp.2d 1281, 1286–87 (S.D.Fla.2002); *Zenith Ins. Co. v. Workers' Comp. Appeals Bd.,* 138 Cal.App. 4th 373, 377, 41 Cal.Rptr.3d 380, 382, 71 Cal. Comp. Cas. (MB) 374 (4th Dist.2006); *Kvaerner Const., Inc. v. American Safety Cas. Ins. Co.,* 847 So.2d 534, 539 (Fla. 5th DCA 2003); *O'Brien v. Rizvi,* 898 So.2d 360, 369 (La.2005); *State Farm Mut. Auto. Ins. Co. v. Robert Mallela,* 4 N.Y.3d 313, 321, 794 N.Y.S.2d 700, 702, 827 N.E.2d 758, 760 (2005).

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

**\*12** In view of the above scenario, and considering the context of this case, we conclude that allowing the appellee to use their insurance policy to circumvent the civil consequences of their illegal actions would encourage citizens to violate our zoning laws with the sole intent to acquire an insurance policy to cover any damage caused to a third party.

Based on our conclusion and the contents of the partial judgment of May 4, 2006, it is not necessary to examine the testimony provided in court on the damages caused by the gas emissions on the appellant's health to ascertain whether these resulted from the operation of the asphalt production plant. Rather, the issue to be resolved was one of law, which only required us to determine whether the insurer was liable for the actions of the appellee, an issue we resolved in the negative.

It is for the foregoing reasons that we conclude that the Court did not err in its interpretation of the contract subject to this litigation, and that it acted in accordance with the law in dismissing the claims against the co-appellee.

### B. The third error noted

For the third error, the appellant raised an issue not considered by the trial court. That is, the co-appellee allegedly failed to preserve evidence and even destroyed other evidence which, according to the appellant, was necessary to prove her case. In particular, [the appellant] asserts that the co-appellee failed to preserve documents related to air emissions, sulfur content records, and other documents related to non-compliance with our land zoning laws and use permits. Accordingly, she asks us to assume that the destroyed evidence is adverse to the co-appellee's position in this litigation. We emphasize that the appellant raised the issue for the first time before the court of original jurisdiction in her motion for reconsideration of the appealed judgment.

In our system of civil procedure, the primary use of a motion for reconsideration is to give discretion to the court to correct the errors it made in rendering the judgment. *Montañez Leduc v. Robinson Santana,* 2017 TSPR 122, 198 DPR y(4)6D (2017); J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 2nd Ed. JTS, 2011, T. III, p. 1374. The Supreme Court acknowledged that, in requesting reconsideration, the party is precluded from alleging new facts that the court did not consider when it rendered the judgment for which reconsideration is requested, unless it "states compelling reasons for not having done so earlier." *Rivera v. Algarín,* 159 DPR 482, 489-480 (2003).

The appellant raised this issue for the first time before the court of original jurisdiction in the motion for reconsideration of the appealed judgment. In her motion for reconsideration, the appellant merely sets forth new allegations about the alleged actions of the appellee but omits the "compelling reasons" why it did not bring the matter before the sentencing court in a timely manner. In that sense, we are precluded from passing judgment on the alleged issue, since we, as an appellate court, cannot consider factual disputes not resolved by the trial court. *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 115 (2015); *E.L.A. v. Northwestern Selecta,* 185 DPR 40, 55–59 (2012); *De Jesús Viñas v. González Lugo,* 170 DPR 499, 512, 514 (2007); *Vera Morales v. Bravo Colón,* 161 D.P.R. 308, 355 (2004); *Piovanetti v. Vivaldi,* 80 DPR 108, 121–122 (1957); *see also*: Sec. 4.001, 4.002, and 4.006, Puerto Rico Judiciary Act of 2003, Act No. 201-2003, 4 LPRA Sec. 24t, 24u, and 24y.

**\*13** In light of the fact that these new allegations were not examined by the trier of fact in this case, we have no authority to consider the respective arguments brought by the appellant.

### C. Expert testimony

The fourth and fifth errors of the appeal are aimed at questioning the assessment of the expert evidence made by the court of original jurisdiction. In essence, the appellant claims that the testimonies of the appellee's expert witnesses, Dr. Máximo Blondet Passalacqua and Dr. Neftalí García Montañez, should be disregarded.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

In this regard, the appellant argues that their expert testimony lacks an adequate factual basis and consequently asserts that there is no use in determining the effect of the toxic gas emissions from the asphalt production plant on her health. In particular, the appellant asserts that Dr. Blondet Passalacqua reached his conclusions without analyzing any documents related to the appellant's compliance with the law and with environmental, safety, and occupational health regulations. Likewise, the expert did not medically examine the appellant. Finally, she stated that Dr. Blondet Passalacqua's expertise is in sleep disorders and tuberculosis, not in industrial accidents.

In reference to the testimony of Dr. García Montañez, the appellant argues that it should also be disregarded, since the expert did not conduct field tests or produce scientific evidence to support his opinion. She adds that the expert witness also did not use measuring instruments, such as thermometers, anemometers, olfactometers, or standard equipment to determine the direction of the wind and the environmental conditions of the appellant's work area. On this basis, she concludes that the testimony of Dr. García Montañez "is totally anecdotal" and full of generalizations.

