## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**SHEILA M. GARCIA RIVERA**

               Plaintiff,

   v.

**BALCHEM CORP.,** and
**STERI-TECH, INC.**

               Defendants.

**CASE NO. 3:25-cv-01056-CVR**

**PLAINTIFF'S OPPOSITION TO DEFENDANT STERI-TECH'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

I.      INTRODUCTION …........................................................................ 1

II.     PROCEDURAL POSTURE ........................................................... 2

III.    LEGAL STANDARD.................................................................... 2

IV.     ARGUMENT ............................................................................... 3

    A.  GENERAL ALLEGATIONS ESTABLISH PLAUSIBILITY …….................... 4

    B.  THE HERNÁNDEZ DECLARATION ................................. 5

    C.  DOJ ENFORCEMENT ACTION ........................................ 7

    D.  PLAINTIFF'S CAUSES OF ACTION ARE WELL PLED …............................ 9

      i.      Private Nuisance and Negligence…............................... 9

      ii.     Abnormally Dangerous Activity .................................. 11

    E.  PLAINTIFF'S CLEAN AIR ACT CLAIM IS PROPERLY BEFORE THIS
      COURT ................................................................. 14

    F.  PLAINTIFF'S CLAIMS ARE TIMELY ............................ 15

      i.      Discovery Rule ……....................................... 16

      ii.     Continuing Tort Doctrine ...................................... 16

V.      CONCLUSION........................................................................... 17

## Table of Authorities

**Cases**

*Ahrens v. Superior Ct.*, 197 Cal. App. 3d 1134 (Ct. App. 1988) .................................. 12

*Alejandro-Ortiz v. P.R. Elec. Power Auth.*, 756 F.3d 23 (1st Cir. 2014)...................................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 2

*Blum v. Holder*, 744 F.3d 790 (1st Cir. 2014) ............................................................ 3

*C.P. Holding Inc. v. Goldberg-Zoino & Assocs.*, 769 F. Supp. 432 (D.N.H. 1991) .................... 11

*Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23 (1st Cir. 1998) ............................... 12

*Commc'ns Corp. v. Barrett Paving Materials, Inc.*, 631 F. Supp. 2d 110 (D. Me. 2009) ............ 11

*Edwards v. Post Transp. Co.*, 228 Cal. App. 3d 980, 279 Cal. Rptr. 231 (Ct. App. 1991) .......... 12

*Estate of Alicano Ayala v. Philip Morris, Inc.*, 263 F. Supp. 2d 311 (D.P.R. 2003) .................. 16

*Gen. Elec. Co. v. Am. Annuity Grp., Inc.*, 137 F. Supp. 2d 1 (D.N.H. 2001) .............................. 11

*González Cabán v. JR Seafood, Inc.*, 132 F. Supp. 3d 274 (D.P.R. 2015), certified question
answered, 99 P.R. Offic. Trans. 15 (2017) .................................................................. 12

*Goodell v. Bayer Healthcare Pharms., Inc.*, No. 18-11488, 2019 WL 4771136 (D. Mass. Sept. 30,
2019) .................................................................................................................. 10

*Hernández v. Esso Standard Oil Co. (P.R.)*, 429 F. Supp. 2d 469 (D.P.R. 2006) ........................ 9

*In re Caribbean Petroleum*, 561 F. Supp. 2d 194 (D.P.R. 2008) ......................................... 9

*LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507 (1st Cir. 1998) .......................................... 15

*López-Rivera v. Hosp. Auxilio Mutuo, Inc.*, 290 F. Supp. 3d 137 (D.P.R. 2017) ......................... 3

*McMillan v. Rodríguez-Negrón*, 511 F. Supp. 3d 75 (D.P.R. 2020) ..................................... 17

*M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc.*, 31 F. Supp. 2d 226 (D.P.R. 1998) .... 17

*Rodríguez-Suris v. Montesinos*, 123 F.3d 10 (1st Cir. 1997) ............................................ 16

*Ryan v. Greif, Inc.*, 708 F. Supp. 3d 148 (D. Mass. 2023) ............................................... 14

*Sanchez v. Esso Standard Oil de P.R., Inc.*, 747 F. Supp. 2d 261 (D.P.R. 2010) ........................ 11

*Stearns v. Metro. Life Ins. Co.*, 308 F. Supp. 3d 471 (D. Mass. 2018) ....................................... 14

*United States v. Steri-Tech, Inc.*, No. 3:24-cv-01490 (D.P.R. July 15, 2024) ........... 7, 8, 9, 11, 14

*United States v. Borden*, 572 F. Supp. 684 (D. Mass. 1983) ............................................. 11

**Statutes**

42 U.S.C. § 11002 ........................................................................................ 11

42 U.S.C. § 7412(r)(3) ................................................................................. 11

42 U.S.C. § 7604 .......................................................................................... 14

P.R. Laws Ann. tit. 31, § 5298 .................................................................... 16

