**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Sheila M. Garcia Rivera,<br>　　*Plaintiff*,<br><br>　　v.<br><br>Balchem Corp., et al.,<br>　　*Defendants*. | Case No. 3:25-cv-1056-CVR |

**Balchem Corporation's Reply in Support of Its Motion To Dismiss Plaintiff's Complaint
Under Federal Rule of Civil Procedure 12(b)(6)**

# INTRODUCTION

Plaintiff Sheila M. Garcia Rivera's ("Plaintiff") Opposition ("Opp.") mischaracterizes or simply ignores inconvenient facts, law, and Balchem Corporation's ("Balchem") arguments in a last-ditch effort to plead implausible claims against a product supplier in an air emissions case. Plaintiff's Amended Complaint ("Compl.") should be dismissed with prejudice for the same reasons the *Perez-Maceira v. Customed*[1] case has been recommended for dismissal. Balchem did not own or operate Steri-Tech Inc.'s ("Steri-Tech") Salinas medical sterilization facility ("Facility"), did not manage Steri-Tech's employees, and did not emit ethylene oxide ("EtO"). In the absence of any viable factual or legal basis for keeping Balchem in this case, Plaintiff ignores or misconstrues the same sources she cites as authorities on EtO, raises speculative and unsupported product liability theories, and mischaracterizes Puerto Rico law. Because there is no theory under which Plaintiff can plead viable claims against Balchem, the Amended Complaint should be dismissed with prejudice.

**I.     Plaintiff Refuses to Acknowledge State and Federal Regulation of EtO.**

Before responding to Balchem's arguments in the Motion to Dismiss ("Motion"), Plaintiff asserts that the regulation of EtO by federal and Puerto Rico authorities has "nothing to do with the claims in this case." Opp. at 5–6. Plaintiff's position is not credible. EPA, FDA, and OSHA regulations touch on nearly all of Plaintiff's claims. EPA and FDA regulate EtO and whether it is approved for use and is effective as a sterilant on medical devices. EPA and FDA regulations indicate that the inclusion of an odorant in 100% EtO is not a plausible redesign and would create a completely new product subject to independent approval, registration, and regulation under FIFRA. Likewise, EPA's approval of Balchem's 100% EtO product label and instructions to include the specific warnings that Plaintiff has now identified in this case as deficiencies, bars Plaintiff's failure to warn

---

[1] No. 3:23-cv-1445 (CVR) (D.P.R.).

claims. OSHA regulations establish that it was Steri-Tech's obligation, not Balchem's duty, to train Steri-Tech's employees in the use and handling of EtO. Finally, it was Steri-Tech's obligation under the Clean Air Act to control emissions of EtO from its own Facility, which Plaintiff alleges was the actual cause of her alleged injuries in this case.

Plaintiff also opens the Opposition by questioning the necessity of using EtO to sterilize medical products. Opp. at 6–7. But the EPA sources that Plaintiff cites in the Amended Complaint acknowledge that EtO is used on 20 billion medical devices a year and that EPA and FDA have determined that the "absence of EtO for use on medical devices and equipment would cause widespread disruption to the availability of sterile medical devices including feeding tubes used in neonatal intensive care units, drug-eluting cardiac stents, catheters, shunts, and other implantable devices."[2] In the face of indisputable evidence that EtO has no viable alternatives for numerous, life-saving medical products, Plaintiff insists that EtO is not critical to health care. Opp. at 6; Compl. ¶¶ 96–97. Plaintiff further argues that the lack of EtO alternatives is irrelevant in this case because Balchem has not identified "a single product processed at Steri-Tech that cannot be sterilized using one of the FDA-approved alternatives." Opp. at 6–7. A basic review of government filings confirms that Steri-Tech sterilizes "pacemakers," "surgical" materials, "catheters," and other products that cannot be safely (or legally) sterilized without EtO.[3] Plaintiff's claim that Steri-Tech could have used some other sterilization method is false. But even if Steri-Tech had a choice regarding the use of EtO on these medical products, Steri-Tech, not Balchem, made the decision to use EtO at its Facility.

II.     **Plaintiff Cannot Plead A Viable Design Defect Claim.**

Plaintiff's Opposition argues that her design defect claim is "grounded in Puerto Rico" law, but Plaintiff fails to plead a claim under either the consumer expectations test or risk utility test. Opp.

---

[2] Compl. ¶¶ 53, 61 n.9; U.S. EPA, EtO Proposed Interim Registration Review Decision at 28.
[3] Exhibit A, U.S. Food & Drug Administration Pre-Market Approval (PMA) 960013, 840062, 100010.

