IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SHEILA M. GARCIA RIVERA,

Plaintiff,

v.                                    CIVIL NO. 25-1056 (CVR)

BALCHEM CORP., et al.,

Defendants.

## OPINION AND ORDER

## INTRODUCTION

On January 31, 2025, Plaintiff Sheila M. García-Rivera ("Plaintiff") filed the present case against co-Defendants Balchem Corp. ("Balchem"), Mays Chemical Company of Puerto Rico ("Mays") and Steri-Tech, Inc., ("Steri-Tech"). Co-Defendant Steri-Tech operates a medical equipment sterilizer facility in Salinas, Puerto Rico and uses Ethylene Oxide ("EtO"), a known human carcinogen, in its sterilizing process. Co-Defendant Balchem manufactures the product and Mays distributes it. Plaintiff avers she has resided in the immediate vicinity of Steri-Tech since 1978 and was harmed by Steri-Tech's negligent handling of EtO in its sterilization process, whereby toxic fumes escaped the facility into the underlying neighborhood. She proffers she was unaware she was being exposed to dangerous odorless and colorless EtO gases that for years emanated from the facility. She was diagnosed with breast cancer in 2019, which she says is attributable to her prolonged exposure to EtO emissions in her vicinity. (Docket No. 1).

Plaintiff then amended her complaint ultimately bringing six (6) claims only against Balchem and Steri-Tech (collectively "Defendants"), to wit: negligence (Count I,

against both co-Defendants); private nuisance (Count II, against both co-Defendants); abnormally dangerous activity (Count III, against both co-Defendants); strict liability – failure to warn or instruct (Count IV, against Balchem); strict liability – design defect (Count V, against Balchem); and violation of the Clean Air Act ("CAA") (Count VI, against Steri-Tech). (Docket No. 33).[1]

Before the Court are the Motions to Dismiss filed by Balchem (Docket No. 38) and Steri-Tech (Docket No. 40), their corresponding oppositions (Docket Nos. 45 and 46), and the replies thereto. (Docket Nos. 49 and 50).

For the reasons explained below, Balchem's Motion to Dismiss is GRANTED in its entirety; and Steri-Tech's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "short and plain" statement needs only enough detail to provide a defendant with " 'fair notice of what the … claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Erickson v. Pardus, 551 U.S. 89, 93, (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement....' Specific facts are not necessary."). To show an entitlement to relief, a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even

---

[1] As previously mentioned, the initial Complaint contained claims against Mays, that filed a motion to join Balchem's original motion to dismiss. (Docket Nos. 1, 19 and 22). Ultimately, no claims against Mays were included in the Amended Complaint and Mays is not part of this case at this stage. (Docket No. 33).

if doubtful in fact)." See Twombly, 550 U.S. at 555.

When addressing a motion to dismiss under Rule 12, the Court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009).  Under Twombly, 550 U.S. at 555, however, a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions"; see also, Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Thus, a plaintiff is required to present allegations that "nudge [his] claims across the line from conceivable to plausible" to comply with the requirements of Rule 8(a).  Id. at 570; see, *e.g.* Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

## ANALYSIS

### A.  Time bar.

The Court addresses this issue outright because, if Defendants' argument is correct, it disposes of the whole case.

Both Defendants aver that Plaintiff's claims must be dismissed because they are time-barred.  The Amended Complaint states that Plaintiff was diagnosed with breast cancer in 2019.  (Docket No. 33, ¶ 91).  As the case was filed in 2025, Defendants argue it is untimely.  Plaintiff proffers in opposition that her claims were timely filed and not subject to dismissal under the continuing tort exception, which allows for the tolling of a tort claim until such time as the unlawful conduct ends.

Under Puerto Rico law, a continuous tort arises from ongoing unlawful conduct, not from a continuing harmful effect of the conduct.  Rivera Ruiz v. Mun. de Ponce, 196 D.P.R. 410, 417 (2016).  The Amended Complaint claims that Plaintiff lived within 1,000

feet of the Steri-Tech's facility from 1986 to 2012, and from 2012 on, has lived within one (1) mile of the facility; that throughout this time, EtO fumes emanated from the Steri-Tech's premises which contaminated the surrounding air; Plaintiff (and the community) were unknowingly and continuously exposed to toxic air for decades without their knowledge or consent; Plaintiff was diagnosed with breast cancer in 2019, which is linked to EtO exposure and consistent with the types of cancer caused by long-term contact with it; her exposure is continuing and ongoing, has exacerbated her injuries and increased her risk of developing other injuries linked to EtO exposure; and she has undergone surgery, chemotherapy, and radiation and continues to face health risks and medical expenses due to the continuous EtO exposure.  (Docket No. 33, ¶¶ 90-94).