From a first reading of the appealed judgment, it is evident that the court of original jurisdiction did not use the expert testimony of Dr. García Montañez to resolve the case. Likewise, the trial court dismissed the testimony of Dr. Blondet Passalacqua. This expert concluded that there was no evidence of a causal nexus between the appellant's diagnosed health conditions and the pollutant emissions from the appellee's plant. Despite the medical expert's opinion, the sentencing court concluded that "the plant operated by [the appellee] had some impact on [the appellant's] health." Regarding the above, the trier of fact added that they "do not believe that the odors that [the appellant] claims to have perceived at her workplace during her work at the school adjacent to the plant is the primary cause of all of [the appellant's] health conditions and of [the State Insurance Fund's] diagnosis."

*14 Rather, the trial court based its judgment on findings of fact based on the contents of the appellee's medical records. This documentary evidence confirms the judgment issued by the court of original jurisdiction. Namely, [it confirms] that the toxic gases emanating from the asphalt factory chimneys were not the main cause of the deterioration of the appellant's respiratory system; rather, and according to the contents of the appellant's health record, the main cause was the [appellant's] exposure to allergens in the classroom where she worked for years. This emerges from a close examination of the appellant's medical record created by the medical inspectors of the State Insurance Fund Corporation. In the record, the different physicians and specialists who attended the appellant documented how her respiratory ailments were caused by recurrent exposure to different allergy-producing substances such as dust, humidity, and fungi in her workplace, and not the odors and gas emanations originating from the appellee's business facilities.

In light of the foregoing, the court of original jurisdiction did not commit errors number four and five.

### D. Damage assessment

Lastly, the appellant does not agree with the compensation awarded by the court of original jurisdiction. As a starting point for comparison, she invites us to analyze three opinions, one Supreme Court judgment and two judgments of this Court. Of the three opinions reviewed, we shall begin with *Arcelay v. Sánchez,* 77 DPR 824 (1955), and *Cruz v. Ortiz,* 82 DPR 834 (1961).

In *Arcelay v. Sánchez, supra,* the Supreme Court awarded $2,500 in "personal damages" and "physical damages" sustained by the plaintiff's property. Both types of damage were caused by the operation of a pasteurized milk production plant. The Supreme Court described the plaintiff's personal damages as "annoyance, discomfort, anguish, and physical and moral suffering." *Arcelay v. Sánchez, supra,* p. 850. We emphasize that in the compensation, the Court included the personal damages described above, as well as the physical damages caused to his property, which in some parts of the opinion are referred to as the depreciation in the value of the property due to its location next to the pasteurization plant, whereas in other parts of the opinion are referred

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

to as physical damages to the plaintiff's property without specifying their type or origin. In pertinent part, the damages awarded in this case included two types of damages, whose estimated amounts are impossible to distinguish. Furthermore, it does not appear from the opinion that the nuisance caused any medical condition to the plaintiff in *Arcelay v. Sánchez, supra,* beyond the annoyance caused by the constant noise and bad odors coming from the neighboring business.

**\*15** Having reviewed the opinion, we find the circumstances of that litigation and those of the present case to be distinguishable based on the type of damage suffered, as they prove to be incompatible when attempting to establish a point of convergence. In this case, it is clear that the respiratory condition affecting the appellant was not caused by the fumes emanating from the chimneys of the appellee's factory. Rather, it was a factor that worsened a medical condition caused by the environmental conditions of appellant's own workplace. This is confirmed by the contents of the appellant's medical record. It is for these considerations that the aforementioned opinion is not useful as a precedent for establishing a reasonable amount of damages in this case. *Rodríguez et al. v. Hospital et al., supra,* pp. 909-910.

The appellant also requests that we use as precedent the case of *Cruz v. Ortiz,* 82 DPR 834 (1961). There, the Supreme Court awarded $2,000 in compensation for the "transgressions, uneasiness, and insecurity suffered by the plaintiff." Apart from this general description of the damages caused, we do not find any details about them that would allow us to compare them with those proven in this litigation. Therefore, we also dismiss the opinion as a comparative point of analysis on the amounts of damages challenged in this appeal.

Likewise, we discard the use of the judgment rendered by our court of last resort in the litigation *Vega v. Iglesia Pentecostal La Gran Jerusalén,* 129 DPR 219 (1991), which not only does not set a precedent, but it demonstrates that there was a conflict between the associate judges as to the reliability of the findings of fact included in the judgment rendered by the court of original jurisdiction. *See:* Concurring and dissenting opinion filed by Associate Judge Rebollo López, *Vega v. Iglesia Pentecostal La Gran Jerusalén, supra*.

The appellant draws our attention to the contents of two judgments rendered by sister panels KLAN201400518, and KLRA20160913, to use them as a proper reference for the adjustment of the relief contained in the appealed judgment. According to the ancillary issues contained in the judgment of the first appeal, the evidence established that the asthma symptoms suffered by the appellee, and for which she received medical treatment, were caused by gas emanations whose origin was her neighbor's house.