**Regulations & Rules**

40 C.F.R. § 68.130 ....................................................................................... 11

40 C.F.R. pt. 355, apps. A–B ....................................................................... 11

Fed. R. App. P. 32 .......................................................................................... 4

**Other Authorities**

Restatement (Second) of Torts § 520 ........................................................... 12

Antonin Scalia & Bryan A. Garner, Making Your Case: The Art of Persuading Judges (4th ed.
2008) .............................................................................................................. 4

## I.    INTRODUCTION

Plaintiff Sheila M. Garcia Rivera ("Plaintiff") submits this opposition to Steri-Tech, Inc.'s ("Steri-Tech" or "Defendant") Motion to Dismiss the Amended Complaint, ECF No. 40. Defendant's brief is filled with rhetorical excess intended to obscure its lack of substance— describing the amended complaint as entirely "conclusory" and "threadbare" (see, e.g., ECF No. 40, at 1–2), without addressing the substantive allegations or the supporting declaration in the Amended Complaint. The Amended Complaint includes specific, plausible facts supported by direct evidence from the facility—both inside and outside. See, Am. Compl. ¶¶ 1–5, 13–22, 29– 55 (ECF No. 33). Plaintiff's past and ongoing exposure are clearly outlined. *Id*. ¶¶ 4, 22.

Moreover, the dangerous practices and disregard for human health were described by a former employee who personally witnessed them. See, Am. Compl. ¶¶ 49–51; Ex. 2 (Hernández Decl. ¶¶ 7–29) (ECF No. 33-2). This unique pre-discovery evidence at the pleading stage is compelling and remains entirely unrefuted; the declaration is neither acknowledged nor discussed in Steri-Tech's Motion to Dismiss. The declaration from a six-year Quality Assurance Specialist provides fact-based, non-conclusory support for Plaintiff's claims that meets or exceeds plausibility under *Twombly*/*Iqbal*.; see also, Am. Compl. ¶¶ 42, 44–45, 48, 50; Ex. 2 (Hernández Decl. ¶¶ 7–29) (ECF No. 33-2).

Lastly—remarkably unaddressed in the Motion to Dismiss—Plaintiff's claims stand apart from the DOJ's recent Clean Air Act (CAA) filing. See, **Exhibit 1**. They stem from unique personal injury and specific risks that the government's case does not cover. The DOJ's findings, referenced in the cited Compliance Administrative Order and the overlooked CAA action filed on July 15, 2025, bolster Plaintiff's case and underline the gravity of the allegations at hand.

## II.    PROCEDURAL POSTURE

Plaintiff filed the Amended Complaint on June 12, 2025, ECF No. 33. Balchem moved to dismiss on July 21, 2025, ECF No. 38. Steri-Tech separately moved to dismiss on July 24, 2025, ECF No. 40, and, the same day, filed a "Joinder" adopting specific sections of Balchem's brief, ECF No. 41. On August 1, 2025, the Court extended Plaintiff's opposition deadline for all pending motions to August 28, 2025, ECF No. 44.

This opposition responds to both Steri-Tech's Motion to Dismiss, ECF No. 40, and the arguments in its "Joinder" Motion, ECF No. 41, as they relate to the allegations and claims specific to Steri-Tech. Plaintiff's response to Balchem's Motion to Dismiss, ECF No. 39, will be filed separately, and arguments related to the "Joinder" that overlap with Balchem will be discussed there.[1]

## III.    LEGAL STANDARD

A complaint states a claim when it contains factual matter permitting a reasonable inference of liability; detailed allegations are not required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor. *Blum v. Holder*, 744 F.3d 790, 795 (1st Cir. 2014).

---

1 "Joinder of Parties" is governed by Federal Rules of Civil Procedure 19 and 20, while "Joinder of Claims" is governed by Rule 18. Defendant does not cite any of these because this is not a Joinder Motion. Instead, Defendant relies on FRCP 10(c)—the adoption by reference subpart of the Form of Pleadings rule—and LR 7(f) "Adoption by Reference." Neither cited rule constitutes a "Joinder," nor can this effort accurately be called a "Joinder"—nothing is being joined. Instead, Defendant has effectively drafted a five-page addendum to this motion, mislabeled it, and filed it unnecessarily. Defendant cites the same two rules on pages 18-19 of their Motion to Dismiss—making this separate filing redundant. Therefore, this additional filing is unnecessary, not contemplated by either cited rule, and in no way qualifies as a "Joinder." To the extent that new arguments are raised there, they are improperly presented and should be ignored. Rather than slowing down proceedings by challenging the facial impropriety of the "Joinder," Plaintiff will address the arguments adopted by reference under the correct rules within the Motion to Dismiss.

A statute of limitations defense warrants dismissal only if the pleadings "leave no doubt" the claims are time-barred. See, *López-Rivera v. Hosp. Auxilio Mutuo, Inc.,* 290 F. Supp. 3d 137, 141 (D.P.R. 2017).