2

at 8. First, Plaintiff does not address, and therefore concedes, that she has not pleaded a claim under the consumer expectations test. Opp. at 8–9; Compl. ¶¶ 144–45. Second, despite attempting to plead that the addition of an odorant to EtO was a "feasible" redesign (Compl. ¶ 153; Opp. at 3, 10),[4] Plaintiff now argues she is not required to plead the elements of the risk utility test. Opp. at 9–10. Plaintiff's recharacterization of her pleading burden in the Opposition is misdirection. As Balchem's Motion states, the risk utility test requires a plaintiff to plead that a design defect proximately caused a plaintiff's injury before the burden of proof in the risk-benefit analysis shifts to the defendant. Motion at 7; *Ayala v. Kia Motor Corp.*, 633 F. Supp. 3d 555, 569 (D.P.R. 2022) ("In sum, Plaintiffs have the burden of proving the **existence of a defect** and that said defect was the **proximate or legal cause** of the injuries suffered.") (emphasis added). Plaintiff has failed to carry her initial pleading burden that there was any design defect with 100% EtO that proximately caused her alleged harm. *See Perez v. Hyundai Motor Co.*, 440 F. Supp. 2d 57, 72 (D.P.R. 2006).

In the Opposition, Plaintiff continues to challenge the use of 100% EtO rather than identify the existence of an actual design defect in the product. Opp. at 9–10. In Plaintiff's original complaint, Plaintiff claimed that 100% EtO was a defective product because it contained EtO.[5] Plaintiff's design defect argument for EtO remains virtually the same in the Opposition and Amended Complaint. Opp. at 10 (alleging that Balchem made a choice to market "odorless EtO . . . a ultrahazardous sterilant and explosive"); Compl. ¶ 144 (pleading that EtO "contained exclusively or primarily EtO without adequate available alteration(s)"). Plaintiff's challenge remains to EtO itself (a chemical with immutable characteristics),[6] not to any design choice allegedly made by Balchem. Indeed, throughout

---

[4] Notably, Plaintiff's counsel also argued at length in their Objections to the Perez-Maceira R&R that an odorant was "feasible." Objections to R&R at 16.
[5] Complaint ¶ 124, ECF No. 1.
[6] Compl. ¶ 148 ("Pure ethylene oxide gas is an odorless gas at room temperature; it has only a faint ether-like smell when present at concentrations considered only possible in scarce accidental occupational exposure settings.").

3

the Amended Complaint and Opposition, Plaintiff continues to question the necessity of using EtO altogether and claims there are alternatives when there are none. Opp. at 5–6; Compl. ¶¶ 96–97.

As the Magistrate recognized in *Perez-Maceira*, Plaintiff's challenge to the use of 100% EtO is not a viable design defect claim. Report & Recommendation, *Perez-Maceira v. Customed Inc.*, No. 3:23-cv-01445, ECF No. 104 at 23 (May 23, 2022) ("R&R") ("But as Plaintiffs acknowledge in their opposition, the product at issue is 100% EtO. . . . And for a claim based on defective design to be actionable the challenge cannot be to the product itself; it must be to a defect in its design."). Nor does Plaintiff distinguish the *City of Philadelphia* case, which is directly on point. Plaintiff argues that the case is not applicable because the plaintiff in that case "challenged the inherent nature of lead pigments and proposed an entirely different product." Opp. at 10; *City of Phila. v. Lead Indus. Ass'n*, No. CIV A. 90-7064, 1992 WL 98482, at *3 (E.D. Pa. Apr. 23, 1992), *aff'd*, 994 F.2d 112 (3d Cir. 1993).[7] But that is exactly what Plaintiff has done here. Plaintiff challenges the "inherent nature" of the *product*, not any allegedly defective design by Balchem. Compl. ¶¶ 144, 148. Notably, Plaintiff does not cite even a single case (in any jurisdiction) that supports a design defect claim based on a product's immutable properties. Plaintiff challenges EtO's design here without any legal precedent.

Plaintiff's design defect claim also fails because EPA and FDA regulations provide that the addition of an odorant is not a redesign of 100% EtO, but a proposal for an entirely different sterilizing product. Opp. at 11. Again, this is not a viable design defect claim. EtO with an added odorant is no longer 100% EtO, it is a new product subject to independent review and approval by EPA and FDA to determine its safety and efficacy as a sterilant. Motion at 10–11.[8] Plaintiff does not dispute that

---

[7] *See also González Cabán v. JR Seafood*, 199 D.P.R. 234, 244 (2017) (dismissing strict liability product defect claim because a "defect in the shrimp was not caused by the manufacturing process").