At this early juncture, taking the allegations contained in the Amended Complaint as true, as the Court must at this stage, the Court finds that Plaintiff has sufficiently pled that Steri-Tech, which operated the sterilizing facility, has engaged in a continued pattern of unlawful acts or omissions by releasing harmful gases into the atmosphere and exposed the Salinas community to continuous toxic EtO emissions, which caused harm to the members of the community.[2]  This is enough to survive a motion to dismiss at this early stage of the case.

Moving forward, however, Plaintiff is advised that she bears the burden of proving this alleged continued pattern of unlawful, toxic emissions and their harm to her, as well as a causal link between them.  If she does not, she must establish that her injury and Steri-Tech's identity were known within one (1) year of the date when the complaint was

---

[2] This does not apply to Balchem, as this Defendant did not operate the sterilizing facility and as will be discussed in the next section, cannot be held responsible for the sterilizing facility's emissions.

filed.  See P.R. Laws Ann. tit. 31, § 9496 (2020); Tokyo Marine & Fire Ins. Co. v. Pérez & Cia., de Puerto Rico, Inc., 142 F.3d 1, 3 (1st Cir. 1998)[3].  This is a fact-intensive endeavor due to the multiple avenues that Plaintiff had available to acquire knowledge of Steri-Tech's identity and the harm it allegedly caused her, considering she lived less than a mile away from the facility.  With the facts as they stand now on this limited record, making this determination on this bare record is simply premature at this stage.[4]

This argument may be revisited by Steri-Tech after conclusion of discovery at the dispositive motion stage and with a more fully developed record, where it may well be that Plaintiff's causes of actions are found to be time-barred.  See Rodríguez–Suris v. Montesinos, 123 F.3d 10, 15 (1st Cir. 1997); Santos Espada v. Lugo, 312 F.3d 1, 4 (1st Cir. 2002) (noting that because the issues of due diligence and adequate knowledge maybe be up to a jury "so long as the outcome is within the range where reasonable men and women can differ.").

**B.  The remaining claims.**

Balchem avers that the five (5) claims raised against it (namely, all claims except violation to the CAA) should be dismissed.  In support thereof, it points to the recommendations made to this Court in the case of Pérez-Maceira, et al., v. Customed, Inc., et al., Civil No. 23-1445 (CVR), where Magistrate Judge Giselle López-Soler

---

[3] Although a new Civil Code was adopted in 2020, the Puerto Rico general tort statute did not suffer substantial changes. See QBE Seguros v. Morales-Vázquez, Civil No. 15-2091 (BJM), 2023 WL 3766078, at *3 (D.P.R. June 1, 2023).  The one (1) year prescriptive period for torts remains unchanged.  P.R. Laws Ann. tit. 31, § 9496 (2020).

[4] The Amended Complaint does not mention the date when Plaintiff found out the full extent of the emissions and the risk they posed. This detail was only mentioned in the separately filed "Declaration of Emely Hernández" as the Amended Complaint's Exhibit 2, where she indicates that "the EPA hosted a Community Meeting on August 30th, 2022, with the Residents of Salinas to share information about health risks from the EtO chemicals being emitted from Steri-Tech facilities".  (Docket No. 33, Exhibit 2, ¶ 22). Plaintiff will have to establish this fact as well to succeed on this claim.

recommended dismissal of all claims against Balchem based on similar allegations as the ones in this case.  The undersigned adopted all the recommendations made in the Report and Recommendation, including dismissal of all claims raised against Balchem.  See Civil No. 23-1445 (CVR), Docket No. 123.

On the other hand, Steri-Tech proffers that the Amended Complaint contains vague and conclusory allegations that fail to meet the Twombly and Iqbal standards.  It also avers that the cause of action under the CAA must be dismissed as premature and legally deficient.

Each Count of the Amended Complaint is discussed in turn.