Contrary to this, in that case it was evident that, in addition to her physical illness, the plaintiff suffered from a pre-existing depression that was worsened by the situation provoked by her neighbors. The plaintiff in the case, unlike the appellant, not only had a diagnosis of depression, but also took medication to treat it. In addition to this, the nuisance for which relief was granted in the judgment lasted about twenty years, contrary to the current litigation which lasted only a few years. Based on these details, the Court of Appeals confirmed the court of original jurisdiction's estimate of damages, which amounted to $30,000. As we can see, the distinctions between the facts of the two cases are notable, both in the duration of the nuisance and in the type of damage compensated, which prevents us from using it as a comparative tool in terms of the final amount contained in the judgment rendered.

**\*16** As for the other judgment rendered by this Court (KLRA20060913), although similar in terms of the diagnosis of the affected party, it does not mention the amounts of damages awarded. In contrast to the present [case], the aforementioned judgment states that the plaintiff was also diagnosed with a Þ [sic] physiological disability and passed away as a result of his health conditions. Therefore, we would abuse our appellate discretion if we were to modify the damages awarded in this litigation based on the judgment summarized above. Thus, the circumstances of these two judgments are dissimilar to the situation described in the appealed judgment, and we are therefore not persuaded by the appellant's argument regarding them.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Lastly, the appellant refers to the facts contained in *Casiano Sales v. Lozada Torres,* 91 DPR 488 (1964). In the opinion, the Supreme Court confirmed the amount of $3,500 for the damages caused to the plaintiff due to the nuisance, which consisted of "the noises and harmful substances circulating in the air inside" the affected party's house. We highlight the similarity between that case and this one in that the consequence of the damage caused to the plaintiff was "vomiting, dizziness, and some other physical discomfort." *Casiano Sales v. Lozada Torres, supra,* p. 499.

Of all the cases discussed by the appellant in her argument, we find that this one presents the greatest similarity to the present [case]. The only difference is that in *Casiano Sales v. Lozada Torres, supra,* the damages awarded included discomfort related to the use and enjoyment of the plaintiff's property. In this [case], the amounts to be paid by the appellee take into consideration only the harmful effect of the operation of the asphalt production plant on the appellant's health. In the present appeal, there is no violation or impairment of the appellant's right to property, despite the fact that the appealed judgment mentions the interference of the factory with the appellant's right to work, and she made no claims regarding such offense.

Now then, let us consider that the current value of the amount awarded in *Casiano Sales v. Lozada Torres, supra,* is $12,911.50.[3] In contrasting the aforementioned opinion, with special attention to the causal nexus evidenced in the present litigation regarding the cause of the damage in the appellant's own workplace, we conclude that the damages caused to the latter were reasonably compensated.

Therefore, the sentencing court did not err in estimating the compensation in this case at $12,500.

### V. Resolution of the case

Due to the aforementioned reasons, we confirm the appealed judgment.

It is so agreed and ordered by the Court and certified by the Clerk of the Court of Appeals.

**\*17** Lilia M. Oquendo Solís, Esq.

Clerk of the Court of Appeals

### Footnotes

[1]   From the resolution, it appears that the court of original jurisdiction ordered the closing of the asphalt concrete production plant because the appellant operated the business without the required legal permits. *See* Resolution of April 19, 2007, *Commonwealth of Puerto Rico v. Super Asphalt Pavement Corporation,* Civil Case No. FNPE2007-0009 (004), consolidated with *María Ortiz Vizcarrondo et al. v. Super Asphalt Pavement Corporation* and *Municipio de Canóvanas et al. v. Super Asphalt Pavement Corporation,* jointly Civil Case No. FNPE2007-0034 (004); *See also*: Resolution of June 29, 2007, KLCE0700769 (certiorari denied).

[2]   Among the most outstanding principles is the protection of the insured by resolving all doubts in the interpretation of vague language in the policy endorsements so as to adopt the interpretation that most favors the insured. *Integrand Assurance v.Codeco,* 185 DPR 146, 161 (2012); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 902 (1994). See also: *Díaz Ayala et al. v. E.L.A.,* 153 DPR 675, 691 (2001); Sec. 11.140 of the Insurance Code, 26 LPRA Sec. 1114. Of course, in view of the right to appeal, it was appropriate for the appellant to place us in a position to apply the rules of interpretation referred to in this case. *S.L.G. Lloréns v. Srio. de Justicia,* 152 DPR 2, 8 (2000).

 I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.

Martinez Romero v. Super Asphalt Pavement, Co, 2018 WL 3037397 (2018)

[3]  The consumer price index for 1964 was 23.1, so the purchasing value of the dollar was $4.34. We performed the following calculation to obtain the inflation adjustment: $3,500 x $4.34 = $15,190. As a second step, we divided the inflation adjustment ($15,190) by the purchasing value of the dollar for 2017 ($0.85), obtaining $12,911.50 as the current value of the amount granted in 1964.

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

I Juan E. Segarra USCCI #06-067/translator certify that the foregoing is a true and accurate translation to the best of my abilities of the document in Spanish which I have seen.