## IV.    ARGUMENT

The Plaintiff's Amended Complaint meets or surpasses the standards set forth by federal pleading standards due to the substantive specificity of its claims against Steri-Tech. The allegations are not mere vague generalities or tired legal boilerplate; they are detailed and documented. This case revolves around a real individual who for decades has been exposed, and continues to be exposed to this day, to dangerous emissions of ethylene oxide ("EtO") and as a direct and proximate result of said exposure was diagnosed with breast cancer in 2019 and remains at substantial risk of additional or future injuries. The thorough nature of this Amended Complaint illustrates how Steri-Tech's emissions have fostered a persistent and hazardous environment, one that has had a direct and foreseeable impact on the Plaintiff's health.

Moreover, the unchallenged declaration from Emely Hernández, who worked directly at the Salinas facility, provides an extraordinary level of detail and insight that is often unavailable at the pleading stage in cases of this nature. These compelling facts are more than sufficient to withstand any motion to dismiss.

The Defendant's reliance on gratuitous emphasis and theatrical editorializing does nothing to mask the reality that this Complaint is sufficiently pled and timely.[2] The discovery rule and the continuing tort doctrine are grounded in the genuine delays and practical challenges faced by the Plaintiff, absent the ongoing revelations bringing to light Steri-Tech's misconduct. The Defendant's efforts to characterize this as group pleading or mere speculation are both unfounded and erroneous. Therefore, the Motion to Dismiss should be denied in its entirety.

## A. General Allegations Establish Plausibility

The Amended Complaint provides a detailed, chronological account of Plaintiff's ongoing exposure to EtO from the Steri-Tech facility in Salinas, P.R.. See, Am. Compl. ¶¶ 1–5, 13–22, ECF No. 33. Plaintiff has not just lived nearby, she has spent nearly forty years well within the relevant exposure zone, first within 1,000 feet, then within one mile. *Id*. ¶¶ 4, 22. Moreover, the hazards of EtO are well-established. The Amended Complaint explains how the EPA, NIOSH, and IARC recognize EtO as a potent human carcinogen. *Id*. ¶¶ 3,9, 32–41. It also provides background on operations: over thirty-five years of consistent and largely unmitigated emissions, both routine and fugitive, poisoning Plaintiff's community. *Id*. ¶¶ 4, 14, 16, 22, 31, 42–44, 48, 72, 79. The allegations specifically detail Plaintiff's breast cancer diagnosis, with dates and exposure history linked to Defendants' actions. *Id*. ¶¶ 4, 22, 90–94, 111. Supporting epidemiology and risk assessments contextualize her experience and show that this is no freak occurrence. *Id*. ¶¶ 18, 19, 32, 38, 41.

---

[2] Defendant's Motion to Dismiss and "Joinder" repeatedly offend legal grammar norms of federal courts concerning emphasis in legal briefs, as the use of bold, italics, and underlining together or simultaneously is widely considered improper. See Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* (4th ed. 2008) ("Don't overuse italics; don't use bold type except in headings; don't use underlining at all."); see also, Fed. R. App. P. 32 ("A brief must be set in a plain, roman style, although italics or boldface may be used for emphasis."). Defendant's persistent misuse of legal grammar for effect serves only as an attempt to distract from the lack of merit in the unadorned words of their brief.

The connection between Defendants' misconduct and Plaintiff's injury is detailed, step-by-step, and supported by documents demonstrating Defendant's awareness of EtO's dangers and willful disregard for the same. *Id*. ¶¶ 12, 15–16, 45–46. Steri-Tech's continued harmful practices left Plaintiff and her neighbors exposed because Defendant chose profits over public health. Operational failures are alleged with precision, including missed emission controls, outdated equipment, inadequate training, and a lack of community warnings. *Id*. ¶¶ 44–46, 48, 49, 83. EPA risk assessments and health advisories verify what Plaintiff's experiences already show. *Id*. ¶¶ 17–19. 53–55. Defendant's core assertion that these pleadings are "conclusory" or "threadbare" does not hold up on even a casual review.

**B. The Hernández Declaration**

The Hernández Declaration, Ex. 2, ECF No. 33-2, details operations, protocols, and conditions at Steri-Tech during her tenure from 2016 to 2022. This account by Emely Hernández, a Quality Assurance Specialist, is based on her direct observations and experiences at the Steri-Tech facility. See, Hernández Decl. ¶¶ 3–4. Her declaration identifies no fewer than 10 overlapping grounds of actionable misconduct by Steri-Tech, including:

| First-Hand Testimony | ¶ Citation from Declaration | Relevance to Claims |
|---|---|---|
| Standards were developed via trial and error through the arbitrary manipulation of the different factors of the sterilization process, as there was no formal training provided by Steri-Tech on this matter. | 10 | Insufficient Training, heightened risk of uncontrolled emissions to the community |
| Informed by Mr. Joel Atkins, an employee with the manufacturer of the sterilizing machinery used in Steri-Tech, that due to its | 12 | Unsafe equipment, fugitive emissions, insufficient |