[8] 100% EtO with a non-active ingredient odorant is a different pesticide product with potentially, completely different properties (including its effectiveness as a medical sterilant) that requires EPA evaluation prior to approval. 40 C.F.R. § 152.43. The use of an alternative formulation of EtO also would be considered a "novel sterilization method" by the FDA.

4

EPA and FDA would consider Plaintiff's proposal a new product rather than a redesign. Instead, Plaintiff argues "highly regulated products" should not be exempt from design defect claims. Opp. at 11. Balchem has not proposed a "de facto" exemption from design defect claims for FIFRA-regulated products. But the Court also should not consider Plaintiff's argument in a vacuum and ignore EPA and FDA regulations clarifying that the odorant proposal is actually for a completely new product.[9]

Plaintiff also has not plausibly alleged a design defect in EtO under federal pleading standards. Regardless of whether Plaintiff wants to frame its obligation to plead "feasibility" or "plausibility," Plaintiff is required to satisfy the pleading standards in *Iqbal* and *Twombly*. Plaintiff's design defect allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2005); *Lozada v. Dejoy*, No. 20-1674, 2023 WL 2433860, at *8 (D.P.R. Mar. 9, 2023). Plaintiff has not alleged any non-speculative facts to support the existence of a design defect in EtO based on the omission of an odor. Plaintiff attempts to compare EtO to propane and other gases for which odorants have been added, but none of those gases are used to sterilize medical products. Opp. at 10; Compl. ¶¶ 146–49.[10] Nor has Plaintiff pleaded any non-speculative facts that the use of an odorant could have plausibly prevented Plaintiff's injuries. *Ayala*, 633 F. Supp. 3d at 568 (holding that "bare" factual allegations of design defect are not enough to support a claim). Plaintiff provides no factual support for the inclusion of an odorant (in a gas that Plaintiff acknowledges has been used and studied for decades (Compl. ¶ 46)). Plaintiff's design defect claims are grossly speculative and therefore not plausible under federal pleading standards.

---

U.S. FDA, *Submission and Review of Sterility Information in Premarket Notification (510(k)) Submissions for Devices Labeled as Sterile*, at 5 (Jan. 8, 2024), https://www.fda.gov/media/74445/download. Indeed, products with less than 100% EtO have required separate EPA (and FDA) review, approval, and registration, and are independently regulated by EPA. *See* U.S. EPA, *Pesticide Product and Label System*, https://ordspub.epa.gov/ords/pesticides/f?p=PPLS:1 (ex. EPA Reg. Nos. 36736-4-35084 (80% Ethylene Oxide)).

[9] It would likely be illegal for Balchem to add an odorant without EPA and FDA approval. 7 U.S.C. § 136j(a)(2)(O).

[10] Plaintiff admits that EtO naturally has an odor that is not detectable at low concentrations, but implausibly suggests, without any support, that an unidentified, artificial odor can be added into EtO that would cause EtO to be detectable at those same low concentrations at long distances. Compl. ¶ 148.

5

Finally, Plaintiff fails to allege that even if she could plead a design defect, that the alleged defect could have proximately caused Plaintiff's alleged injuries. Plaintiff argues that she has satisfied the burden of alleging causation because she claims she was injured by "undetectable EtO emissions" near her home. Opp. at 12; Compl. ¶¶ 11–13; 22. But Puerto Rico law requires more than such conclusory pleading. *Perez*, 440 F. Supp. 2d at 73 (D.P.R. 2006) ("Proximate cause requires that the damages complained of be either a direct result or a reasonably probable consequence of the act or omission at issue."); *Ayala*, 633 F. Supp. 3d at 569 ("[T]he Plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." (citation omitted)). Where a Plaintiff alleges "concurrent causes" of an injury, "the decisive or efficient one is that which, based on the circumstances, determines the damages." *Id*. (quoting *Perez*, 440 F. Supp. 2d at 74).

Plaintiff alleges her injuries were caused by the alleged emissions of EtO from Steri-Tech's Facility. Compl. ¶¶ 25, 29, 31, 33, 44, 48, 57, 64–73, 80–84. Regardless of whether an odorant was added to EtO, if Steri-Tech had not allegedly emitted EtO from its Facility, Plaintiff would not have been injured. *Id.*[11] As in *Perez-Maceira*, any alleged design defect here could not have been a "substantial factor" or the "decisive cause" of Plaintiff's alleged injuries and this claim therefore should be dismissed with prejudice. R&R at 23.