**1.  Negligence (Count I against both co-Defendants).**

Plaintiff's negligence allegations against Balchem, which is strictly the EtO's manufacturer, is that it supplied the product to Steri-Tech and provided training which "upon information and belief, failed to prevent unsafe emissions.  Steri-Tech then used the EtO in a manner that allowed it to escape into the surrounding air." (Docket No. 33, ¶42).  She further contends that Balchem undertook a recurring "product stewardship" training of Steri-Tech's employees of EtO that took place every two (2) years, which in turn, shaped Steri-Tech's EtO faulty sterilization process and ultimately failed to safely sterilize.  (Id., at ¶47, 50).  Steri-Tech's employees were only given printed copies of the presentations used by Balchem's training personnel and failed to "include sufficient instruction on mitigation practices to protect nearby residents." (Id., at ¶¶ 71, 139).  In voluntarily undertaking the responsibility to provide "product stewardship" trainings to Steri-Tech, Plaintiff argues that Balchem "assumed a duty to exercise reasonable care in performing that undertaking", and "failed to take reasonable and legally permissible steps

to update its product labelling or issue supplemental warnings." (Id., at ¶¶ 73, 77).  In sum, Plaintiff's negligence claims against Balchem mainly lie in allegedly failing to provide adequate warnings and training to Steri-Tech on safe EtO use and handling that in turn, caused the risky sterilization procedures and led to the fugitive emissions inhaled by the surrounding community.

In its request for dismissal, Balchem argues its limited duty was only towards Steri-Tech, as end user, and that Plaintiff failed to identify any additional duty of care Balchem had towards her or that Balchem breached such a duty.  It also posits that Plaintiff failed to plead Balchem's alleged conduct was the proximate cause of her injuries, further supporting its arguments in favor of dismissal.  The Court agrees that Balchem owed no additional duty of care to Plaintiff.

As is well known, Article 1802 of the Civil Code of 1930[5] only permits recovery of damages upon a showing that a defendant "cause[d] damage to another through fault or negligence."  P.R. Laws Ann. tit. 31, § 5141.  For a negligence claim to prosper, Puerto Rico law requires Plaintiff to establish (1) evidence of physical or emotional injury; (2) a duty and negligent or intentional act or omission (a breach of duty); and (3) a sufficient causal nexus between the injury and defendant's act or omission (or proximate cause).  Torres v. KMart Corp., 233 F.Supp.2d 273, 277-78 (D.P.R. 2002); Vázquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007).  The breach of duty element is tied to the relevant duty of care, which is defined as "an obligation to anticipate and take measures against a danger that is reasonably foreseeable."  Baum-Holland v. Hilton El

---

[5] As the events in this case took place before the new Civil Code came into effect in November of 2020, the 1930 Civil Code controls.  See P.R. Laws Ann. tit. 31, § 11719 (2020).

Con Mgmt., LLC, 964 F.3d 77, 88 (1st Cir. 2020). A defendant's duty of care may be established "(1) by statute or regulation; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." Id., at 88.

Plaintiff points to no statute or regulation (element 1) or any traditionally recognized duty of care (element 3) that may have imposed any additional duty of care upon Balchem in this instance. On the contrary, federal regulations impose EtO handling, education, training, and supervision requirements on Steri-Tech as the employer, not on the manufacturer. See e.g., 29 C.F.R. § 1910.1047(j)(1)(iii) (2024) ("Employers shall ensure that each employee has access to labels on containers of EtO and to safety data sheets and is trained in accordance with the requirements of HCS [Hazard Communication Standard] and paragraph (j)(3) of this section."). Thus, the duty of education, training, and supervision requirements for EtO belongs to Steri-Tech, not Balchem.

Plaintiff seems to argue in favor of element number 2, that a special relationship between the parties has arisen through the alleged training and "stewardship program." This is a hard sell, considering Balchem's training took place every (2) two years and federal laws place the training responsibility squarely on the employer and not the manufacturer. Plaintiff, however, insists that Balchem "actively assumed a supervisory role" and this somehow created an independent duty to exercise reasonable care and to warn. (Docket No. 45, p. 20). However, Plaintiff fails to cite any cases to stand for the proposition that the manufacturer of a product can be held responsible for the alleged negligent handling and use of the product by the employer, that is specifically tasked by

law to train its employees on the product's use and handling, or that the manufacturer had any additional duty to warn other, third parties about the employer's use of the product.

Plaintiff's hollow allegation that Balchem "undertook" training and activities and somehow was responsible for giving the manufacturer extra warnings and warning the inhabitants of the immediate vicinity for any emissions from a site it had no control over cannot create a responsibility where none exists. This position finds no support under Puerto Rico law, as "an individual is only liable for his own acts or omissions and only by exception is an individual liable for the acts or omissions of others." Afunday Charters, Inc. v. Spencer Yachts Inc., Civil No. 16-3141 (GAG), 2018 WL 10878066, at *3 (D.P.R. Dec. 18, 2018), aff'd sub nom, Afunday Charters, Inc. v. ABC Ins. Co., Civil No. 19-1112, 2021 WL 1921125 (1st Cir. May 13, 2021); P.R. Laws Ann. tit. 31, §5142 (1930).