| | | |
|---|---|---|
| age our equipment was considered obsolete. Steri-Tech management was aware of this fact. | | training, actual awareness of non-compliance by management |
| The training process for new operators mainly consisted of two pages of written materials (in the English language) followed by three months of "on-the-job shadowing" of a more senior operator. | 14 | Insufficient Training |
| Observed doors to the "preconditioning rooms" being partially open during the EtO sterilization process. | 17 | Unsafe Releases and Fugitive Emissions |
| Observed the thermal burners responsible for removing/burning EtO from the rooms were not turned on. | 18 | Fugitive Emissions, insufficient emission tracking |
| Witnessed employees exchange EtO holding tanks connected to one of the sterilization chambers to another sterilization chamber mid-use, risking a potential explosion. | 19 | Unsafe Releases and Fugitive Emissions, Insufficient Training |
| 2019 and through 2021, the Steri-Tech facilities would largely operate with the windows facing the La Margarita community open. These windows remained open even when the doors to the sterilization chambers were open. There is effectively no filtration of the air escaping through the windows. Left open until August 2022. | 21-22 | Unsafe Releases and Fugitive Emissions: Actual Awareness of Non-Compliance by Management. |

| | | |
|---|---|---|
| The use of masks and protective gear was rarely ever enforced. | 25 | General Disregard for safety, Insufficient Training on exposure risk |
| Balchem provided dedicated training to Steri-Tech employees every two years on practices for handling ethylene oxide (EtO). | 26 | Insufficient Training regularity and depth |
| Employees that were hired in between the two-year gap of Balchem's training were only provided with printed copies of the presentations used by Balchem training personnel with no additional guidance or explanation before starting work. | 27 | Insufficient Training |

This unchallenged testimony supports the Amended Complaint as evidence of systemic failures and unsafe practices, providing a rare insider view of plant operations during the relevant period at the pleading stage. See, Am. Compl. ¶¶ 47–51, 63, 71, 73. Because the unchallenged declaration pushes Plaintiff's from "possible" to "plausible," Defendant's Motion to Dismiss and "Joinder" should be denied.

**C. DOJ Enforcement Action**

On July 15, 2024, the United States Department of Justice (DOJ), representing the Environmental Protection Agency, filed a civil enforcement action against Steri-Tech in the United States District Court for the District of Puerto Rico. See, DOJ Compl. ¶¶ 2–9, 22–30, *United States v. Steri-Tech, Inc.*, No. 3:24-cv-01490 (D.P.R. July 15, 2024), ECF No. 1. Defendant inexplicably neglects to mention this in their Motion to Dismiss. Nevertheless, this DOJ action concerns the

same Steri-Tech facility and period of conduct discussed here. The DOJ complaint alleges a series of ongoing and repeated violations of the Clean Air Act, including Steri-Tech's failure to install, maintain, and operate federally mandated emissions controls, as well as lapses in monitoring, reporting, and record-keeping. *Id*. ¶¶ 2–9, 23–30.

The DOJ states that Steri-Tech's violations were neither isolated nor purely technical; instead, they were persistent and directly affected the surrounding community. Specifically, the complaint alleges that Steri-Tech failed to implement adequate controls on EtO emissions, neglected mandated testing, and consistently underreported emissions to regulatory authorities. *Id*. ¶¶76–78, 80, 82–83, 89–91, 94–95, 102–104, 106. For several years, the facility's EtO emissions surpassed federal thresholds and went unmonitored at critical points, posing an ongoing threat to public health and the environment. *Id*. ¶¶ 66–71.

The civil case initiated by the DOJ seeks injunctive relief—requiring corrective measures at the facility—and civil penalties to hold Steri-Tech accountable for regulatory violations. *Id*. ¶¶ 49–50, 84–85, 96–97, 108–109. Total penalty sought, $124,426 a day for over 3,580 days (Nov. 3, 2015 to Aug. 21, 2025), exceeds 400 million dollars. *Id*. at 50, 85, 97, 109.   Requested remedies include installing updated emission controls, complying with reporting and monitoring requirements, and imposing penalties for past and ongoing violations. The DOJ characterizes Steri-Tech's EtO emissions as a continual hazard, citing a recurring pattern of noncompliance as justification for court oversight and enforcement. *Id*. ¶¶ 1, 22–24, 27, 34, 44–48.

The DOJ's factual account matches the core allegations in the Plaintiff's Amended Complaint and the Hernández declaration. Both reference many of the same deficiencies, such as ongoing neglect of air quality standards and emissions control best practices and describe the impact on the health of the Salinas community. *Id*. ¶¶ 51–56, 65–70, 72–75. Furthermore, both the

DOJ and Plaintiff characterize the period of noncompliance as lasting several years, involving repeated practices, and affecting the same geographical area and population. The DOJ's findings, based on federal regulatory review, provide independent and official confirmation of the main facts in this case.