### III.  Plaintiff's Opposition Does Not Support Her Failure to Warn Claim.

#### A.  Plaintiff Misconstrues Puerto Rico Failure to Warn Law.

Instead of addressing the arguments and law cited in Balchem's Motion, Plaintiff's Opposition mischaracterizes failure to warn law and argues that Balchem had a broad duty to warn that does not exist in Puerto Rico law. Opp. at 12–13. Plaintiff contends that Balchem had a duty to warn Steri-

---

[11] Plaintiff also has not alleged that the failure to include an odorant in EtO actually caused Steri-Tech's emissions.

6

Tech about the potential effects of its emissions of EtO outside its Facility on "bystanders," but that alleged duty is not supported by Puerto Rico law. Plaintiff argues that the Puerto Rico Supreme Court recognized a duty to warn "beyond the immediate user" in a case involving consumers injured by an exploding car battery. Opp. at 12–13; *Aponte Rivera v. Sears Roebuck de P.R., Inc.*, 144 D.P.R. 830, 44 P.R. Offic. Trans. 39 (1998). Not only does *Aponte Rivera* not stand for the principle that the duty to warn extends to effects on "bystanders" in Puerto Rico, but it does not even involve bystanders injured by an inadequate warning. *Id*. at 850 (A.J. Berlingeri, concurring in part, dissenting in part) ("The case under consideration is really quite simple. Plaintiff Aponte Rivera suffered severe physical injuries caused by the explosion of the battery in his motor vehicle. . . . [W]hat caused the battery explosion was precisely that plaintiff, out of ignorance, moved the battery terminals. . . . *Plaintiff did this because the warnings on the battery did not say that the terminals could not be moved*."). The holding in *Aponte Rivera* is inapposite because it relates to the warnings that should have been provided to the end user of a product, who was then injured. In this case, Plaintiff was not, and could not have been, a user of EtO. Nor does Plaintiff identify any other law for the premise that failure to warn principles extend to "bystanders" in Puerto Rico. Finally, there is no evidence Puerto Rico adopted the Restatement (Third) of Torts, recognizes bystander product liability claims.[12]

Under applicable Puerto Rico product liability law, Balchem had no duty to warn Steri-Tech regarding the potential effects of Steri-Tech's emissions outside its Facility. *Silva v. Am. Airlines, Inc*., 960 F. Supp. 528, 533 (D.P.R. 1997); *Muns. of Bayamón v. Exxon Mobil Corp.*, No. 22-1550, 2025 WL 600430, at *41 (D.P.R. Feb. 20, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2630671 (Sept. 11, 2025). As numerous Puerto Rico courts have held, a product manufacturer is "not the insurer of every damage his products may cause."

---

[12] There also is a question as to whether a plaintiff who was not present inside a facility could even be considered a "bystander" as that term is understood in the Restatement and in other jurisdictions.

*Ayala*, 633 F. Supp. 3d at 569 (citing *Mendoza v. Cervecería Corona*, 97 P.R. Dec. 499 (1969)). Plaintiff admits Steri-Tech was a "sophisticated" and "long-time user" of EtO that understood its effects, yet failed to implement EtO emissions controls at its Facility or train its employees. Compl. ¶¶ 44–50. Steri-Tech, not Balchem, was responsible for emissions of EtO outside its Facility, as well as any related third-party warnings to the community—if necessary—that should be provided under the Clean Air Act and the Emergency Planning and Community Right-to-Know Act.[13]

        **B.**        **The Duty to Warn Employees Was Steri-Tech's Obligation.**

Steri-Tech also was responsible for providing warnings to its own employees regarding the use and handling of EtO under well-established law. OSHA regulations required Steri-Tech, not Balchem, to provide warnings and trainings to its own employees regarding EtO. 29 C.F.R. § 1910.1047(j); 29 C.F.R. § 1910.1200(h)(1).[14] Plaintiff argues that Balchem "assumed" a duty to provide warnings and training directly to Steri-Tech's employees, but provides no legal support for the argument. Opp. at 16. The Opposition does not cite a single case in support of a product supplier's assumption of a duty to warn under Puerto Rico law or any authority that supports the application of Restatement (Second) of Torts Sections 323 and 324A in this case. *Id.* Nor does the Opposition even attempt to address *Vulcan Tools of P.R. Inc. v. Makita U.S.A., Inc.*, No. 89-148, 1993 WL 719565, at *8 (D.P.R. Sept. 1, 1993), which held that employers, not product manufacturers, have the duty to provide these warnings to employees. Plaintiff makes no effort to support her arguments.