Furthermore, Plaintiff's own assertion that "as sophisticated corporations and long-term suppliers, handlers and/or users of EtO, Defendants had access to scientific data, regulatory findings, and internal knowledge confirming the chemical's carcinogenic risk"[6] belies its allegation that Balchem somehow misled Steri-Tech in the training, warning and use of EtO and its harmful qualities.

Simply put, Puerto Rico law does not impose an additional duty as argued by Plaintiff in this case. Therefore, Plaintiff has failed to establish that Balchem owed her an additional duty of care or a breach thereof under Puerto Rico law.

---

[6] Docket No. 33, ¶ 45.

Consequently, Balchem's Motion to Dismiss the negligence claims against it is GRANTED.

The negligence claims against Steri-Tech, as the sterilizing facility's operator, must be viewed under a different lens. The Amended Complaint alleges that Steri-Tech failed to implement control measures to limit emissions, upgrade sterilization equipment, and intentionally shortened the time frame for different EtO processes, subjecting Plaintiff and the community to toxic levels of EtO to increase its own profits; failed to adequately train its employees and managers, resulting in unsafe EtO sterilization practices and procedures; chose to operate in a manner that caused EtO emissions in a densely populated area; and was fully aware of its faulty systems and supervision, as well as of its employees' inability to perform their jobs safely. (Docket No. 33, ¶¶ 47-50). As a result of these actions, Plaintiff avers she has been unknowingly and continuously exposed to carcinogenic EtO at levels associated with a cancer risk 600 times the national average, and indeed, was diagnosed with breast cancer in 2019. (Id., ¶¶ 4, 14).

Steri-Tech's position is that the allegations in the Amended Complaint are insufficient to meet the pleading standards set forth in Twombly and Iqbal. The Court disagrees, as it finds these allegations are sufficient to adequately plead a negligence claim because of Steri-Tech's actions at this stage. Consequently, the negligence claim against Steri-Tech survives dismissal at this juncture.

The Court reminds Plaintiff going forward, however, that she must establish (1) an injury, (2) a negligent or intentional act or omission (duty and a breach thereof) by Steri-Tech, and (3) proximate cause between the injury and Steri-Tech's acts or omissions. Torres, 233 F.Supp.2d at 277-78; Vázquez-Filippetti, 504 F.3d at 49. In the present case,

this may be a challenge considering the years between the time Steri-Tech commenced activities and Plaintiff's cancer diagnosis.  Thus, at a more advanced stage of the litigation, the Court may find Plaintiff's negligence claim against Steri-Tech to be wanting.

In sum, Steri-Tech's Motion to Dismiss the negligence claim against it is DENIED.

## 2.  Private nuisance (Count II against both co-Defendants).

Nuisance is defined as something that is "injurious to health, indecent, or offensive to the senses, or an obstruction to free use of property so as to interfere with the comfortable enjoyment of life or property, or that is a nuisance to the well-being of a neighborhood, or to a large number of persons."  P.R. Law Ann. tit. 32, § 2761.

The Amended Complaint states that Defendants' conduct has interfered with Plaintiff's comfortable enjoyment of her life, as she unknowingly inhaled toxic emissions while living in the vicinity of the Steri-Tech's facility for decades.  This prolonged exposure, in turn, led to her developing breast cancer in 2019.  Her ability to enjoy life and her own property has been substantially diminished, as she can no longer inhabit her home without worrying that she is continuously at risk.  (Docket No. 33, ¶¶ 111, 112).

Balchem asserts in its Motion to Dismiss that this cause of action must also be dismissed because Balchem does not operate the sterilizing facility that allegedly harmed Plaintiff, Steri-Tech does.  In opposition, Plaintiff points to Ríos Mártir v. Municipality of San Sebastián, 106 D.P.R. 172 (1977), for the proposition that conduct, not ownership, determines nuisance liability under Puerto Rico law and thus, Balchem is responsible because it "contributes to, continues or maintains" to the nuisance via its inadequate trainings.  But the Ríos Mártir holding was clear in that the party held responsible for the nuisance was the operator of the municipal dump.  In the same fashion, Balchem does not

own or operate the sterilizing facility in this case and therefore, cannot be held liable under a nuisance cause of action for damages caused to the neighborhood by fugitive emissions of a third party.