## D. Plaintiff's Causes of Action Are Well Pled

Plaintiff's assertions concerning commonwealth claims—including private nuisance, negligence, and abnormally dangerous activities—are pled in detail. They highlight a persistent history of hazardous EtO emissions and ongoing operational shortcomings, along with their long-term effects on the Salinas community. Both insider testimony and federal government sources support these claims. See, Am. Compl. ¶¶ 18–21, 32–52; Hernández Decl. ¶¶ 7–22; DOJ Compl. ¶¶ 18–21, 34–40, 46–47, 38–39, 49–50. These well-supported and cited allegations confirm the ongoing impact, obligations, breaches, foreseeability of harm, and the inherently hazardous nature of the activity. This comprehensive factual foundation turns vague legal principles into specific, evidence-based claims, providing a solid basis for judgment under Puerto Rico law.

### i.    Private Nuisance and Negligence

This District has applied Puerto Rican tort law flexibly to address environmental toxin harms arising from recurring toxic exposures impacting nearby residents. Courts in this District have allowed nuisance claims arising from vapor, fumes, and similar intrusions without requiring plaintiffs to prove poisonous concentrations at the pleading stage. See, e.g*., Hernández v. Esso Standard Oil Co. (P.R.)*, 429 F. Supp. 2d 469, 473–75 (D.P.R. 2006); *In re Caribbean Petroleum*, 561 F. Supp. 2d 194, 200–07 (D.P.R. 2008).

Negligence hinges on foreseeability and breach; handling an explosive, carcinogenic sterilant yards from homes while bypassing controls and failing to provide sufficient training constitutes a plausible breach. Steri-Tech falsely argues that Plaintiff has made only vague allegations against all defendants jointly which "renders it difficult for Steri-Tech to respond." ECF 40, at 20. Plaintiff specifically alleged that "Steri-Tech then used the EtO in a manner that allowed it to escape into the surrounding air." Am. Compl. ¶42. Plaintiff alleged that "Steri-Tech failed to use available technologies to control emissions, failed to warn Ms. Garcia Rivera… and continue to emit EtO into the air in quantities far exceeding safe limits. Am. Compl. ¶88.

 Steri-Tech argues Plaintiff "failed to identify a proximate cause or nexus" between its breach of duty of care and Plaintiffs' injury. ECF 40, at 20.  Defendant suggests Plaintiff's allegations consist of no more than an exacerbation of her injuries. *Id.*  A Plaintiff sufficiently pleads causation when he pleads exposure to a harmful substance and injury as *sequalae* to the exposure. See, e.g., *Goodell v. Bayer Healthcare Pharmaceuticals, Inc*., No. 18-11488, 2019 WL 4771136, at *5 (D. Mass. Sept. 30, 2019). Plaintiff meets this standard. Plaintiff repeatedly and thoroughly pled that EtO was a known carcinogen, See, Am. Compl. ¶¶ 1, 9, 12, 14, 15, 34-46, 87, 90, 91 and that it was scientifically linked to breast cancer, with which she has been diagnosed. *Id* ¶¶  3, 4, 11, 19, 22, 52, 91, 111.  Plaintiff not only plead that she lived within 1000 yards of the Steri-Tech facility, but that she was exposed to a cancer risk 600 x greater than the national average. *Id.* ¶¶14, 124. Plaintiff alleges more than that Defendant's EtO only exacerbated her cancer; Plaintiff alleges "the prolonged repeated and ongoing exposure *caused Ms. Garcia Rivera to develop breast cancer*." *Id.* ¶ 107 (emphasis added). Causation need not be proven now; it's a merits issue for expert discovery. Defendant's motion to dismiss the Nuisance and Negligence claims should be denied.