        **C.**        **Plaintiff Fails to Identify any Deficient Warning.**

Plaintiff's Opposition does not remedy the Amended Complaint's failure to identify any deficient warning that Balchem allegedly provided to Steri-Tech. Opp. at 13–14. In the Opposition,

---

[13] U.S. EPA, EPCRA, https://www.epa.gov/epcra/what-epcra (last visited Sept. 14, 2025).
[14] Plaintiff ignores Balchem's arguments and cites no supporting law that Balchem had duties beyond warning Steri-Tech. Motion at 15–17.

Plaintiff does not dispute that Balchem has provided warnings that EtO is "dangerous, toxic, and/or carcinogenic." Opp. at 13. Plaintiff argues that these "generic" warnings were not enough. *Id*. But Plaintiff simply ignores the many other warnings provided on Balchem's product label and safety data sheet ("SDS"), including warnings that the use and handling of EtO must comply with all applicable state and federal laws, including EtO regulations. Motion at 2–3, 13. Plaintiff also ignores that the SDS specifically warns that sterilizers' "[e]mission controls must be in compliance with Federal, State and local regulations." SDS at 7.

Plaintiff argues that Balchem could have potentially added warnings to the EtO label regarding the alleged "unreasonable adverse environmental effects" of the product "without prior EPA approval." Opp. at 15; 40 C.F.R. § 152.46. Plaintiff is wrong. The FIFRA regulation cited by Plaintiff does not provide such authority without prior notification to EPA. 40 C.F.R. § 152.46.[15] Any change to the product label claiming "unreasonable adverse environmental effects" would require EPA review and approval. 40 CFR § 156.70(c) ("[S]pecific statements pertaining to the hazards of the product and its uses must be approved by the Agency."). Balchem has no control over EPA's approval or rejection of such warning statements.[16]

Plaintiff's argument that Balchem should have provided EtO use directions more specifically warning **against venting** at sterilization facilities is expressly barred by FIFRA. Opp. at 15; Compl. ¶ 135. As discussed in Balchem's Motion, the 100% EtO label provides instructions related to venting and aeration, which were added to the label **by EPA** during registration renewals for EtO in 1996 and 2008. EPA expressly required language on the EtO label that Plaintiff now challenges, including that "lengthy facility aeration is encouraged" and that EtO should be stored and used "with adequate

---

[15] *See also Schaffner v. Monsanto Corp*., 113 F4th 364, 383 (3d Cir. 2024) (holding that "precautionary statements" on pesticide labels are not subject to voluntary amendment under §152.46, much less amendment without notification).
[16] Nor is it plausible EPA would agree with a vague warning regarding EtO's "unreasonable environmental effects" after EPA evaluated EtO's toxicity, labeling, and uses, and approved (and re-approved) EtO's registration. Motion at 2–3.

9

ventilation." Motion at 15, n.25. Plaintiff makes no mention of EPA's labeling decisions in the Opposition even though they directly relate to her claim. Instead, Plaintiff proposes that Balchem add "clear instructions prohibiting the uncontrolled venting of EtO" on the EtO label without notifying EPA. Opp. at 15. Plaintiff's proposal would almost certainly violate FIFRA reporting, labeling, and use requirements because it directly contradicts EPA's labeling requirements for EtO. 7 U.S.C. § 136j(a)(2)(A), (G), (N). Plaintiff's proposed venting warning also is expressly barred by the U.S. Supreme Court, which, while narrowing FIFRA preemption, still prohibits any rule that directly conflicts with EPA-required labeling. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 452 (2005) ("The provision [§ 136v(b)] . . . pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations."). Plaintiff's proposed labeling changes for EtO directly conflict with labeling requirements mandated by EPA under FIFRA. Plaintiff's claim is not tenable as a matter of law and should be dismissed.

**D.     The Opposition Does Not Address Plaintiff's Failure to Plead Causation.**

Finally, Plaintiff's failure to warn claim should be dismissed because the Opposition simply ignores her obligation to plead that the absence of warnings caused her alleged injuries. Opp. at 12–16. The Opposition fails to dispute that any warning Balchem provided to Steri-Tech regarding potential emissions of EtO would not have been effective. This is particularly surprising because in *Perez-Maceira* the Magistrate recommended dismissal of plaintiffs' failure to warn claim on causation grounds. In that case, plaintiffs admitted "that Sterilizer Defendants were aware of EtO's effects, regardless of whether Balchem warned them or not." R&R at 25. Plaintiff makes identical admissions in this case. Compl. ¶¶ 44–48.