Additionally, Plaintiff's nuisance theory against Balchem also comes up short under Puerto Rico law for a second reason, namely that liability under this doctrine rests on establishing the traditional tort elements of Article 1802 of the Puerto Rico Civil Code, to wit, damages, a duty and breach thereof, and proximate cause. See Martínez Romero v. Super Asphalt Pavement, Co., No. FDP2004-0234, 2018 WL 3037397, at *11 (P.R. Cir. Apr. 23, 2018) (holding that a nuisance claim "depends on the essential causality element between the harm and the act that together, create the duty to indemnify an aggrieved party" under Article 1802, and finding that responsibility lies in the party who *caused* the nuisance) (emphasis added); see also Municipality of Bayamón v. Exxon Mobil Corp., Civil No. 22-1550 (SCC-HRV), 2025 WL 600430, at *42 (D.P.R. Feb. 20, 2025) ("[t]here are no allegations that Defendants are. . . operating facilities in the Municipalities.  In fact, it is undisputed that none have plants or refineries on the island. Plaintiffs have failed to show a causal nexus between Defendants' acts or omissions and the damages claimed for any prior or ongoing conduct that can be said to be injurious to health and that interfered with the enjoyment of property by the Municipalities.").

Considering that Balchem was not the operator of the sterilizing facility in question and did not cause the nuisance, this claim cannot lie against Balchem.  Thus, Balchem's Motion to Dismiss the nuisance claim is GRANTED.

Turning to Steri-Tech, instead of providing a cogent argument as to this claim, it chose instead to join the arguments set forth by Balchem in its Motion to Dismiss.

(Docket No. 40, pp. 18-19; Docket No. 41).  Although Steri-Tech offered some additional arguments in support of its petition to dismiss in its separate "Motion for Joinder" (Docket No. 41), said motion still lacks any developed argument to dismiss the nuisance claim, which as the operator of the facility, must likewise be viewed under a different lens than Balchem.  Balchem, as manufacturer of the product, is in a different position legally than Steri-Tech, the owner and/or operator of the facility that the alleged toxic gases were emanating from.  For this reason, their claims and defenses differ greatly.

Since Steri-Tech offered no argument in its own Motion to Dismiss as to the nuisance claim, it is deemed waived. Thus, Steri-Tech's request to dismiss the nuisance claim is DENIED.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

## 3. Abnormally dangerous activity (Count III against both co-Defendants).

The Amended Complaint alleges that EtO is abnormally dangerous because of its highly toxic and volatile nature and poses a high degree of risk of causing significant harm due to unsafe levels of emissions.  (Docket No. 33, ¶ 119).  Plaintiff argues that its use is particularly inappropriate in the area where the Steri-Tech's facility is located, a dense area with homes, schools, municipal buildings, churches, and parks. Also, given Defendants' alleged inability to utilize the substance without producing unsafe levels of emissions, the EtO manufacture, distribution, storage, use, and emissions constitute an abnormally dangerous activity resulting in strict liability, as defined by the Second Restatement of Torts, Restatement (2d.) § 519.  (Id., at ¶ 120).

The 1930 Civil Code did not explicitly incorporate the doctrine of strict liability in local product liability cases.  Rather, the Puerto Rico Supreme Court integrated it over

time through its holdings into our body of laws.  See Mendoza v. Cervecería Corona, 97 D.P.R. 499 (1969).  Balchem's position is that the abnormally dangerous activity is not recognized under Puerto Rico law, either under the Civil Code nor under any Supreme Court precedent.

Plaintiff on the other hand, urges this Court to deny the request to dismiss, inviting the Court instead to take a leap of faith.  Plaintiff proffers that in the past, the Puerto Rico Supreme Court has adopted product liability law from California courts, that in turn, adopted the abnormally dangerous activity doctrine under the 2d restatement of Torts. Following that lead, Plaintiff submits that this Court should now likewise follow the Puerto Rico Supreme Court's past reliance on California law and the 2d restatement of Torts and allow this cause of action to move forward, averring that abnormally dangerous activity is a "presumptively valid claim in this jurisdiction."  (Docket No. 45, p. 24).

This Court is not tasked with making new law or adopting laws from different jurisdictions and making them its own.  The Puerto Rico Supreme Court is tasked with that role and finding no support currently under Puerto Rico law to sustain Plaintiff's argument for this cause of action, the Court declines Plaintiff's invitation to make new law.

Consequently, Balchem and Steri-Tech Motions to Dismiss the abnormally dangerous activity claims are GRANTED.