ii.    **Abnormally Dangerous Activity**

Steri-Tech operates a commercial sterilization facility that stores, uses, and then emits EtO into the surrounding community. Am. Compl. ¶¶ 1, 28–34. EPA and Steri-Tech's own data demonstrate that EtO emissions—measured and modeled at levels exceeding health-based thresholds—pose dramatically unacceptable cancer risks to nearby residents. *Id.* ¶¶ 73–80, 94–102. These allegations are further corroborated by the DOJ's enforcement action, which details Steri-Tech's repeated violations of pollution control and monitoring requirements, resulting in uncontrolled releases of EtO into the ambient air. DOJ Compl. ¶¶ ¶76–78, 80, 88–92, 101–104, 106. The DOJ's action should not be a surprise; Ethylene oxide is expressly and regularly designated as an "Extremely Hazardous Substance" under federal law, including the Clean Air Act, 42 U.S.C. § 7412(r)(3); 40 C.F.R. § 68.130, and 42 U.S.C. § 11002; 40 C.F.R. Part 355, Apps. A–B, reflecting Congress's recognition that releases of EtO may cause death, serious injury, or property damage due to its toxicity, volatility, flammability, and reactivity. Courts routinely reject dismissal at the pleading stage in similar matters where plaintiffs allege that a defendant's operations involve environmental contamination. *Sanchez v. Esso Standard Oil de Puerto Rico Inc.* 747. Supp 2d 261 (D.P.R. 2010), *Commc'ns Corp. v. Barrett Paving Materials, Inc.*, 631 F. Supp.2d 110 (D. Me. 2009), *U.S. v. Borden,* 572 F. Supp. 684 (D. Mass. 1983), *C.P. Holding Inc. v Goldberg-Zoino & Assoc.*, 769 F. Supp. 432 (D.N.H. 1991), *Gen. Elec. Co. v. Am. Annuity Grp., Inc.*, 137 F. Supp. 2d 1 (D.N.H. 2001).

Defendants argue that the activity is not abnormally dangerous because it is "common" and "regulated." ECF No. 43, at 14–15. This ignores that widespread regulation reflects—not negates—the inherent danger of EtO sterilization. As pled, even full regulatory compliance (which Steri-Tech did/does not meet) would not fully eliminate the risk of harm. More generally,

regulation does not shield from Abnormally Dangerous Activity liability, as articulated by favored California precedent:

> Clearly, in permitting continued use, the EPA did not arrive at a determination that PCBs are functionally safe, but rather engaged in a cost-benefit analysis for the purpose of deciding whether to regulate or prohibit the activity. The agency elected to regulate an activity involving a known toxic substance, a decidedly different question from that presented in determining whether an activity is abnormally dangerous. Even though an activity has some utility, it is for the court to decide that its unusual danger requires, as a matter of policy, that the business engaged in the activity assume the cost for the harm the activity causes. (Rest.2d Torts, § 520, com. (f).)

*Ahrens v. Superior Ct.*, 197 Cal. App. 3d 1134, 1147–48, (Ct. App. 1988).

Further, strict liability for tort in Puerto Rico is considered a "jurisprudential embellishment" by the Supreme Court of Puerto Rico of the basic statutory tort action contained in Article 1802 of the Puerto Rico Civil Code and "[i]n order to fill a gap in our body of laws, the Puerto Rico Supreme Court [has] adopted, through case law, the U.S. common law products liability principles ... to develop this field ... notwithstanding the fact that our legal system is rooted in the Civil Law that puts emphasis on positive or written law." *Gonzalez Caban v. JR Seafood*, 132 F. Supp. 3d 274, 280 (D.P.R. 2015), *certified question answered*, 99 P.R. Offic. Trans. 15 (Dec. 1, 2017) (citation modified). Puerto Rico has expressly adopted and takes as highly persuasive authority the product liability caselaw that has been developed in California, which has explicitly adopted the Abnormally Dangerous Activity claim under the terms of the Restatement (Second) of Torts. See, e.g., *Collazo-Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 25 (1st Cir. 1998) ("As it has revisited the issue of Puerto Rico strict products liability law, the Supreme Court of Puerto Rico has consistently relied upon California Supreme Court precedent."); *Edwards v. Post Transportation Co.*, 228 Cal. App. 3d 980, 984, 279 Cal. Rptr. 231, 233 (Ct. App. 1991) ("The California utilization of the doctrine of ultrahazardous activity relies upon the exposition

which has been contained in the Restatement of Torts, and is now set forth in sections 519 and 520 of the Restatement, Second Edition.").

Because California expressly recognizes this claim under the broader umbrella of strict liability torts, and because Puerto Rico jurisprudence continues to adopt Californian case law on precisely that subject, Abnormally Dangerous Activity is presumptively a valid claim in this jurisdiction. The Amended Complaint's detailed factual allegations—including Steri-Tech's use of EtO, proximity to residential areas, history of violations, and the nature of the harm—plausibly satisfy the factors for abnormally dangerous; Defendant's release of ethylene oxide near residences satisfies the Restatement (Second) § 520 factors: (1) high risk; (2) grave potential harm; (3) risk not eliminable by reasonable care; (4) not common usage; (5) inappropriate to place; and (6) limited community value relative to risk. Plaintiff has made material allegations related to each factor, including but not limited to:

| Factor | Application to Steri-Tech (with Complaint cites) |
|---|---|
| **1. High degree of risk** | Plaintiff alleges she lived within 1,000 feet of Steri-Tech's facility for nearly 40 years and was exposed to EtO emissions creating "a cancer risk 600 times greater than the national average". Am. Compl. ¶¶ 4, 14, 22, 124. |
| **2. Likelihood of grave harm** | Plaintiff was diagnosed with breast cancer, caused by prolonged, repeated, and ongoing exposure to EtO *Id.* ¶¶ 47, 107. Amended Complaint also notes EtO is scientifically linked to several breast cancers. *Id.* ¶¶ 9, 32–41, 52, 91. |
| **3. Risk not eliminable by reasonable care** | EtO is genotoxic and exerts damage even at undetectably low dosages; its effectively odorless nature prevents effective detection; fugitive emissions escape despite controls, and tracked emissions are unavoidable; and Steri-Tech failed to adequately use control technologies. *Id.* ¶¶ 29–33, 37–41, 42–44, 54–58, 61–62 |
| **4. Not a matter of common usage** | Complaint describes EtO as "a commercial sterilant" used in a specialized industrial process, not a community activity *Id.* ¶¶ 1, 28–34, 45–48, 57–64. |

| **5. Inappropriateness to location** | Steri-Tech operated "within 1,000 feet" of Plaintiff's home and in "the La Margarita residential community" *Id.* ¶¶ 4, 22, 47–52. Windows to sterilization rooms were "left open until August 2022" allowing uncontrolled EtO releases into the neighborhood. Hernández Decl. ¶¶ 21–22. |
|---|---|
| **6. Community value vs. risk** | Complaint alleges Defendants "failed to use available technologies to control emissions" and continued EtO releases "in quantities far exceeding safe limits" *Id.* ¶¶ 42, 88. Safer alternatives exist (gamma radiation, hydrogen peroxide plasma, VHP), while Plaintiff and neighbors bore extraordinary cancer risk *Id.* ¶¶ 73–80, 94–102. |

Courts within the First Circuit have applied those factors sensibly in analogous contexts. See*, e.g., Ryan v. Greif, Inc.,* 708 F. Supp. 3d 148, 162–64 (D. Mass. 2023); *Stearns v. Metropolitan Life Insurance Co.*, 308 F.Supp.3d 471 (D. Mass. 2018). Defendant's motion to dismiss the abnormally dangerous claim should be denied.

### E.  Plaintiff's Clean Air Act Claim Is Properly Before This Court

The Plaintiff's claim under the Clean Air Act meets all statutory and procedural requirements and is supported by the record compiled during and referenced in enforcement actions by the Department of Justice. See, DOJ Complaint ¶¶ 75–80, 88–92, 99–106. The Amended Complaint plainly describes the Plaintiff's timely notice, the required statutory waiting period, and the overlapping issues of private and public enforcement. See, Am. Compl. ¶¶ 80–86. The enforcement actions by the Department of Justice provide unmistakable confirmation of Steri-Tech's regulatory violations and the ongoing dangers associated with uncontrolled EtO emissions. The government's filings address many of the same incidents and practices, establishing parallel narratives that highlight the pressing health concerns at stake.

The argument that Plaintiff's Clean Air Act claim is "premature" because the EPA's Compliance Administrative Order is under judicial review offers little legal analysis on what effect, if any, this review should have on a citizen suit—like this one—under 42 U.S.C. § 7604.

Defendant's brief quotes cases addressing discretionary stays but does not contend with or explain the statutory prerequisites for a CAA action or the legal standard for ripeness in the context of administrative appeals. While alleging Plaintiff did not "certify that the [EPA] was notified before the original Complaint was filed," Steri-Tech points to the absence of such certification but does not affirmatively demonstrate (with exhibits, complaint citations, or other evidence) that no notice was given. The motion appears to conflate finality of administrative proceedings with preclusion of citizen suits, relying only on the pendency of a separate appeal to argue for dismissal or stay, which is not supported by an analysis of the CAA's citizen suit provisions as recited. The motion claims that "personalized remedies are not a first priority of CAA," based on *Ellis v. Gallatin Steel Co*., but does not establish that this precludes Plaintiff's standing or entitlement to relief for harm already suffered.  This is more relevant to the scope of remedies available than to the existence of a plausible claim for violation, especially as Plaintiff also seeks injunctive and declaratory relief. Defendant's motion to dismiss the Clean Air Act claim should be denied.

## F.  Plaintiff's Claims Are Timely

Plaintiff's claims are timely not only because of tolling doctrines, but also due to a strong, fact-based story of discovery and concealment that has developed over years. As noted in Defendant's Memoranda, "dismissal is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time barred." ECF No. 40, at 13 (citing *LaChapelle v. Berkshire Life Ins. Co.* 142 F3d 507, 509 (1st Cir. 1998)).  The pleadings carefully detail why Plaintiff could not have discovered the full extent of the harm earlier. See, Am. Compl. ¶¶ 45–48, 53–54; Hernández Decl. ¶¶ 22–29. Extremely recent federal enforcement actions provide additional insight into the regulatory environment and highlight the ongoing pattern of violations. As a result, Plaintiff's reliance on the discovery rule and the continuing tort doctrine is well-supported by the

record, clearly explaining the timeline that justifies applying these doctrines in this case. Defendant does not and cannot meet the "no doubt" standard.