Plaintiff's admissions foreclose any argument that additional warnings could have prevented Plaintiff's alleged injuries. Plaintiff admits throughout the Complaint that Steri-Tech was a "sophisticated corporation" and "long-term" EtO "user" with "superior knowledge and access to

10

information" on EtO. Compl. ¶¶ 45–46. Further, Plaintiff claims "[d]espite knowing" the "risks" of EtO, Steri-Tech "did not comply with safe and prudent methods of EtO sterilization" and failed to implement measures to "limit emissions." Compl. ¶¶ 44, 47–48. Finally, Plaintiff admits throughout the Complaint that Steri-Tech knew or should have known of the potential dangers from emissions of EtO. Compl. ¶¶ 15–16 ("At all relevant times, the Defendant[] knew, or should have known, that EtO is dangerous, toxic, carcinogenic, mutagenic, and causes various illnesses. . . . Notwithstanding the known risks, Defendant[] chose to operate in a manner that caused EtO emissions in a densely populated area . . . ."). Much of Plaintiff's case against Steri-Tech is based on its alleged violations of the Clean Air Act. Compl. ¶¶ 80–86. Plaintiff fails to explain how additional warnings could have prevented her alleged injuries if Steri-Tech allegedly ignored existing EtO warnings, including that Steri-Tech must comply with all applicable EtO regulations and emissions control laws. Motion at 3.

Nor does the Opposition address, or attempt to distinguish, any of the cases cited in Balchem's Motion on proximate causation. Motion at 17–18; *see Santos-Rodríguez v. Seastar Sols.*, 858 F.3d 695, 698–99 (1st Cir. 2017); *see also Taylor v. Am. Chem. Council*, 576 F.3d 16, 24 (1st Cir. 2009); *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 563 (S.D.N.Y. 2022). Plaintiff's decision not to dispute proximate cause in the Opposition is fatal to her claim.

**IV.     Plaintiff Fails to Support Her Negligence Claim Against Balchem.**

Plaintiff fails to provide any support in her Opposition for her negligence claim against Balchem. Plaintiff's rebuttal of her negligence claim is completely untethered to Puerto Rico law. Indeed, Plaintiff does not cite a single case in support of her allegations that Balchem had a duty or breached a duty to Plaintiff in this case or caused Plaintiff's alleged injuries. Opp. at 18–19.

The Opposition makes no attempt to identify any source of a legal duty that Balchem owed Plaintiff. *Id.* As the Magistrate held in *Perez-Maceira*, the alleged duties identified by Plaintiff in the Amended Complaint regarding employee "training," "handling," and "use" of EtO are indisputably

11

the obligations of Steri-Tech under OSHA. R&R at 16–17; 29 C.F.R. § 1910.1047(j); 29 C.F.R. § 1910.1200(b), (h); *see Vulcan Tools of P.R. Inc.*, 1993 WL 719565, at *8. Plaintiff attempts to argue that Steri-Tech's duties under OSHA were distinct from Balchem's duties to separately provide such "training," but Plaintiff does not cite a single case or other source of legal authority that supports a product supplier's (or manufacturer's duty) to provide training to a customer's employees. Plaintiff fails to identify any legal duty specifically owed by Balchem to Plaintiff as a product supplier.[17]

Likewise, Plaintiff's Opposition fails to identify any Puerto Rico law that supports her argument in the Complaint that Balchem assumed a duty of care in this case. Opp. at 19; Compl. ¶¶ 72–74. Plaintiff attempts to distinguish the *Spirit Airlines* case on the basis that the case involved whether a party could be held "vicariously liable" for the conduct of a third party. Opp. at 18; *see Jimenez-Ruiz v. Spirit Airlines, Inc.*, 794 F. Supp. 2d 344, 351 (D.P.R. 2011). But that does not change the general proposition in Puerto Rico law that "[a] third party can only be liable for the acts or omissions of others when clearly specified in the law." Motion at 19. That principle holds true regardless of the specific facts in *Spirit Airlines* and is not disputed by Plaintiff. The Opposition does not cite a single case supporting the theory that a product supplier can assume duties owed by employers. Plaintiff argues the *Muñiz-Rivera* case "recognized that liability arises when a defendant affirmatively assumes supervisory responsibilities." Opp. at 19; *Muñiz-Rivera v. United States*, 204 F. Supp. 2d 305 (D.P.R. 2002). But in that case the Court explicitly held that **the removal** of a legal regulation eliminated the government's legal duty. In other words, the government could not assume a legal duty that it did not have as a matter of law. *Id*. at 313–14. That's the case here too. Balchem had no obligation under any law or other authority to assume a duty in this case. Opp. at 19–20.