**4.  Product Liability-failure to warn (Count IV against Balchem).**

To prove a failure to warn cause of action under Puerto Rico law, Plaintiffs must show that: "(1) the manufacturer knew or should have known of the risk inherent in the product; (2) there were no warnings or instructions, or those provided were inadequate;

(3) the absence of warnings made the product inherently dangerous; and (4) the absence of adequate warnings or instructions was the proximate cause of plaintiff's injury." Aponte Rivera v. Sears Roebuck, 144 D.P.R. 830 (1998).

Plaintiff's Amended Complaint avers Balchem had a duty to provide adequate warnings and instructions as to EtO use, but also as to possible emissions to the surrounding communities and issue precautions to reduce those risks. She argues the safety data sheets ("SDS") and label warnings provided by Balchem with its EtO were insufficient to disclose the risks posed by EtO emissions and failed to warn industrial end-users the risks of accidental emissions. (Docket No. 33, ¶ 133, 139).

In turn, Balchem contends in opposition that, contrary to Plaintiff's allegations that it somehow failed to provide a warning about EtO hazards, its label clearly stated in both English and Spanish: "DANGER! CANCER HAZARD AND REPRODUCTIVE HAZARD." Balchem further argues that it instructs EtO's handlers to comply with the law and prevent EtO accidental releases. Finally, it proffers that, under federal law, it was Steri-Tech's duty to train and warn its employees and that it had no additional duty to further train or warn.

In the end, the Court finds the failure to warn claims against Balchem fail because the Complaint specifically alleges that Steri-Tech, the end-user of the product, was a sophisticated and long-time user with "superior knowledge" and "access to information" who was well aware of EtO's effects (Docket No. 33, ¶¶ 45), and because there are insufficient allegations as to how any purported defect in the warnings of the product proximately caused Plaintiff harm or how it could have been avoided. See SUEZ Water New York Inc. v. E.I. du Pont de Nemours and Co., 578 F.Supp.3d 511, 563

(S.D.N.Y. Jan. 4, 2022) (dismissing failure to warn claim because plaintiff failed to establish if the warnings were given, how the industrial manufacturers or the end-users would have responded or how the harm to plaintiffs would have been averted); see also Silva v. American Airlines, Inc., 960 F.Supp. 528, 533 (D.P.R. Apr. 16, 1997) (stating that the duty to warn "extends to all the uses that can be reasonably foreseen by defendant").

In Plaintiff's opposition, she cites to Aponte, 144 D.P.R. 830 for the proposition that manufacturer's obligation extends beyond the immediate user. The Court disagrees. Aponte dealt with inadequate warnings to an end-user of a product, to wit, a car owner whose car battery exploded after he moved the battery terminal connectors with his hands. Id., at 834. Aponte was thus limited to the inadequate product warning to the end-user about the battery connectors and imposed no responsibility on a manufacturer vis-a-vis an innocent third party in the vicinity affected by the product, as argued by Plaintiff. Id., at. 842, 847 (indicating that the warning must "impress upon a prudent and reasonable user the nature and extent of the hazard involved" and noting that "although plaintiff did know that the battery is a dangerous and explosive product, the warnings on the battery were inadequate because they failed to make reference to the risks related to the handling of the terminal connectors.").

Thus, Plaintiff's argument that Balchem had a duty to warn beyond the end-user of a product is simply not supported under Puerto Rico law. See Mun. of Bayamón, 2025 WL 600430, at *41 (holding that there is no duty to warn of the effects of a product, only the reasonably foreseeable uses of the product); Aponte, 144 D.P.R. at 839 (same holding). Plaintiff's arguments in this case, that fugitive emissions were somehow foreseeable as an end-use of the EtO product and created an additional duty by the

manufacturer, finds no footing under local law. The Court therefore agrees with Balchem's contention that Puerto Rico law imposes no duty on a manufacturer to warn third parties about the possible effects of a product beyond an end-user. See 29 C.F.R. § 1910.1047(j)(1)(iii) (2024) (imposing product training requirement on employer); Mun. of Bayamón, 2025 WL 600430, at *41.

Thus, the failure to warn claim against Balchem fails, and its Motion to Dismiss this claim is GRANTED.

### 5. Product liability- design defect (Count V against Balchem).

The Amended Complaint states that "Balchem's manufacture, sales, and distribution of sterilant products to Defendant Steri-Tech constituted an unreasonably and inherently dangerous design of such products in that they contained exclusively or primarily EtO without adequate available alteration(s) to improve the safety of the product", and that "the absence of any odorant in Balchem's EtO-based sterilant products is a glaring safety gap and a product defect." (Docket No. 33, ¶¶ 144, 149).