### i.    Discovery Rule

The discovery rule delays the commencement of the statute of limitations until the plaintiff possesses, or would possess with due diligence, sufficient information to permit filing a lawsuit. Puerto Rico's one-year statute of limitations for tort claims, codified at P.R. Laws Ann. tit. 31, § 5298, does not begin to run until the injured party knows or should have known of the injury and the identity of the tortfeasor. This principle has been consistently upheld in case law.

In *Rodriguez-Suris v. Montesinos*, the First Circuit clarified that mere awareness of an injury may not suffice to trigger the statute of limitations; the plaintiff also needs to know the likely identity of the tortfeasor. *Rodriguez-Suris v. Montesinos*, 123 F.3d 10 (1st. Cir. 1997). This principle was reaffirmed in *Alejandro-Ortiz v. Puerto Rico Elec. Power Authority (PREPA)*, 756 F.3d 23 (1st. Cir. 2014), where the court held that the statute does not begin until the plaintiff possesses sufficient information to permit suit. The discovery rule also imposes a burden on plaintiffs to act with reasonable diligence. See *Estate of Alicano Ayala v. Philip Morris, Inc*., 263 F.Supp.2d 311 (D.P.R. 2003)

### ii.    Continuing Tort Doctrine

The continuing tort doctrine applies when a tortfeasor engages in ongoing unlawful conduct that causes harm. Under this doctrine, the statute of limitations is tolled until the tortious conduct ceases. However, Puerto Rico law distinguishes between continuous unlawful acts and the continuing harmful effects of an original tort. Only the former qualifies as a continuing tort for purposes of tolling the statute of limitations.

In *M.R. (Vega Alta), Inc. v. Caribe General Elec. Products, Inc.*, the Puerto Rico District Court held that "a 'continuous tort' under Puerto Rico law is ongoing unlawful conduct, not a continuing harmful effect," and that the "continuing harmful effect of the original tort does not constitute a continuing tort for purposes of tolling the statute of limitations." 31 F. Supp. 2d 226, 240 (D.P.R. 1998). The Supreme Court of Puerto Rico provided a comprehensive definition of the continuous tort doctrine in *Rivera Ruiz v. Mun. de Ponce*, 196 D.P.R. 410, 417 (2016) . The Court described it as a continued disturbance of unlawful acts or omissions that cause foreseeable, lasting damages. *Id.* at 417–418. Consistent with this definition, the District of Puerto Rico has emphasized that "the actual tort is the act or omission by the tortfeasor that produces harm, and not the injury that the plaintiff suffers." *McMillan v. Rodríguez-Negrón*, 511 F. Supp. 3d 75, 84 (D.P.R. 2020). Since the tortfeasor's illegal acts are continuous, the cause of action continually renews itself, for the statute of limitation purposes, until the tortfeasor ceases his harmful conduct. *Id.* at 83 (discussing *Rivera Ruiz v. Mun. de Ponce*, 196 D.P.R. 410, 417 (2016)). Plaintiff expressly pled that her exposure to the carcinogenic EtO was ongoing. Am. Compl. ¶ 92. Defendant's motion to dismiss based on the statute of limitations should be denied.

## V.    CONCLUSION

Steri-Tech's Motion to Dismiss and its Joinder fail to offer a legitimate basis for dismissal. Plaintiff's Amended Complaint sets forth plausible claims under well-established pleading standards, supported by sufficient factual allegations that must be accepted as true at this stage. Defendant's arguments go to the merits, not the pleadings, and are therefore premature. Accordingly, both Steri-Tech's Motion to Dismiss and its Joinder should be denied in their entirety.

Respectfully Submitted: August 28th, 2025

*/s/ Luis V. Almeida-Olivieri*
Luis V. Almeida-Olivieri (PR Bar #308307)
Melissa K. Sims (*pro hac vice forthcoming*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
1311 Ponce de Leon Ave. Suite 700
San Juan, PR, 00907
Tel: (516) 741-5600
Fax: (516) 741-0128
lalmeida@milberg.com
msims@milberg.com

*-and-*

John Fonda (*pro hac vice forthcoming*)
**NAPOLI SHKOLNIK PLLC**
360 Lexington Avenue, Eleventh Floor,
New York, NY 10017
Tel: (212) 397-1000 |
jfonda@napolilaw.com

*-and-*

Ari Kresch
(PR Bar #309614)
**Kresch Legal Services PR, PLLC**
1225 Avenida Ponce de Leon, Suite 605
San Juan, Puerto Rico 00907
Tel: (800) 529-3476
akresch@1800lawfirm.com

*Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

    I, Luis V. Almeida-Olivieri, an attorney, hereby certify that on August 28th, 2025, I caused a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT STERI-TECH'S MOTION TO DISMISS THE AMENDED COMPLAINT (ECF NOS. 40-41)** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Luis V. Almeida-Olivieri*
Luis V. Almeida-Olivieri (PR Bar # 308307)