---

[17] Plaintiff chooses to entirely ignore Balchem's arguments that Plaintiff has failed to establish that Balchem had a duty to "require or recommend implementation of effective safeguards to prevent community exposure" to EtO. Motion at 20. As addressed in the Motion, Balchem had no duty of care related to Steri-Tech's alleged EtO emissions.

12

Plaintiff also provides no legal support that it has pleaded any of the other elements of its negligence claim including breach, causation, or damages. Opp. at 19. Plaintiff merely identifies the allegations it argues support its negligence claim. But as Balchem points out in its Motion, the alleged conduct in Plaintiff's negligence claim almost entirely relates to Steri-Tech, not to conduct by Balchem. Motion at 21 (citing allegations regarding emissions and Steri-Tech's other conduct and obligations ¶ 105(a)–(g)). Plaintiff does not tie any of the breach allegations in its Amended Complaint to any obligation that Balchem has under the law. Moreover, none of Plaintiff's allegations that Balchem breached a duty or caused Plaintiff's alleged injuries are plausible.[18] None are supported by legal precedent.

### V. Plaintiff Fails to Bolster Her Nuisance Claim Against Balchem.

Plaintiff fails to support her nuisance claim against Balchem because Balchem did not own or operate the Steri-Tech Facility or emit EtO. Motion at 22. Plaintiff's claim should be dismissed for the same reasons that the Magistrate recommended dismissal of the nuisance claim in *Perez-Maceira*. Plaintiff has not, and cannot, plead that Balchem had any control over the nuisance or that Balchem possibly could have abated it. R&R at 19 (citing *Ortega Cabrera v. Tribunal Superior*, 101 D.P.R. 612, 1 P.R. Offic. Trans. 842, 848 (1973)). Once again, Plaintiff simply ignores contrary precedent and argues that her claim is viable based on an inapposite Puerto Rico Supreme Court case. Opp. at 20; *Ríos Mártir v. Mun. of San Sebastián*, 106 D.P.R. 172, 6 P.R. Offic. Trans. 240, 243 (1977). In *Ríos Mártir*, a landowner sued a municipality on a nuisance theory following his agreement to allow the municipality to use part of his land as a waste dump. *Id.* at 174. While the municipality did not

---

[18] Plaintiff's allegations (Compl. ¶¶ 8, 11) that Balchem caused Steri-Tech's emissions by assuming "an ongoing role" at Steri-Tech's Facility through product stewardship trainings that occurred once every two years are simply not plausible. Opp. at 19; Motion at 1. Likewise, Plaintiff's claims that Steri-Tech was a "sophisticated corporation" with decades of experience with EtO directly undercut any alleged link between biennial product stewardship presentations and the ongoing operations of Steri-Tech's Facility. Compl. ¶¶ 45–46. Nor are Plaintiff's allegations of injury plausibly related to Balchem's alleged conduct. Opp. at 18.

13

own the land, there was no dispute that the municipality operated the landfill and was responsible for the nuisance that developed on the land and could abate the nuisance. *Id.* Indeed, that was exactly the outcome in the case. *Id.* In this case, there is no plausible dispute that Balchem, as a product supplier, does not own or operate the Steri-Tech Facility or its equipment or have the ability to close the Facility and abate the alleged nuisance. Compl. ¶¶ 31, 44, 48, 80–84, 103, 164–67.

Applying Ohio law, Plaintiff next argues that the Court should develop new tort principles in Puerto Rico that allow the finding of a nuisance based on alleged ongoing impacts. Opp. at 21, *citing In re Nat'l Prescrip. Opiate Litig.*, 589 F. Supp. 3d 790, 825–26 (N.D. Ohio 2022). Plaintiff's analogy between EtO and opioids is inapt. Unlike Balchem, the pharmacies in the Opiate Litigation directly provided opioids to affected customers. *Id.* at 810 (describing the role of pharmacies as the "last stop" or "last line of defense" in ensuring "that prescriptions are correct and patients are not harmed"). Unlike Balchem, the pharmacies had control over the release of the product that caused the alleged nuisance. *Id.* at 816–17 ("Plaintiffs' claims 'do not stem from the products themselves, but from the manner in which Defendants **dispensed** the product . . .") (emphasis added). As Plaintiff admits, EtO has been supplied to "sophisticated" customers who have been handling and using the product for decades. Compl. ¶¶ 44–47. Plaintiff's claims in this case stem from the emissions of EtO, over which Balchem, as a product supplier, had no ability to abate. Compl. ¶¶ 31, 44, 48, 80–84, 103, 164–67. Plaintiff's far-fetched nuisance claim against Balchem therefore should be dismissed with prejudice.