A design defect is "[a]n imperfection occurring when the seller or distributor could have reduced or avoided a foreseeable risk of harm by adopting a reasonable alternative design, and when, as a result of not using the alternative, the product or property is not reasonably safe." Black's Law Dictionary (11th ed. 2019); García v. Hartford Fin. Servs. Grp., Inc., Civil No. 18-2013 (JAG), 2022 WL 2836272, at *1 (D.P.R. June 1, 2022). To prevail on a design defect claim, a plaintiff must establish either that (1) "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner," or (2) "the product's design proximately caused [the plaintiff's] injury and the defendant fails to prove, in light of the relevant

factors ... that on balance the benefits of the challenged design outweigh the risk of danger, inherent in such design." Collazo-Santiago v. Toyota Motor Corp., 937 F.Supp. 134, 137 (D.P.R. 1996), aff'd, 149 F.3d 23 (1st Cir. 1998); Alvarez-Cabrera v. Toyota Motor Sales, U.S.A., Inc., Civil No. 17-2305 (RAM), 2020 WL 3620204, at *3 (D.P.R. July 2, 2020).  These are referred to as the "consumer-expectations test" and the "risk-utility test", respectively. Caraballo-Rodríguez v. Clark Equip. Co., 147 F.Supp.2d 66, 71 (D.P.R. 2001). A plaintiff claiming damages for a design defect must prove the existence of a defect in the design and that said defect was the proximate cause of the injuries suffered. Ayala v. Kia Motor Corp., 633 F.Supp.3d 555, 569 (D.P.R. 2022).

Plaintiff presents no argument against dismissal under the consumer expectations test, and it is therefore deemed waived. Zannino, 895 F.2d at 17.  The Court finds that in any event, it is inapplicable to this case.  The consumer expectancy test is "reserved for cases in which the everyday experience of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions and is thus defective *regardless* of expert opinion about the merits of the design." Collazo-Santiago, 937 F.Supp. at 139 (emphasis in original).  Plaintiffs have not alleged what the ordinary consumer's expectation is in using EtO as intended; quite the opposite, ordinary consumers simply do not use EtO on an "everyday" basis.  For this reason, the ordinary consumer cannot have any experience or expectation as to EtO's performance in using the product as intended, which is as a medical sterilizer.

Regarding the risk utility test, Balchem argues there can be no defect in the product because it is 100% EtO and this fact alone cannot be the basis of a design defect.  No "redesign", Balchem says, can change this reality.  Balchem additionally proffers that

adding an odorant as Plaintiff proposes would produce an entirely different product which would instead require new approval by federal regulators.  In opposition, Plaintiff avers that Balchem misstates Puerto Rico law, that she has met her burden by establishing that Balchem's design choice to make odorless EtO proximately caused her injury, and Balchem's defense that the pure product outweighs the benefit of an added odorant is Balchem's burden to meet.  The Court disagrees.

As the product is 100% EtO, Plaintiff has been unable to establish this is a *defect* in the product, as required under Puerto Rico law.  See Cervecería Corona, 97 D.P.R. at 512 (indicating that harm must be caused by a defect in the product); City of Philadelphia v. Lead Indus. Ass'n, Civil No. 90-7064, 1992 WL 98482, at *3 (E.D. Pa. Apr. 23, 1992) (holding that the only design defect which plaintiffs properly alleged from lead-based paint pigments arose at the level of the paint itself, a design choice that was not made by defendants and finding no liability).  Although Plaintiff denies it, her challenge is really to the product itself, as she argues that it was Balchem's *design choice* to make odorless EtO, but she points to no defect in the product itself, only to say that Balchem's product was "without adequate available alteration(s) to improve the safety of the product", that it "fails to incorporate the standard safety feature" of an odorant, and "practical and feasible alternative designs for sterilant products" exist that can reduce Plaintiff's harm. (Docket No. 33, ¶¶ 144, 148, 153).  By her own words, Plaintiff is specifically arguing for a different, safer design.  As correctly proffered by Balchem, it did not choose to make EtO this way because the product is 100% EtO, and Plaintiff's solution of incorporating an odorant produces a new and different product altogether requiring new federal approvals and is thus, not actionable under a design defect claim.

For these reasons, Plaintiff's design defect claim against Balchem must also fail, and Balchem's Motion to Dismiss this claim is GRANTED.