## VI.    Plaintiff Fails to Support an Abnormally Dangerous Activity Claim.

Plaintiff fails to support a claim for an abnormally dangerous activity. First, Plaintiff admits that there is no claim for an abnormally dangerous activity claim under Article 1802 of the Puerto Rico Civil Code. Opp. at 23; Motion at 23. In the absence of any Puerto Rico law supporting the existence of an abnormally dangerous activity claim, Plaintiff argues that the Court can simply apply

14

California case law. Plaintiff cites *González Cabán v. JR Seafood*, 132 F. Supp. 3d 274 (D.P.R. 2015), for the proposition that Puerto Rico has incorporated California product liability principles. But *González Cabán* does not stand for the principle that the Puerto Rico Supreme Court has adopted an "abnormally dangerous activity" cause of action, or generally adopted all California product liability common law. Nor is there a single Puerto Rico case that appears to have adopted sections 519 and 520 of the Restatement. Opp. at 23; Motion at 23. Plaintiff cites *Aponte Rivera* for the principle that a seller can be held liable for "defective or dangerous" products, but *Aponte Rivera* does not include a claim for abnormally dangerous activity. Opp. at 23; 144 D.P.R. 830. Nearly all of Plaintiff's abnormally dangerous activity allegations against Balchem relate to the operations of Steri-Tech's Facility and have nothing to do with the supply of EtO to the Facility. Opp. at 24–25. The Court should ignore Plaintiff's effort to re-plead the claim in the Opposition. No claim is adequately pleaded against Balchem in the Amended Complaint. Compl. ¶¶ 118–30. Finally, the Court should reject Plaintiff's attempt to create a new cause of action that would dramatically expand existing tort law against product suppliers and that does not even exist in Puerto Rico.

### VII. Plaintiff Failed to Bring Her Claims on a Timely Basis.

Plaintiff's claims were filed more than two and a half years after an EPA presentation that specifically addressed EtO emissions from the Steri-Tech Facility in Salinas and five years after her cancer diagnosis. Plaintiff does not dispute these facts, but argues that her claims are tolled by the continuous tort doctrine. Opp. at 4. Plaintiff has not satisfied her pleading burden. *Torres v. Hosp. San Cristobal*, 831 F. Supp. 2d 540, 543–44 (D.P.R. 2011); P.R. Laws Ann. tit. 31, § 5298. Plaintiff cannot merely allege an unknown continuing harmful effect from her injury as she does to sustain a continuing tort claim. *Torres*, 831 F. Supp. 2d at 544; Compl. ¶¶ 92–93 (arguing she suffered an increased risk of injury and potential injury, not new injuries). Accordingly, Plaintiff's claims should be dismissed under Puerto Rico's one-year deadline for tort claims.

15

Dated: September 18, 2025					Respectfully submitted,

*/s/ Matthew D. Thurlow*
Matthew D. Thurlow (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Email: matthew.thurlow@morganlewis.com
Telephone: (202) 739-5895
Facsimile: (202) 739-3001


*/s/ Ricardo F. Casellas*
RICARDO F. CASELLAS
USDC No. 203114

*/s/ Carla S. Loubriel-Carrión*
CARLA S. LOUBRIEL-CARRIÓN
USDC No. 227509

CASELLAS ALCOVER & BURGOS, P.S.C.
P.O. Box 364924
San Juan, Puerto Rico 00936-4924
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: rcasellas@cabprlaw.com
cloubriel@cabprlaw.com


*Counsel for Defendant Balchem Corporation*

**CERTIFICATE OF SERVICE**

  I hereby certify, that on September 18, 2025, this document was filed with the Court's CM/ECF system, which will simultaneously serve notice on all counsel of record to their registered email addresses.

                */s/ Carla S. Loubriel-Carrión*
                CARLA S. LOUBRIEL-CARRIÓN
                USDC No. 227509