**6. Violation of the CAA (Count VI against Steri-Tech).**

Lastly, Plaintiff brings forth a claim for violation of the CAA, 42 U.S.C. § 7604 against Steri-Tech.  Plaintiff avers that EtO is a hazardous air pollutant regulated under several federal laws that limit and control the emissions coming from a facility that uses such a product.  Steri-Tech has violated these laws by, among others, failing to maintain the required minimum operating temperatures for its equipment to ensure a 99% EtO destruction efficiency and in failing to comply with continuous monitoring and reporting requirements.  Thus, significant amounts of EtO have been released into the underlying neighborhood's air contributing to elevated cancer risks, environmental degradation, and public health hazards.  Plaintiff claims these violations constitute a "failure to comply with an emission standard or limitation" as defined in 42 U.S.C. § 7604(f) and entitle her to file a citizen suit under the CAA.  (Docket No. 33, ¶¶ 162-167).

Steri-Tech posits that Plaintiff's allegations under the CAA are premature, insofar as they are based on the EPA's Administrative Order No. CAA-02-2024-1001, and that administrative proceeding is not yet final because Steri-Tech appealed the EPA's decision to the United States Court of Appeals for the First Circuit ("First Circuit") in Case No. 24-1072.  Steri-Tech additionally asserts that Plaintiff failed to certify that the EPA was notified before the original Complaint was filed, as required by law.

The Court takes judicial notice that the pending appeal that Steri-Tech relies on for its prematureness argument was voluntarily dismissed via a joint "Stipulation of Dismissal" filed by the parties on July 30, 2025.  The First Circuit issued its Judgment

dismissing the case and subsequent Mandate on August 1, 2025. Therefore, given that the EPA and Steri-Tech stipulated for voluntary dismissal of the case and that Steri-Tech "completed the substantive requirements" of the EPA's Order, any claim now arising from that same Order is moot. See Case No. 24-1072, "Joint Stipulation of Dismissal" filed on July 30, 2025 before the First Circuit.

The Court finds dismissal of this claim is proper for an additional reason, mainly that the EPA has filed a lawsuit in this Court against Steri-Tech alleging these same violations to the CAA, United States of America v. Steri-Tech, Inc., Civil No 25-1319 (ADC).

The Congressional purpose in enacting the CAA citizen suit provision was to authorize citizens to act as "private attorneys general." See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 17 (1980). Sponsors of the CAA were wary of the lack of action, and oftentimes lack of resources, of federal agencies to address statutory violations. Consequently, the primary function of citizen suits is to enable private parties to assist in enforcement efforts where federal and state authorities cannot or will not act. Conservation L. Found. of New England, Inc. v. Browner, 840 F. Supp. 171, 174 (D. Mass. 1993); Conservation L. Found., Inc. v. Busey, 79 F.3d 1250, 1257 (1st Cir. 1996) ("By authorizing citizens to bring suit for violations of CAA standards, Congress sought to motivate governmental agencies charged with the responsibility to bring enforcement and abatement proceedings.").

As correctly argued by Steri-Tech, corrective action is already being taken by the government, first by Administrative Order No. CAA-02-2024-1001 and now by Civil No. 25-1319 (ADC), where it seeks to remedy the same violations as the present duplicative

civilian action.  See SURCCO v. PRASA, 157 F. Supp. 2d 160, 169 (D.P.R. 2001) (noting that that when governmental action begins and is diligently prosecuted, the need for citizen's suits vanishes).

The government, by bringing the case under the CAA, is taking the lead by fulfilling the obligation that federal agencies, not citizens like Plaintiff, should take in enforcing environmental regulations.  As such, Steri-Tech's Motion to Dismiss this cause of action is GRANTED.

## CONCLUSION

### A. Balchem.

The Court finds Plaintiff has failed to allege any actionable claims against Balchem. Thus, Balchem's Motion to Dismiss is GRANTED in its entirety and all claims filed by Plaintiff against Balchem are DISMISSED WITH PREJUDICE. (Docket No. 38).

### B. Steri-Tech.

Steri-Tech's Motion to Dismiss is GRANTED IN PART and DENIED IN PART (Docket No. 40) as follows:

1. The claims for abnormally dangerous activity (Count III); product liability claim for failure to warn (Count IV); product liability claim for design defect (Count V); and for violation of the Clean Air Act (Count VI) against Steri-Tech are DISMISSED WITH PREJUDICE.

2. The claims against Steri-Tech for negligence and private nuisance remain alive. Partial Judgment shall be entered accordingly.

_____

Finally, Steri-Tech is granted until **December 22, 2025** to answer the claims of negligence and private nuisance against it included in the Amended Complaint.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 1st day of December 2025.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES DISTRICT JUDGE